UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARY LODGE,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED HOMES, LLC, UNITED PROPERTY GROUP, LLC, YARON HERSHCO, GALIT NETWORK, LLC, OLYMPIA MORTGAGE CORP., BAYVIEW LOAN SERVICING, LLC, BAYVIEW ASSET MANAGEMENT, LLC, U.S. BANK, N.A., AS TRUSTEE FOR BAYVIEW ASSET-BACKED SECURITIES TRUST SERIES 2007-30, and BAYVIEW FINANCIAL MANAGEMENT CORP.<br><br>    Defendants. | Civil Action No.: CV-05-0187 (KAM)(RLM) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
PLAINTIFF MARY LODGE'S MOTION TO STRIKE
THE BAYVIEW DEFENDANTS' HOLDER-IN-DUE-COURSE DEFENSE**

SOUTH BROOKLYN LEGAL SERVICES
105 Court Street, 3rd Floor
Brooklyn, New York 11201

AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, D.C. 20049

COWAN LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799

*Attorneys for Plaintiff*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

I.      Defendants Have Raised No Genuine Issue of Material Fact ............................................. 2

II.     Defendants' Interpretation of the Shelter Rule Is Unsupportable. ..................................... 2

III.    Defendants' Discovery Failings Merit Sanctions. ............................................................. 6

    A.    Production of the 2003 Trust Documents Does Not Excuse Defendants' Failure to Produce the Resecuritization Documents. ............................................................. 7

    B.    Ignorance of the Documents' Existence Is No Justification. ............................................. 7

    C.    There is no Justification for Defendants' Failure to Appreciate the Significance of the Securitization Documents. ............................................................. 8

    D.    Plaintiff Was Not Responsible for Defendants' Discovery Failings. ................................ 8

    E.    Severe Prejudice Resulted from Defendants' Conduct. ..................................................... 10

    F.    Defendants' Demonstrated Bad Faith Persists. ................................................................. 10

CONCLUSION .................................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Cases**

*City of New York v. Turnpike Dev. Corp.*, 36 Misc.2d 704, 233 N.Y.S.2d 887 (Sup. Ct. Kings Co. 1962) ..................................................................................................................9

*DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124 (2d Cir. 1998) ............................................2

*Fidelity Bank National Association v. Avrutick*, 740 F. Supp. 222 (S.D.N.Y. 1990) ........................4

*Mfrs. Hanover Trust Co. v. Robinson*, 157 Misc.2d 651, 597 N.Y.S.2d 986 (Sup. Ct. N.Y. Co. 1993).................................................................................................................................3–4, 6

*Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S. Ct. 2455, 65 L.Ed.2d 488 (1980)..................2

*Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 2005 WL 22833 (S.D.N.Y. Jan. 5, 2005) ..........3

*Unico v. Owen*, 232 A.2d 405 (1967) .................................................................................................4

*United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338 (2d Cir.1991) .............................................2

**Federal Rules**

Federal Rule of Civil Procedure 37(c) ................................................................................................1

Federal Rule of Civil Procedure 56(a) ................................................................................................1

**State Code**

N.Y. U.C.C. § 3-201 ...........................................................................................................................3

N.Y. U.C.C. § 3-201, Official Comment ............................................................................................3

Plaintiff Mary Lodge, by counsel, submits this reply memorandum in further support of her motion for an Order, pursuant to Rules 37(c)(1) and 56(a) of the Federal Rules of Civil Procedure, striking the holder-in-due-course defense of Bayview Loan Servicing, LLC, Bayview Asset Management, LLC, U.S. Bank, N.A., as Trustee for Bayview Asset-Backed Securities Trust Series 2007-30, and Bayview Financial Management Corp.[1] (hereinafter "defendants").

## PRELIMINARY STATEMENT

Defendants have not challenged the facts upon which plaintiff's motion is based[2]— they could not, for the primary factual bases are documents that defendants recently produced. Nor do defendants offer coherent opposition to the motion. Rather, they make irrelevant assertions about the custodial history of Ms. Lodge's note; recite their document production history preceding the events at issue; overstate the reach of the "shelter rule"; argue that Wachovia Bank, N.A. ("Wachovia") and U.S. Bank, N.A. ("U.S. Bank") were both holders of the first note, which is not at issue here; and explain their discovery failures by blaming, variously, their ignorance of those documents' existence, their failure to appreciate the documents' relevance, and the fact that plaintiff had asked specifically for these documents only once.

