UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------- X

MARY LODGE,                                        Case No. 05 Civ. 187 (KAM)

               Plaintiff,

        - against -

UNITED HOMES, LLC, UNITED PROPERTY GROUP,
LLC, YARON HERSHCO, GALIT NETWORK, LLC,
OLYMPIA MORTGAGE CORP., BAYVIEW LOAN
SERVICING, LLC, BAYVIEW ASSET MANAGEMENT,
LLC, US BANK AND TRUST, and WILSHIRE CREDIT
CORP.,

               Defendants.

--------------------------------------------------------------------- X

## DECLARATION OF ROBERT E. HODAPP

    I, Robert E. Hodapp, do hereby declare, under penalties of perjury pursuant to 28 U.S.C.

§1746, that the following statements are true and correct:

    1.    I am a First Vice President and Corporate Counsel of Bayview Loan Servicing, LLC

("Bayview"), one of the Fed. R. Civ. P. 19 defendants in this action. I am an attorney at law licensed

to practice in the State of Florida. I am personally familiar with the facts and circumstances

surrounding this action, including the purchase of the Lodge loan and the subsequent securitization

of that loan in 2003  I have personal knowledge of the facts stated herein based upon my own

personal knowledge and from documents in the custody and control of Bayview that relate to this

matter and also based upon the procedural history of this action. I am also personally familiar with

the deposition of Jack Silver ("Silver"), a Vice President of Bayview, which was conducted by

plaintiff Mary Lodge's counsel on November 20, 2008, as I attended and personally witnessed that

deposition. *See* Ex. D to the Declaration of Sara Manaugh (the "Manaugh Decl."), one of plaintiff

Mary Lodge's counsel, submitted in support of Mary Lodge's pending motion, which exhibit is a full and accurate transcribed representation of the testimony provided by Silver.

2.     Bayview is a mortgage loan servicer that services loans on behalf of, among others, Wachovia Bank, N.A. ("Wachovia") and US Bank, N.A. ("US Bank"). US Bank is now the owner of the Lodge loan. Bayview's responsibilities include the management of various mortgage loans, including collecting payments, paying taxes and other charges due on mortgaged properties, and collecting the sums due under various loan documents if those loans fall into default.

3.     I make this Declaration in opposition to plaintiff Mary Lodge's ("Lodge" or "Plaintiff") motion for an order to strike the holder in due course defense to the claims of the Plaintiff, which defense applies to and is held by US Bank. Plaintiff bases its motion on the assertion that Bayview and US Bank's predecessor, Wachovia, disregarded its discovery obligations in this action. Such assertion is without merit and the inferences raised by Plaintiff's counsel are nothing more than an attempt to create an issue where one otherwise does not exist.

### BAYVIEW AND WACHOVIA'S ROLES IN THE TRANSACTION

4.     This action was commenced against the co-defendants by Plaintiff to collect damages arising from the co-defendants' alleged violations of various Civil Rights and other federal and state statutes. Bayview and Wachovia were originally made defendants to the action because Wachovia, as trustee, was the holder of the note and mortgage at the time the action was commenced, and Bayview was the servicer of the mortgage. I have confirmed with Thomas Carr, Senior Vice President of Bayview Financial Management Corp. that US Bank is the current holder of the mortgage, as trustee for the Bayview Asset-Backed Securities Trust Series 2007-30 which confirmed the information provided by Mr. Silver in his November 2008 Deposition.

5.     On or about January 16, 2003, Lodge purchased the property known as and

located at 249 Halsey Street, Brooklyn, New York (the "Premises") for the sum of Four Hundred

and Nineteen Thousand Dollars ($419,000.00) (the "Purchase Price").  Lodge borrowed 90% of

the purchase price from Olympia Mortgage Corp. ("Olympia") and in return signed two notes in

favor of Olympia.  The first note, in the amount on $335,200.00 (the "First Note"), was secured

by a first mortgage against the Premises (the "First Mortgage").  The second note, in the amount

of $41,900.00, was secured by a second mortgage lien against the Premises.  To the best of my

knowledge, neither Bayview nor Wachovia or US Bank, as Wachovia's successor, has never held

an interest in the second note or second mortgage.

