# EXHIBIT B

# LOAN SALE AGREEMENT

THIS AGREEMENT (the "Agreement") is entered into and is effective as of this 25th day of March, 2002 by and between **Olympia Mortgage Corp.**, a New York (the "Seller"), with its principal place of business at 1413 Avenue J, Brooklyn, NY 11230 and Bayview Financial Trading Group, L.P., a Delaware limited partnership (the "Purchaser") with its principal place of business at 2665 South Bayshore Drive, Suite 301, Miami FL 33133, for the sale by Seller of the residential mortgage loans, co-op loans and/or contracts for deed, more specifically set forth on Exhibit "A" attached hereto and incorporated herein (hereinafter collectively called the "Loans" and individually called a "Loan"), on a servicing released basis and pursuant to the terms hereof. Each Loan is evidenced by a promissory note or contract for deed (the "Evidence of Indebtedness") and is secured by a mortgage, deed of trust, warranty deed or security instrument (each a "Security Instrument") recorded in the real property records of the county in which the real property or co-op premises (the "Property") is located. The parties mutually agree as follows:

**Section 1.** **Sale and Consideration.** Seller hereby agrees to sell and assign to Purchaser upon payment by Purchaser of the Purchase Price, and Purchaser hereby agrees to purchase from Seller, on the Closing Date, the Loans specified on Exhibit "A", including the related servicing rights, and all benefits incident to the ownership of the Loans arising on or after the cut-off date (the "Cut-off Date"). The aggregate purchase price for the Loans (the "Purchaser Price") shall consist of (a) the applicable purchase price percentage specified on Exhibit "A" multiplied by the outstanding principal balance of the Loans as of the Cut-off Date, plus (b) accrued but unpaid interest thereon up to but not including the closing date ("Closing Date") for each Loan not more than 30 days delinquent as of the Cut-off Date. Purchaser shall not pay Seller for any negative escrows, servicing advances or corporate advances. Seller acknowledges that this transaction is a sale of all Seller's interest in the Loans, not a grant of a security interest to secure a loan. However, if such conveyance is deemed to be in respect of a loan, it is intended that (i) the rights and obligations of the parties shall be established pursuant to the terms of this Agreement; (ii) Seller hereby grants to Purchaser a first priority security interest in all of Seller's right, title and interest in, to and under, whether now owned or hereafter acquired, the property described in the first paragraph of this Agreement; and (iii) this Agreement shall constitute a security agreement under applicable law.

**Section 2.** **Closing Date.** The Closing Date for the purchase of the Loans is April 2002.

**Section 3.** **Representations, Warranties and Covenants of Seller.** Seller represents, covenants and warrants to Purchaser the following with respect to each Loan as of the Closing Date:

(a) Each Security Instrument is a good and valid instrument and constitutes either: (i) a valid first, second or lower priority lien, as specified on Exhibit "A", against the Property therein described and enforceable in accordance with its terms; (ii) marketable title to the Property free and clear of any liens, in each case subject only to (A) liens for real estate taxes and special assessments not yet due and payable and (B) covenants, conditions, restrictions and

\\BAYVIEW_1\SYS\MSOFFICE\USERS\BZuniga\Laura\Olympia Mortgage_O-10913-04_032502_Perf Loans (short) 2001-5.doc

easements generally acceptable to mortgage lending institutions in the area in which the Property is located which do not affect the marketability or title to the Property; (iii) with respect to junior liens, the lien of the each prior Security Instrument, or (iv) a valid first priority pledge of the borrower's lease for a particular unit in the co-op premises and the shares of stock in the cooperative housing corporation which is the owner of such premises, free and clear of any liens except the underlying mortgage of the cooperative housing corporation.

(b)  Seller is vested with full title to the Loan and has the power and authority to assign and transfer, and has assigned and transferred, the Loan to Purchaser under this Agreement free and clear of all encumbrances.

(c)  The original principal face amount of each Evidence of Indebtedness has been advanced to the borrower. There is no requirement for any future advances. There is no default existing under (a) the Security Instrument or Evidence of Indebtedness or (b) any senior, superior or prior Security Instrument or Evidence of Indebtedness, except as disclosed on Exhibit "B".