Plaintiff has shown that (1) no reasonable jury could sustain the holder-in-due-course defense, and (2) defendants' failure to timely disclose documents relevant to that defense was unjustified and prejudiced plaintiff; defendants made no meaningful opposition to that showing.

---

[1] On March 17, 2011, plaintiff filed and served her Third Amended Complaint (TAC) which, among other amendments, substituted U.S. Bank, N.A., as Trustee for Bayview Asset-Backed Securities Trust Series 2007-30, and Bayview Financial Management Corp. for "US Bank and Trust." In her moving papers, served before the Third Amended Complaint was filed, plaintiff requested that, in the event the TAC was permitted to be filed, the relief requested against "US Bank and Trust" be deemed to be requested as to the parties substituted for "US Bank and Trust." Plaintiff hereby renews this request.

[2] The opposition papers plaintiffs received from defendants on March 28, 2011, did not include a statement pursuant to Local Rule 56.1(b).

The Court therefore should strike the holder-in-due-course defense, because it is unavailable as a matter of law, and because defendants' improper discovery conduct warrants sanctions.[3]

## ARGUMENT

### I.   Defendants Have Raised No Genuine Issue of Material Fact.

Defendants do not challenge plaintiff's factual account of the resecuritizations of the Lodge loan, which is based almost entirely from defendants' produced documents and court filings.  Defendants recite several facts relating to the Lodge loan's first securitization, which neither controvert the facts asserted by plaintiff nor pertain to this dispute. (*See* Declaration of Robert E. Hodapp, March 25, 2011 ("Hodapp Opp. Decl."), ¶¶ 4–8).  Since the motion's facts are thus undisputed, the matter is subject to disposition as a matter of law.

### II.   Defendants' Interpretation of the Shelter Rule Is Unsupportable.

Defendants contend that Bayview Loan Servicing, LLC ("BLS") and Wachovia were holders in due course of the Lodge mortgage loan when they first acquired it, and that this purported status affords any subsequent holder the rights of a holder in due course by virtue of the "shelter rule."  (Hodapp Opp. Decl. ¶¶ 16–17.[4])  This unfathomably broad reading of the shelter rule contradicts the rule's plain text and judicial interpretations of its purpose.

---

[3] While Rule 37 of the Federal Rules of Civil Procedure gives courts authority to strike a pleading or bar the disobedient party from supporting designated defenses, this Court also has inherent authority to impose appropriate sanctions on finding that a party engaged in abusive litigation practices in bad faith.  *See DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998) (citing, *inter alia*, *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S. Ct. 2455, 65 L.Ed.2d 488 (1980); *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991)).  In *DLC Management Corp.*, the Second Circuit affirmed the district court's imposition of monetary sanctions and an adverse inference based on the defendant's belated production of discoverable materials.

[4] These paragraphs, like several others in the Hodapp Declaration, contain impermissible legal argument.  Plaintiff requests that all such improper content of defendants' submissions be (continued on next page)

2

The shelter rule provides that the "transfer of an instrument vests in the transferee such rights as the transferor has therein," N.Y. U.C.C. § 3-201; the right to assert the holder-in-due-course defense is one of those rights, even when the transferee is not a holder in due course. But the rule contains a significant exception: "a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course." *Id*. The shelter rule expressly does not grant infinite transitivity of rights. The shelter rule's limits inhere in the purpose of the rule, which is "to assure the holder in due course a free market for the paper." Official Comment ¶ 3 to N.Y. U.C.C. § 3-201. If granting a transferee the shelter of a transferor's holder-in-due-course rights does not serve free-market purposes, the shelter rule does not apply. The shelter rule identifies a circumstance in which this policy is not implicated: when, as here, a prior owner acquires the instrument with notice of its defects.

The shelter rule is not applied when doing so would not serve its market-facilitating aim, as a New York State trial court recognized in *Manufacturers Hanover Trust Co. v. Robinson*, 157 Misc.2d 651, 656–57, 597 N.Y.S.2d 986, 989 (Sup. Ct. N.Y. Co. 1993). The *Robinson* facts are nearly as complicated as the transactional history of the Lodge loan. Partnership was a holder with knowledge of the notes' defects. Manufacturers, a holder in due course, acquired the notes and negotiated them back to Partnership. Partnership then renegotiated the notes to Manufacturers. The case explored whether Manufacturers could invoke its prior holder-in-due-course rights under the shelter rule; the court held that it could not. Noting that

---

(continued)
disregarded or stricken. *See Rowe Entm't, Inc. v. William Morris Agency, Inc.*, 2005 WL 22833, at *1 n.2 (S.D.N.Y. Jan. 5, 2005) (granting plaintiff's motion to strike an affidavit as "unauthorized briefing").