6.      In or about June of 2003, Olympia offered to sell the First Mortgage to Bayview

Financial Trading Group, L.P.  ("Bayview Financial"), which is a separate and distinct company

from Bayview.  On or about June 25, 2003, Olympia and Bayview Financial entered into a

Supplement to Loan Sale Agreement memorializing Olympia's sale of 53 loans, including the

First Note and First Mortgage, to Bayview Financial.  *See* Ex. S to the Declaration of Sara

Manaugh, one of Plaintiff's counsel, submitted in support of the pending motion (the "Manaugh

Decl.").

7.      After performing an independent due diligence and review of the Lodge First

Mortgage and First Note, Bayview Financial paid valuable consideration in the amount of

$336,000.00 plus applicable interest for the First Note and First Mortgage.  In fact, Plaintiff's

counsel, Ms. Constantine-Davis, was advised of this fact during the Silver Deposition.  The

original note was endorsed in blank and transferred to Bayview's document custodian,

Wachovia.  *See* Ex. B and D (page 96 thereto) to the Manaugh Decl.

8.      Shortly after the First Note and First Mortgage were purchased by Bayview

Financial from Olympia, they were securitized and the mortgage was placed into the Bayview

Series 2003-E Trust. Wachovia served as the trustee of the securitization trust. *See* Ex. L to the Manaugh Decl.; *see* page 9 to Plaintiff's Memorandum of Law. Accordingly, the First Mortgage was assigned by Olympia to Wachovia as Trustee and the original First Note was endorsed in blank and was delivered and in the possession of Wachovia as Trustee. *See* Ex. A and B to the Manaugh Decl. Bayview serviced the First Note for the benefit of Wachovia, as Trustee. Wachovia, as Trustee, thus became the owner and holder of the First Note and First Mortgage, with Bayview as servicer. Possession of the original First Note was held by Wachovia with the right of access to the Note in Bayview in its role as servicer. *See* Ex. D to the Manaugh Decl., p. 96 thereof.

9.     US Bank was the successor to Wachovia for the 2003-E Trust, having purchased Wachovia's trust division, custodian rights, and thus became the owner and holder of the First Note and the First Mortgage. Bayview, as servicer, has continuously had the right of possession, custody and control of the original documents, including the First Note and First Mortgage on behalf of every holder of the Lodge loan following Bayview Financial, LP's acquisition, and in fact, currently has possession of the original note on behalf of the owner thereof. *See* Ex. I to the Manaugh Decl.

10.     On November 20, 2008, at the deposition of Jack Silver, a Vice President of Bayview Asset Management, the original First Note was shown to Plaintiff's counsel, Jean Constantine-Davis on November 20, 2008 by me and Mr. Silver. The Note, annexed as Exhibit A to the Manaugh Decl., is a true and accurate copy of the original, and Ms. Constantine-Davis cannot in good faith argue differently.

11.     Currently, U.S. Bank, which was the successor to Wachovia as trustee, is the current holder of the First Note and First Mortgage in its own right, as Trustee for the Bayview

Asset-Backed Securities Trust Series 2007-30.

12.     When Bayview Financial purchased the First Note and First Mortgage from Olympia, it had no notice of any defense or claim against it on the part of Lodge or any other person.  In fact, Lodge continued to make her mortgage payments until January of 2005, oddly enough, the same month she commenced this action.

13.     The fact that Bayview was "aware" of appraisal and other "issues" generally affecting the real estate market as a whole in Brooklyn does not, and cannot, place Bayview, or any other entity purchasing mortgages within the secondary mortgage market in 2003, on notice of any claim or defense on the part of a particular borrower.  Neither Bayview nor Wachovia were under notice of any claim or defense.  To impose constructive notice on Bayview or Wachovia would be extreme and contrary to law.

14.     Bayview, after receiving the appraisal of the Premises, conducted its own independent due diligence and, based upon that due diligence, determined that the value of the Premises provided Wachovia as Trustee with security for its first debt, *i.e.,* $360,000 value in 2003 vs. $334,007.22 principal balance.

15.     In fact, Ms. Lodge made payments on the First Mortgage and First Note for more than one (1) year after Bayview purchased the loan.  How then could either Bayview or Wachovia have notice that Lodge could not afford the necessary payments?

16.     Since Bayview and Wachovia as Trustee purchased the First Note and First Mortgage in good faith and without any notice of Lodge's potential claims, and they were in possession of the original loan documents, which were exhibited to Plaintiff's counsel, Bayview and Wachovia were holders in due course of the Note and Mortgage in 2003.

17.     Thus, any entities which took their interest in the First Note and First Mortgage

from Wachovia benefits from the rights held by a holder in due course by virtue of the "shelter rule."