(d)  The Loan was originated, closed and serviced in compliance with the Evidence of Indebtedness, Security Instrument and the other loan documents executed in conjunction therewith (collectively, the "Loan Documents") and all applicable federal, state, and local laws, regulations, ordinances and rules, including without limitation those pertaining to usury, truth in lending (including without limitation the Home Ownership and Equity Protection Act of 1994, as amended, and all statutes, regulations, rules and ordinances relating to predatory lending practices), real estate settlement procedures, consumer credit protection, equal credit opportunity, disclosure requirements, collection and enforcement.

(e)  There are no undisclosed or unrecorded agreements between Seller and borrower, directly or indirectly having any effect on the obligations of borrower or which alter borrower's obligation to make timely payments on the Security Instrument or Evidence of Indebtedness. All loans are recourse to the borrower.

(f)  The Security Instrument and Evidence of Indebtedness are enforceable according to their terms. Borrower has no claim or defense to the performance of its obligations under the Security Instrument or Evidence of Indebtedness. No Security Instrument has been satisfied, cancelled, rescinded, subordinated or modified; except as disclosed on Exhibit "B".

(g)  No borrower was a debtor in any state or federal bankruptcy or insolvency proceeding at the time the Loan was originated or on the Closing Date.

(h)  The Security Instrument and Evidence of Indebtedness were executed by the person (or persons) purported to be the borrower (or borrowers) and contain no forged or unauthorized signatures. Each party thereto was of full age and legal capacity to contract at the time of execution.

(i)  The information set forth on Exhibit "A" is true and correct.

(j)  Each Security Instrument, Evidence of Indebtedness and each other Loan Document, instrument or record evidencing or related to the Loan is true, correct, complete and

undisputed, and no credit has previously been given to any borrower which was gratuitous or was given for a payment made by an employee or agent of Seller or has arisen from renewal granted for the purpose of concealing past or present delinquency.

(k) No fraud occurred on the part of any person in connection with the origination or servicing of the Loan that could adversely affect Purchaser or the enforceability of the Loan, or result in Purchaser incurring a loss.

(l) No Property encumbered by a Security Instrument has been released from the related lien.

(m) All improvements on the Property are in good repair and condition and no damage exists which would materially affect the value or marketability of the Property or the Loan. No hazardous or toxic substance, including but not limited to oil and asbestos, is present on, in, at, under or in the vicinity of any Mortgaged Property, such that the value of such property would be adversely affected or the owner of, or holder of a security interest in, such property would be subject to any obligation, cost or liability under any environmental law, rule or regulation.

(n) All real estate taxes, assessments, water and sewer charges, insurance premiums, municipal charges, leasehold payments, ground rents, condominium or homeowner association fees which are due and payable on the Property have been paid. All amounts due the cooperative housing corporation from borrower under the related lease have been paid. Borrower is not in default under the related cooperative lease. Seller has not received any notice of default of borrower under the co-op lease from the cooperative housing corporation.

(o) Seller is duly organized and in good standing under the laws of the state of its organization. Seller has all requisite organizational power and authority to own the Loan and to enter into and perform its obligations under this Agreement.

(p) This Agreement was executed by an officer of Seller duly authorized to do so.

(q) No consent, approval, authorization or order of any court or governmental agency, instrumentality or body is required for the execution, delivery and performance by Seller of or compliance by Seller with this Agreement or the sale of the Loans as evidenced by the consummation of the transactions contemplated by this Agreement, or if required, such approval has been obtained prior to the date of execution hereof.

(r) Seller will provide Purchaser, at Seller's expense, for each contract for deed, an original owner's title insurance policy, or if the title policy is not yet available, an original, marked, title insurance commitment, for the benefit of Purchaser, its successors and/or assigns, from a title insurance company acceptable to the Federal National Mortgage Association, in an amount not less than the related purchase price and insuring ownership of the Property vested in Purchaser, subject only to the matters set forth in Section 3(a) herein.