>[s]ince the same policy consideration in favor of a holder in due course does not apply to a party to a fraud or a prior holder who had knowledge of defenses, if Partnership is found to have fallen within the exceptions of the Shelter Rule, *it is consistent with the statutory policy* to prohibit it from improving its position and the market for its instrument by also denying any transferee acquiring the notes from it (in this case Manufacturer) shelter under the statute. The fact that Manufacturers was a prior holder in due course does not aid it under the language of the section.

157 Misc.2d at 657 (emphasis added).

Because the shelter rule, like holder-in-due-course status itself, is intended to foster free trade in negotiable instruments, it is instructive to consider the constraints that courts have recognized on holder-in-due-course status. The court in *Fidelity Bank National Association v. Avrutick*, 740 F. Supp. 222 (S.D.N.Y. 1990), cited approvingly a New Jersey Supreme Court case articulating the inverse relationship between the transferee's familiarity with the underlying transaction and the propriety of holder-in-due-course protections:

>"The basic philosophy of the holder in due course status is to encourage free negotiability of commercial paper by removing certain anxieties of one who takes the paper as an innocent purchaser knowing no reason why the paper is not as sound as its face would indicate. *It would seem to follow, therefore, that the more the holder knows about the underlying transaction, and particularly the more he controls or participates or becomes involved in it, the less he fits the role of a good faith purchaser for value; the closer his relationship to the underlying agreement which is the source of the note, the less need there is for giving him the tension-free rights considered necessary in a fast-moving credit-extending commercial world.*"

740 F. Supp. at 240 (quoting *Unico v. Owen*, 232 A.2d 405, 410 (1967)) (emphasis added).

The shelter rule and holder-in-due-course status exist to facilitate the same goal. In the judgment of the shelter rule's drafters, and of courts interpreting the rule, this purpose is not advanced by sheltering a prior holder who reacquires the instrument.

In light of the inapplicability of holder-in-due-course rights to prior holders with knowledge, U.S. Bank cannot claim the shelter rule's protection. U.S. Bank first acquired the loan when it purchased then-defendant Wachovia's trust business in December 2005 (*see* Rule

4

56.1 Statement ("56.1") ¶ 10; March 3, 2011 Declaration of Sara Manaugh ("Manaugh Decl."), Ex. I). U.S. Bank had notice then because the seller, Wachovia, was a party to this action, and BLS, the loan's servicer, was also a party to the action.  Defendants do not dispute this.

When the 2003 Trust terminated in October 2006, BLS, still on notice, bought the loan from U.S. Bank, then conveyed its interest to Bayview Financial, L.P. ("BFLP") (*see* 56.1 ¶ 15; Manaugh Decl. Ex. M & Ex. K, at ¶ 8).  BFLP had notice due to its 100% equity stake in BLS[5] and because public records show that BFLP and BLS have officers in common.  (*See* 2006 Annual Reports, filed with the Florida Department of State (www.sunbiz.org), for BLS, BFLP and Bayview Financial Management Corporation, BFLP's general partner, attached as Exhibit A to the March 30, 2011 Declaration of Rachel Geballe ("Geballe Decl."); Manaugh Decl. Ex. K, at ¶ 1.)  The Court may take judicial notice of the foregoing, as well as of the fact that BFLP was formerly known as Bayview Financial Trading Group, L.P. (*see* Limited Partnership Amendment date-stamped June 9, 2004, Geballe Decl. Ex. B), the entity that bought the Lodge loan from Olympia before its securitization in the 2003 Trust.

U.S. Bank (as trustee of the 2007 Trust) reacquired the Lodge note from BFLP, via several intermediary transfers to other Bayview Financial entities, in September 2007.  (56.1 ¶¶ 19–20; Manaugh Decl. Exs. O, P & Q.)  None of the transactions resulting in U.S. Bank's reacquisition of the Lodge loan was conducted in the open market.  The loan moved in a tight circle of closely associated yet (as defendants note, *see* Hodapp Opp. Decl. ¶ 6) "separate and distinct" entities.  None of these buyers or sellers benefits from the shelter rule, because none sought "a free market for the paper."

---

[5] *See* Carr Affidavit ¶ 3, Manaugh Decl. Ex. K.