18.     Plaintiff's counsel alleges that Bayview and Wachovia ignored their discovery obligations by failing to provide documents which showed the re-securitization of the First Note and First Mortgage after the initial securitization in 2003. This is certainly not the case.

19.     As an attorney, I take discovery obligations very seriously. I supervise litigation matters in which Bayview is a party. Bayview was named as a Rule 19 defendant in this action as the mortgage loan servicer for Wachovia as trustee, the holder of the First Note and First Mortgage in 2003 when Bayview Financial arranged for the purchase of the loan.

20.     Bayview had knowledge and possession of documents relating to the securitization of the Lodge loan as it existed in 2003. Indeed, at the inception of this litigation in 2006 and 2007, in response to Demands for Document Productions, Bayview and Wachovia provided documents to Plaintiff's counsel evidencing the securitization of the Lodge loan in the 2003-E Trust. In fact, some of these documents were also provided to Plaintiff's counsel in response to a Subpoena Duces Tecum also served by Plaintiff's counsel upon Bayview in the Rodney Gibbons companion case.[1]

21.     In 2006, the Lodge loan was resecuritized. However, I was not aware of and was not notified that the loan was resecuritized into another trust. Also, I did not believe that securitization issues were matters of dispute in the action.

22.     The capital markets group of Bayview Financial, the parent company of Bayview, conducts and manages the securitization transfers of loan portfolios.

23.     Bayview addressed its discovery obligations in good faith throughout this action

---

1 Neither Bayview, Wachovia nor US Bank are parties to any of the other companion cases.

by producing to Plaintiff's counsel all documents of which it was aware.

24.     Although Jack Silver clarified his November 2008 deposition testimony to reflect that the First Note and First Mortgage had been re-securitized in 2007 (*see* Ex. D to the Manaugh Decl., page 106 thereof), it was not until the winter of 2010 that Plaintiff's counsel began inquiring about further securitization documents.

25.     Nothing was hidden from the Plaintiff. The 2003 securitization of the Lodge loan was disclosed to the Plaintiff by Bayview's document productions, and Jack Silver advised Plaintiff's counsel of the final re-securitization which took place in 2007. Notwithstanding the information obtained by the Plaintiff in November 2008, the Plaintiff neither sought additional document production nor did she seek to amend her complaint.

26.     Thereafter, it was not until January 4, 2011 that our counsel was contacted by counsel for the Plaintiff and asked for confirmation that Bayview currently serviced the Lodge mortgage, and asked for confirmation of the current ownership of the note. The next day, our counsel confirmed that US Bank was the owner of the Lodge loan and Bayview continued to service the loan. *See* Ex. E to the Manaugh Decl.

27.     Plaintiff's counsel requested documents evidencing the re-securitization of the Lodge loan as noted during the 2008 deposition of Jack Silver. We continued to proceed with the utmost of good faith and investigate the existence of any documents evidencing the re-securitzation of the Lodge loan.

28.     At that point, I conducted an investigation and inquiry with employees of other Bayview entities and determined through information obtained from Thomas Carr, a Senior Vice President of Bayview Financial Management Corp., the general partner of Bayview Financial, that there existed other documents relating to the re-securitization of the First Note and First

Mortgage. In fact, on January 13, 2011, 9 days after Plaintiff's inquiry, we were able to locate and provide a copy of a Wachovia Assignment and Assumption Agreement between Wachovia Bank, N.A. and US Bank, N.A. and forwarded same to Plaintiff's counsel along with confirmation that our counsel was representing the interests of US Bank. *See* Ex. H and I to the Manaugh Decl.

29.     On that same day, January 13, 2011, Plaintiff's counsel submitted a letter motion to compel the production of documents establishing proof of the re-securitization of the Lodge loan. Indeed, on January 18, 2011, Bayview's counsel advised Magistrate Judge Mann that we were continuing our good faith search to satisfy the Plaintiff's inquiries. *See* Ex. A hereto. Judge Mann thereafter ordered that by January 28, 2011, Bayview was to produce documents responsive to Plaintiff's inquiry regarding the re-securitization of the Lodge loan.

30.     I conducted an investigation and inquiry with employees of other Bayview entities and determined through information obtained from Thomas Carr, a Senior Vice President of Bayview Financial Management Corp., the general partner of Bayview Financial, that there existed other documents relating to the re-securitization of the First Note and First Mortgage. Mr. Carr then forwarded the re-securitization documents to our counsel, and they were then produced to Plaintiff on January 28, 2011 in satisfaction of the Court's directive.