(s) All buildings and improvements upon every Property are insured by a generally acceptable insurer against loss by fire, hazards of extended coverage and such other hazards as

are customarily insured against in the area where each Property is located in an amount which is at least equal to the lesser of: (a) the outstanding principal balance of the applicable Loan; (b) the full replacement value of the Property, or (c) in the case of flood insurance, the maximum amount of insurance which is available under the Flood Disaster Protection Act of 1973. If the Property is in an area identified in the Federal Register by the Federal Emergency Management Agency as having special flood hazards and in which flood insurance has been made available, a flood insurance policy meeting the requirements of the current guidelines of the Flood Insurance Administration is in effect with a generally acceptable insurance carrier. All individual insurance policies contain a standard mortgagee clause naming Seller, its successors and/or assigns, as mortgagee, and all premiums thereon have been paid. Each Security Instrument obligates the mortgagor thereunder to maintain all such insurance at the mortgagor's cost and expense, and upon the mortgagor's failure to do so, authorizes the holder of the Security Instrument to obtain and maintain such insurance at mortgagor's cost and expense and to seek reimbursement therefor from the mortgagor.

(t) Notwithstanding any other provision of this Agreement, Seller will repurchase within ten (10) days of Purchaser's demand any Loan for which the first payment due Purchaser after the Closing Date is not made by the borrower within thirty (30) days of its due date. The repurchase price shall be an amount equal to the Purchase Price for the Loan plus accrued but unpaid interest through the date of repurchase. In the event of any repurchase, Seller shall pay all of Purchaser's costs and fees associated with such loan repurchase. The parties acknowledge that the breach of this provision is not susceptible to cure.

(u) With respect to each Security Instrument that is a deed of trust, a trustee, duly qualified under applicable law to serve as such, currently so serves and is named in the deed of trust or has been substituted in accordance with applicable law, and no fees or expenses are or will become payable to the trustee under the deed of trust, except in connection with a trustee's sale after default by the Borrower or in connection with the release of the related Property or related security for such Loan following payment of such Loan in full.

(v) Each Mortgage Instrument contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the related Mortgaged Property of the benefits of the security provided thereby, including (i) in the case of a Mortgage designated as a deed of trust, by trustee's sale, and (ii) otherwise by judicial foreclosure. Upon default by a Borrower on a Loan and foreclosure on, or trustee's sale of, the related Mortgaged Property pursuant to the proper procedures, the holder of such Loan will be able to deliver good and merchantable title to the related Mortgaged Property. There is no homestead or other exemption available to a Borrower that would interfere with the ultimate sale of the related Mortgaged Property at a trustee's sale or the right to foreclose the Mortgage Instrument; and each Security Instrument contains customary and enforceable provisions such as to render the rights and remedies of the holder thereof adequate for the realization against the related Cooperative Loan Property of the benefits of the security provided thereby.

(w) Each Security Instrument contains an enforceable provision (to the extent not prohibited by law) for the acceleration of the payment of the unpaid principal balance of the related Loan in the event that the related Property is sold or transferred without the prior written consent of the mortgagee thereunder.

73202
\\BAYVIEW_1\SYSMSOFFICE\USERS\BZuniga\Lsers\Olympia Mortgage_O-10913-04_032502_Perf Loans (short) 2001-5.doc

(x) No Loan contains provisions (i) pursuant to which loan payments will be paid or partially paid with funds deposited in any separate account established by Seller, the borrower, or anyone on behalf of the borrower, (ii) pursuant to which loan payments will be paid by any source other than the borrower, or (iii) any other similar provisions which may constitute a "buydown" provision. No Loan is a graduated payment mortgage loan and no Loan has a shared appreciation or other contingent interest feature.

(y) With respect to any Loan which provides for an adjustable interest rate, all rate adjustments have been performed in accordance with the terms of the related Note, subsequent modifications, if any, and all applicable law.

(z) Each Evidence of Indebtedness is not and has not been secured by any collateral except the lien of the corresponding Security Instrument and the security interest of any other applicable security agreement or chattel mortgage specified in this Agreement.

(aa) Each Loan in the form of a contract for deed is not a "supervised loan" or a "regulated loan" within the meaning of the Uniform Consumer Credit Code as in effect in the state of Colorado, Idaho, Indiana, Iowa, Kansas, Maine, Oklahoma, South Carolina or Wyoming.