That the shelter rule is inapplicable here is even more clear than it was in *Robinson*. The *Robinson* court found that even a prior holder in due course who reacquired instruments from a holder with notice did not have any holder-in-due-course rights to transfer. In this case, BFLP (formerly known as Bayview Financial Trading Group, L.P.; hereinafter "Bayview Financial") became a holder when it acquired the Lodge loan from Olympia in 2003. Assuming (without conceding) that Bayview Financial was a holder in due course in 2003, it reacquired the loan in 2006 after it had passed through the hands of U.S. Bank in 2005–2006 and BLS in 2006—neither of which were holders in due course, because both knew of this litigation. Bayview Financial therefore had no holder-in-due-course rights to transfer to U.S. Bank.

Defendants' insistence that Wachovia was a holder in due course (Def. Br. 2, 14; Hodapp Opp. Decl. ¶¶ 12–17) is beside the point for purposes of this motion. The recent disclosures of the serial securitizations establish that the holder-in-due-course defense—regardless of Wachovia's status in 2003—is unavailable to defendants as a matter of law.[6]

### III.   Defendants' Discovery Failings Merit Sanctions.

In her opening brief, plaintiff detailed the bases for sanctioning defendants' discovery misconduct. Defendants seek to dissuade the Court from imposing sanctions by contending variously that they met their discovery obligations; that if they did not fully meet their obligations, they met some of them; and that if they failed to produce discoverable documents, the lapse is excusable because they did not know that the documents (which were within their possession, custody or control) existed. Even if they knew of these documents, they explain,

---

[6] In their brief and the Hodapp Declaration in opposition to plaintiff's motion, defendants argue at length that Bayview, Wachovia and/or U.S. Bank have consistently held the Lodge note. (Def. Br. 17–19; Hodapp Opp. Decl. ¶¶ 4, 8–11, 16.) Although possession of the note is relevant to holder status, that issue is not relevant to and cannot be adjudicated on the instant motion.

6

they did not appreciate their significance to the case.  Finally, defendants suggest that their failure to disclose these documents was plaintiff's counsel's fault.  After offering these various justifications, defendants state that plaintiff was not prejudiced by their failure to disclose.

      **A.**    **Production of the 2003 Trust Documents Does Not Excuse Defendants' Failure to Produce the Resecuritization Documents.**

In opposition to plaintiff's motion, defendants submit attorney Timothy J. Fierst's declaration, which includes five documents totaling over 300 pages.  Defendants do not cite specifically to these documents in their brief; the exhibits are mentioned only as generic support for defendants' assertion that they produced documents regarding one securitization, ostensibly proving defendants' compliance with discovery rules.  (Def. Br. 2, 8.)  These exhibits lend material heft, if not persuasive substance, to defendants' papers and in fact accentuate rather than mitigate defendants' disclosure deficiencies.  Defendants produced these exhibits in 2006 or 2007, after Wachovia sold its interest in the 2003 Trust to U.S. Bank (*see* Manaugh Decl. Ex. J); yet defendants produced no documents related to that transaction.  Furthermore, despite producing three of the five exhibits in 2007, after the 2003 Trust terminated (*id.*), defendants did not mention the termination until more than a year later.

      **B.**    **Ignorance of the Documents' Existence Is No Justification.**

In his declaration in opposition to plaintiff's motion, BLS officer Robert E. Hodapp admits that he "was not aware of and was not notified that the [Lodge mortgage] loan was resecuritized into another trust." (Hodapp Opp. Decl. ¶ 21.) Yet his employer, defendant BLS, was identified as a servicer under the Transfer and Servicing Agreement for the 2005 Trust, and was a party to the Servicing Agreement for the 2007 Trust.  (Geballe Decl. Exs. C & D.)  These transactions were undertaken with BLS's knowledge and participation.  That BLS kept no contemporaneous record of these transactions cannot be credited.

7

Moreover, Mr. Hodapp did know of at least one resecuritization by or before November 2008, according to Rule 30 (b)(6) witness Jack Silver (Manaugh Decl. Ex. D, at 106); Mr. Hodapp concedes as much (Hodapp Decl. ¶¶ 1, 24). But neither this awareness, nor plaintiff's request for related documents,,prompted defendants to seek the discoverable documents.

Defendants' avowals of ignorance are not only implausible, but flatly contradicted by the evidence. Their argument bespeaks their continuing want of good faith in this litigation.