31.     An order precluding proof of the holder in due course defense would severely prejudice Bayview and US Bank's rights within the secondary mortgage market. Bayview attempted to comply in continued good faith with its discovery obligations. It is submitted that a sanction order has already been issued under the premise of this discovery issue and to further order preclusion under these circumstances where Bayview has been forthright would be prejudicial.

32.     The Plaintiff would not be prejudiced by the denial of its motion as they were on notice of the re-securitization of the Lodge loan since November 2008 and were aware that Bayview maintained possession of the original note.  Bayview has conducted itself with the utmost good faith in producing documents.  Indeed, Bayview has complied with the Court's order with respect to the production of the re-securitization documents.  Therefore, it is respectfully requested that Plaintiff's motion be denied.

Dated:  March 25, 2011
          Coral Gables, Florida

ROBERT E. HODAPP

# EXHIBIT A



590 Madison Avenue, New York, NY 10022-2524  ▪  p212 223-4000  ▪  f212 223-4134

January 18, 2011


VIA ECF
The Honorable Roanne L. Mann
United States Magistrate Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York  11201


Re:     *Lodge v. United Homes, LLC, et. al.*
        *Case No. CV-05-0187 (KAM)(RLM)*

Dear Judge Mann:

    This firm represents the defendants Bayview Financial Services LLC and Wachovia Bank, N.A. (the "Wachovia Defendants").[1]  We write in response and in opposition to the letter motion (the "Motion") submitted by counsel for Mary Lodge ("Lodge") seeking the Court's assistance and an order compelling the Wachovia Defendants to provide information regarding the succession of U. S. Bank and Trust Co., N.A. ("US Bank") as trustee /owner of the Lodge first mortgage as well as copies of documents allegedly created by Odyxa Bermudez, a former employee of Bayview and a witness to be called by Bayview.

    First and foremost, the tone and tenor of the Motion that there is a discovery dispute and the Wachovia Defendants have not cooperated in Lodge's request for certain information is wholly false and the statements made in support of the Motion are misleading.  Simply stated, there is no dispute and the Wachovia Defendants are indeed cooperating with Lodge's requests and are furnishing information to the extent that information exists and is available.  It is submitted that Lodge is asserting that an issue exists merely because a January 13, 2011 deadline

---

[1] It was stipulated by the parties that the defendant Wachovia Bank, N.A. would be amended to be U.S. Bank and Trust Co., N.A. and the plaintiff, Mary Lodge, filed a Second Amended Complaint to reflect this amendment.  The allegation contained in the Second Amended Complaint that states that U.S. Bank and Trust Co., N.A. was substituted as the trustee of the trust into which Mary Lodge's first mortgage was sold will be admitted within the defendant's answer.  Ms. Lodge's counsel was advised of this admission on January 6, 2011.

Crowell & Moring LLP  ▪  www.crowell.com  ▪  Washington, DC  ▪  New York  ▪  California  ▪  Anchorage  ▪  London  ▪  Brussels

The Honorable Roanne L. Mann
January 18, 2011
Page 2

existed to file requests for the Court's assistance in the wake of a discovery dispute. As the facts
will show, there is no dispute, and Lodge has wasted this Court's resources.

In preparation for the filing of the Joint Pre-trial Order (the "JPTO"), the Wachovia
Defendants listed Odyxa Bermudez, a former employee of Bayview, in its draft as a witness for
the defense of this action. On December 6, 2010, the parties met to discuss various issues
relating to information included within their respective drafts of the JPTO. As of that time,
Lodge was aware of the existence of Ms. Bermudez and the Wachovia Defendants' intent on
calling her as a witness. In fact, preliminary arrangements to take Mr. Bermudez' deposition
were made during a conference call with Judge Matsumoto on December 15, 2010 at which time
I advised that I would seek approval to share the costs of Ms. Bermudez' deposition. No
additional information was discussed or requested at that time.

Additionally, resecuritization of the trust into US Bank into which the Lodge mortgage
was placed was raised during the deposition of Jack Silver, Bayview's witness, during the spring
of 2009. I requested that any demand which Lodge would have for documentation relating to the
resecuritization be placed in writing. No such demand was made.