**Section 4.** **Remedies for Breach.**

(a) In the event of a breach of any of the foregoing representations or warranties by Seller, Seller will be required (except in the case of a breach of the representation and warranty set forth in Section 3(t)) to cure such breach within thirty (30) days of the earlier Seller's discovery of the breach or date of Purchaser's written notice to the Seller of the breach; or, if (i) such breach is not susceptible of cure or cannot be cured within such 30-day period or (ii) such breach constitutes a breach of the representation and warranty set forth in Section 3(t), Seller shall immediately repurchase the Loans held by the Purchaser which were affected by the Seller's breach for an amount equal to the Purchase Price for the related Loan plus accrued interest through the date of repurchase, and shall pay Purchaser's costs and fees associated with such repurchase. Cure of a breach of a representation or warranty by Seller or purchase by Seller of a Loan under this Section shall not relieve Seller of its indemnification obligations under paragraph (b) below with respect to the related Loan.

(b) Seller further agrees to indemnify and forever hold Purchaser harmless from any and all costs, damages, suits, actions, claims, losses, liabilities and expenses, including actual attorney's fees, arising directly or indirectly from (a) Seller's breach of any of the representations, warranties or covenants contained in any provision of this Agreement, or (b) any claim by a servicer for payment of servicing advances, corporate advances or negative escrows incurred or made prior to the Cut-Off Date.

(c) Purchaser, at its sole option, may waive its right to demand repurchase under paragraph (a) above. Any such waiver will not diminish or eliminate Seller's obligation to indemnify Purchaser under paragraph (b) above; which obligation will remain in full force and effect. Any such waiver shall not constitute a waiver of any subsequent repurchase obligation, nor shall it constitute a waiver of this provision. The provisions of this Section shall survive the termination of this Agreement and constitute a continuing obligation of the parties.

Section 5. **Deliverables**. Not less than three (3) days prior to the Closing Date Seller shall deliver to Purchaser or its designee the following items:

(a) The original note endorsed by Seller in blank, without recourse (except as set forth herein or in any amendment or addenda hereto), and any modifications or amendments thereto.

(b) The original Security Instrument with evidence of recording thereon.

(c) The original assignment of the Security Instrument from Seller to Purchaser in recordable form executed in blank along with originals of any intervening assignments of the Security Instrument with evidence of recording thereon.

(d) Originals of any assumption, modification, substitution or guaranty agreements, if any.

(e) The original contract for deed with evidence of recording thereon, if applicable.

(f) The original assignment of the contract for deed from Seller to Purchaser along with originals of any intervening assignments.

(g) For each mortgage loan, an original Lender's title insurance policy; for each contract for deed, an original owner's title insurance policy; in either case, if the original title insurance policy is not available, a copy of such policy or an original, marked, title insurance commitment.

(h) If there is a contract for deed, a warranty deed in form acceptable to the Purchaser and acceptable for recording, which deed conveys all of Seller's right, title and interest in the Property to Purchaser.

(i) With respect to each cooperative loan:

(i) a copy of form UCC-1 and any continuation statements with evidence of filing;

(ii) a stock certificate representing the stock allocated to the co-op premises with an executed stock power in blank;

(iii) the original proprietary lease issued to borrower;

(iv) the original assignment of proprietary lease executed by borrower in blank;

(v) the original recognition agreement (or copy thereof) of the interests of lender with respect to the co-op loan by the cooperative housing corporation; and

(vi) an UCC-3 assignment executed by Seller in blank, along with originally filed or copies certified by the filing office of all required intervening assignments.

73202
\\BAYVIEW_1\SYS\MSOFFICE\USERS\BZualga\L.aura\Olympia Mortgage_O-10913-04_032502_Perf Loans (short) 2001-5.doc

6

0217

(j) A duly executed Limited Power of Attorney in substantially the form of Exhibit "C" attached hereto.

**Section 6.** **Servicing of Mortgage Loans.** Seller shall service the Loans from the Closing Date to the date of servicing transfer date for and on behalf of Purchaser in accordance with all applicable federal, state and local laws, rules and regulations using the same standard of care Seller would exercise for Loans owned for Seller's own account. Seller shall cause all taxes, assessments, charges, fees, including but not limited to condominium fees and cooperative maintenance fees, on the Property to be paid no less than forty-five (45) days prior to the date any penalty will accrue. Seller shall deliver the servicing file, including without limitation, all documents, reports, pay histories and all ledgers necessary to service the Loans, not later than three (3) days after the Closing Date. On the servicing transfer date, Seller shall remit to Purchaser all sums held or received by Seller in connection with the servicing of the Loans including, without limitation, all principal, interest, late charges, unapplied or held in suspense funds and all funds held in escrow pursuant to the loan documents without deduction for negative escrow payments. Seller shall be obligated to pay all fees, costs and expenses in connection with the servicing transfer of the Loans.