### C. There is no Justification for Defendants' Failure to Appreciate the Significance of the Securitization Documents.

To explain why defendants produced no documents about the Lodge loan's resecuritization until recently, Mr. Hodapp declares that he "did not believe that securitization issues were matters of dispute in the action." (Hodapp Opp. Decl. ¶ 21.) While "securitization issues" were not the subject of this litigation, ownership of the Lodge loan could hardly have been more relevant to the Rule 19 parties. As defendants' court filings have so often noted, the Rule 19 parties are part of this litigation because of their ownership interest in the Lodge loan. A change in ownership necessarily has repercussions for the parties and the litigation. Specifically, the Rule 19 parties' primary defense to this action has been the alleged holder-in-due-course status of Wachovia. As defendants are aware, a necessary condition of being a holder in due course is being a holder. Because the resecuritization of a loan has the potential of affecting holder status of that loan, the resecuritization of the Lodge mortgage loan would appear highly relevant to this action. Defendants' professed lack of comprehension of the relevance of resecuritization is simply impossible to accept.

### D. Plaintiff Was Not Responsible for Defendants' Discovery Failings.

Defendants seek to blame plaintiff for their failure to disclose, contending that after Jack Silver gave testimony in November 2008 about the resecuritization—testimony revealed to be

8

false—and after plaintiff's counsel, *on the record*, requested resecuritization documents, plaintiff should have done more to encourage production. (Hodapp Opp. Decl. ¶ 24; Def. Br. 8–10). But the record shows that defendants—both during and after the deposition—repeatedly misstated the nature of the resecuritization, by telling the Court and the parties that Wachovia was still the holder of the Lodge loan. Mr. Silver swore that while U.S. Bank had taken custody of the note from Wachovia, the note had not actually changed hands because "the operation, the location is the same," and the custodian, whether Wachovia, "Wachovia/U.S. Bank," or "U.S. Bank/Wachovia," is "the same entity, just a different name" (Manaugh Decl. Ex. D at 97:11–98:3). The clear impact of these misrepresentations is to downplay the significance of the resecuritization and the operative documents. Likewise, the defendants' statements that Wachovia is the holder of the Lodge loan, and that U.S. Bank is the successor to Wachovia, misled the parties and the Court about the true state of affairs. Plainly, "successor" implies a relationship other than between transferor and transferee, or between buyer and seller. *See*, *e.g.*, *City of New York v. Turnpike Dev. Corp.*, 36 Misc.2d 704, 706, 233 N.Y.S.2d 887, 890 (Sup. Ct. Kings Co. 1962) ("In order to be a 'successor in interest,' a party must continue to retain the same rights as the original owner without a change in ownership. . . . It does not include a transfer from one party to another.") While defendants protest that "[n]othing was hidden from the Plaintiff" (Hodapp Opp. Decl. ¶ 25), and that "Bayview, US Bank and Wachovia never hid the fact that US Bank is now the holder of the Lodge loan" (Def. Br. 9); the record shows that they withheld and concealed information from plaintiff and from the Court; their persistent contradiction of all evidence to the contrary evidences bad faith.

9

### E.    Severe Prejudice Resulted from Defendants' Conduct.

Defendants appear to argue that their dilatory discovery practice did not prejudice plaintiff because she now has the information and the litigation posture is unchanged. This is patently incorrect. Plaintiff now possesses information that fatally undermines defendants' holder-in-due-course defense. Had plaintiff obtained this information earlier, she would have developed the issues through deposition examination and expert consultation, and could have sought the relief she now requests during the parties' dispositive motion practice. The cost of being deprived of the opportunity to seek timely adjudication is incalculable.

### F.    Defendants' Demonstrated Bad Faith Persists.

Because defendants' improper discovery conduct was not justified, prejudiced plaintiff, and evidenced bad faith, the imposition of sanctions is justified.

## CONCLUSION

For the foregoing reasons, the Bayview defendants' holder-in-due-course defense should be stricken. The Bayview defendants should be ordered to pay all attorneys' fees accrued in connection with this motion.

Dated:      March 30, 2011
            Brooklyn, New York

By:    /s/ Sara Manaugh

| | | |
|---|---|---|
| JEAN CONSTANTINE-DAVIS | J. CHRISTOPHER JENSEN | MEGHAN FAUX |
| AARP Foundation Litigation | Cowan, Liebowitz & Latman, P.C. | SARA MANAUGH |
| 601 E Street NW | 1133 Avenue of the Americas | JENNIFER LIGHT |
| Washington, D.C. 20049 | New York, New York 10036-6799 | RACHEL GEBALLE |
| (202) 434-2058 | (212) 790-9204 | South Brooklyn Legal Services |
| JCDavis@aarp.org | jcj@cll.com | Foreclosure Prevention Project |
| | | 105 Court Street, 3rd Floor |
| | | Brooklyn, New York 11201 |
| | | (718) 237-5500 |
| | | mfaux@sbls.org |

*Attorneys for Plaintiff*

10