Notwithstanding the foregoing, we did not hear from Lodge until approximately
Wednesday, January 5, 2011 when Jean Constantine-Davis, one of the attorneys for Lodge,
advised me that she had spoken with Ms. Bermudez by telephone (without providing me with the
courtesy of being on the call) and that Ms. Bermudez allegedly stated that she generated computer
notes regarding alleged questionable valuations of properties which Bayview was considering
purchasing from the defendant Olympia Mortgage. The information allegedly obtained by this
conversation is hearsay and is inadmissible.

On January 6, 2011, Ms. Constantine-Davis elaborated upon the Bermudez information
and the securitization information which she was seeking. Thereafter, by e-mail on January 6,
2011 at 2:41 p.m., I advised Ms. Constantine-Davis that "[o]ur client is searching their
computers for any additional entries from Ms. Bermudez. We will advise you of their findings."
Also, by the same e-mail, I advised Ms. Constantine-Davis that Jack Silver of Bayview, who
would assist in providing the information sought, was serving jury duty and was out of the office
for the remainder of the week. Additionally, we advised that we were admitting that part of the
amended complaint that alleges US Bank is the holder of the Lodge mortgage, and that we were
attempting to obtain copies of documents reflecting that change. At the same time, I requested
that Ms. Constanting-Davis review the previously forwarded Purchase and Sale Agreements
("PSA") to see if they satisfied her inquiry. When she advised that the PSA's did not satisfy her
inquiries, we continued our search.

By e-mail dated January 11, 2011, we advised Ms. Constantine-Davis that Mr. Hodapp,
Vice President and Corporate Counsel to Bayview, did not find any notes generated by Ms.

The Honorable Roanne L. Mann
January 18, 2011
Page 3

Bermudez on their computer systems.  I offered a certification from Mr. Hodapp regarding same, but our offer was rebuked.

On January 13, 2011, before the Motion was filed, a copy of a Wachovia Assignment and Assumption Agreement between Wachovia Bank, N.A. and US Trust was forwarded to Ms. Constantine-Davis in satisfaction of her request for information.  However, Ms. Constantine-Davis stated that the document made no specific reference to the Lodge mortgage and did not resolve her inquiry.  Thereafter, Lodge's counsel filed the Motion which clearly misstates that there is a discovery dispute.

On January 14, 2011, Ms. Constantine-Davis and I continued to discuss Ms. Bermudez and the securitization issue.  By e-mail, I advised her that I would continue to work towards satisfying her inquiries, and that the Motion was unnecessary given the fact that we undertook to provide her with the information she sought.  Notwithstanding my request, counsel refused to withdraw the Motion.

At this time, Lodge is seeking an order compelling the Wachovia Defendants to promptly commence a thorough search and to produce any notes or documents created by Ms. Bermudez relative to Bayview's purchase of all mortgages from Olympia Mortgage Corporation including the Lodge and Gibbons mortgages.  It is submitted that as shown above, Bayview indeed conducted such a search, and continues to do so.  However, seeking such valuation information relative to all mortgages which Bayview considered purchasing from Olympia is wholly irrelevant and overbroad.  The Wachovia Defendants are merely Rule 19 defendants, and there has been no allegation of wrongdoing on their part in conjunction with the other defendants.  The Wachiovia Defendants are not defendants to any of the other five (5) actions, and are only a defendant in the Lodge action.  Thus, information pertinent only to the Lodge mortgage is relevant.[2]

Therefore, as shown herein, contrary to the tenor of the Motion, the Wachovia Defendants have undertaken to provide Lodge with the information her counsel seeks, to the extent same exists.  Indeed, we have advised Ms. Constantine-Davis that we are continuing to search for information which would be in further response to her inquiry.  Lodge's counsel has made inquiry regarding the Bermudez information and the resecuritization information only within the last two (2) weeks, and the Wachovia Defendants have responded timely and appropriately.  As the Wachovia Defendants have responded to Lodge and continue in good faith to search for and forward information in its possession, the Motion for an order compelling the

_____

[2] If the Court directs that information regarding other mortgages, to the extent same exists, be delivered, then appropriate redaction of information must be engaged in to protect the privacy rights of the property owners.

The Honorable Roanne L. Mann
January 18, 2011
Page 4


Wachovia Defendants to search for and forward the information sought is unwarranted and
should be denied.

      We are available for a conference to discuss these matters should Your Honor so require.

                        Respectfully submitted,

                        */s/ Timothy J. Fierst*

                        Timothy J. Fierst

TJF:me
cc:      Counsel of Record (Via ECF)