**Section 7.** **Time and Binding Effect.** Time shall be of the essence with regard to this Agreement. This Agreement shall inure to and be binding upon the respective heirs, representatives, successors and assigns of the parties hereto.

**Section 8.** **Governing Law, Venue and Jurisdiction.** THIS AGREEMENT SHALL BE CONSTRUED AND GOVERNED IN ACCORDANCE WITH THE LAWS OF THE STATE OF FLORIDA. VENUE FOR ANY LITIGATION ARISING UNDER THIS AGREEMENT OR ITS SUBSEQUENT PERFORMANCE SHALL BE MIAMI-DADE COUNTY, FLORIDA. ANY LITIGATION BETWEEN THE PARTIES ARISING FROM THIS AGREEMENT SHALL ONLY BE BROUGHT IN MIAMI-DADE COUNTY, FLORIDA AND THE PARTIES HEREBY AGREE TO SUCH JURISDICTION IN MIAMI-DADE COUNTY, FLORIDA. ANY ISSUE REGARDING ENFORCEABILITY OF THE COOPERATIVE LOAN DOCUMENTS OR DOCUMENTS RELATING TO REAL ESTATE OBLIGATION ("REO") SHALL BE DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE RELATED CO-OP PREMISES OR REO IS LOCATED.

**Section 9.** **Attorneys' Fees.** In the event of any dispute hereunder or of any action to interpret or enforce this Agreement, any provision hereof or any matter arising herefrom, the prevailing (or substantially prevailing) party in any dispute arising under this Agreement or its subsequent performance shall be entitled to recover its actual costs, fees and expenses, including, but not limited to, witness fees, expert fees, consultant fees, attorney (in-house and outside counsel), paralegal and legal assistant fees, and other professional fees, costs and expenses whether in settlement, in any declaratory action, at trial or on appeal and in all dispute resolution proceedings, including bankruptcy and post-judgment collection, proceedings to determine the amount of attorneys' fees to be awarded; and whether or not suit be brought.

**Section 10.** **Notices.** All notices required to be made hereunder should be addressed to the party at the address listed on the first page hereof, by postage prepaid certified mail, return

receipt requested, U.S. mail or by recognized overnight delivery service (i.e. Federal Express). Seller and Purchaser agree to provide each other with written notice of any change of address.

Section 11. **Costs**. Seller shall pay all costs associated with the preparation and recording of the deeds and assignments contemplated by this Agreement.

Section 12. **WAIVER OF TRIAL BY JURY**. EACH PARTY HEREBY KNOWINGLY, VOLUNTARY AND INTENTIONALLY, WAIVES (TO THE EXTENT PERMITTED BY APPLICABLE LAW) ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY OF ANY DISPUTE ARISING UNDER OR RELATING TO THIS AGREEMENT AND AGREES THAT ANY SUCH DISPUTE SHALL BE TRIED BEFORE A JUDGE SITTING WITHOUT A JURY.

Section 13. **Confidentiality**. Except as required by law or regulation, or by court order, Seller shall keep confidential and shall not divulge to any party, without Purchaser's prior written consent, the terms of this Agreement and the proposed transaction contemplated hereunder; except that either party may disclose such terms to its employees, officers, directors, shareholders, financial advisors, consultants, partners, affiliates, lenders and attorneys who need to know such terms for purposes of evaluating the proposed transaction.

[SIGNATURE PAGE TO FOLLOW]

**IN WITNESS WHEREOF,** each of the undersigned parties to this Agreement has caused this Agreement to be duly executed by one of its duly authorized officers, all as of the date first above written.

SELLER: OLYMPIA MORTGAGE CORP.

By: _____

Name: _BARRY GOLDSTEIN_

Title: _MANAGING DIRECTOR_

PURCHASER: BAYVIEW FINANCIAL TRADING GROUP, L.P.,

By: Bayview Financial Management Corp.,
its General Partner

By: _____

Name: _Steven M. Gordon_

Title: _Managing Director_

DCLIB1/73202/4/11153/00007

0220





EXHIBIT "C"

LIMITED POWER OF ATTORNEY

Olympia Mortgage Corp. (hereinafter called "Seller") hereby appoints Bayview Financial Trading Group, L.P., a Delaware limited partnership ("Purchaser"), as its true and lawful attorney-in-fact to act in the name, place and stead of Seller for the purposes set forth below. This Limited Power of Attorney is given pursuant to a certain Purchase Agreement by and between Seller and Purchaser dated **March 25th, 2002** (the "Agreement") to which reference is made for the definition of all capitalized terms herein.

Now therefore, Seller does hereby constitute and appoint Purchaser the true and lawful attorney-in-fact of Seller and in Seller's name, place and stead with respect to each Loan sold to Purchaser pursuant to the Agreement for the following, and only the following, purposes:

1. To execute, acknowledge, seal and deliver deed of trust/mortgage note endorsements, assignments of deed of trust/mortgage and other recorded documents, satisfactions/releases/reconveyances of deed of trust/mortgage, tax authority notifications and declaration, deeds, bills of sale, and other instruments of sale, conveyance, and transfer, appropriately completed, with all ordinary or necessary endorsements, acknowledgments, affidavits, and supporting documents as may be necessary or appropriate to effect its execution, delivery, conveyance, recordation of filing.

2. To execute and deliver affidavits of debt, substitutions of trustee, substitutions of counsel, non-military affidavits, notices of rescission, foreclosure deeds, transfer tax affidavit, affidavits of merit, verification of complaint, notices to quit, bankruptcy declarations for the purpose of filing motions to lift stays and other documents or notice filings on behalf of Seller in connection with foreclosure, bankruptcy and eviction actions.

3. To endorse and/or assign any borrower or mortgagor's check or negotiable instrument received by Purchaser as a payment under a Loan.

Seller intends that this Limited Power of Attorney be coupled with an interest and irrevocable.

Seller further grants to its attorney-in-fact full authority to act in any manner both proper and necessary to exercise the foregoing powers, and ratifies every act that Purchaser may lawfully perform in exercising those powers by virtue hereof.

Seller further grants to Purchaser the limited power of substitution and revocation of another party for the purpose and only for the purpose of endorsing or assigning notes or security instruments in Seller's name, and hereby ratifies and confirms all that the attorney-in-fact, or its substitute or substitutes, shall lawfully do or cause to be done by authority of this power of attorney and the rights and powers granted hereby.

DCLIB1/73202/4/11153/00007

C-1

0223

Purchaser shall indemnify, defend and hold harmless Seller and its successors and assigns from and against any and all losses, costs, expenses (including, without limitation, actual attorneys' fees, at all levels including appeals), damages, liabilities, demands or claims of any kind whatsoever, ("Claims") arising out of, related to, or in connection with (i) any act taken by Purchaser (or its substitute or substitutes) pursuant to this Limited Power of Attorney, which act results in a Claim solely by virtue of the unlawful use of this Limited Power of Attorney (and not as a result of a Claim related to the underlying instrument with respect to which this Limited Power of Attorney has been used), or (ii) any use or misuse of this Limited Power of Attorney in any manner or by any person not expressly authorized hereby.

IN WITNESS WHEREOF, Seller has executed this Limited Power of Attorney this _15_ day of _April_, _2002_.

OLYMPIA MORTGAGE CORP.

By: _____

Name: _BARRY GOLDSTEIN_

Title: _MANAGING DIRECTOR_

Witnesses: _____

STATE OF _New York_    §
                       §
COUNTY OF _Kings_      §

BEFORE ME, _Jannie L. Solomon_ a Notary Public in and for the jurisdiction aforesaid, on this _15th_ day of _April_, _2002_, personally appeared _Barry Goldstein_ who is personally known to me to be _Managing Director_ of _Olympia Mortgage Corp_. The person who executed the foregoing instrument to be her free and voluntary act and deed as _____ for the uses, purposes and consideration therein set forth.

Witness my hand and official seal this _15th_ day of _April_ _2002_.

_____
Notary Public

My Commission Expires: _7-17-2002_

JANNIE L. SOLOMON
Notary Public, State of New York
No. 01SO6044951
Qualified in Queens County
Term Expires 7/17/20_02_

DCLIB1/73202/4/11153/00007

C-2

0224