**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

MARY LODGE,

                Plaintiff,

      v.

UNITED HOMES, LLC, UNITED PROPERTY
GROUP, LLC, YARON HERSHCO, GALIT
NETWORK, LLC, OLYMPIA MORTGAGE
CORP., BAYVIEW LOAN SERVICING, LLC,
BAYVIEW ASSET MANAGEMENT, LLC,
US BANK AND TRUST, and WILSHIRE
CREDIT CORP.,

             Defendants.

Civil Action No.: CV-05-0187
(KAM)(RLM)

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF MARY LODGE'S MOTION TO STRIKE
## THE BAYVIEW DEFENDANTS' HOLDER-IN-DUE-COURSE DEFENSE

SOUTH BROOKLYN LEGAL SERVICES
105 Court Street, 3rd Floor
Brooklyn, New York 11201

AARP FOUNDATION LITIGATION
601 E Street, NW
Washington, D.C. 20049

COWAN LIEBOWITZ & LATMAN, P.C.
1133 Avenue of the Americas
New York, New York 10036-6799

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ................................................................................................1

FACTUAL AND PROCEDURAL BACKGROUND.....................................................3

ARGUMENT ....................................................................................................12

   I.   A Motion Under Rule 56(a) of the Federal Rules of Civil Procedure Is a Procedurally Appropriate Means of Moving to Strike a Defense..........................................13

   II.   The Record Demonstrates That No Genuine Issue of Material Fact Exists as to the Unavailability of the Holder-in-Due-Course Defense. ....................................14

     A.   The Record Reflects That U.S. Bank Is the Holder.......................................15

     B.   U.S. Bank Is Not a Holder in Due Course. .................................................16

     C.   The Shelter Rule Is Unavailable to the Bayview Defendants........................17

   III.   The Bayview Defendants' Discovery Misconduct Warrants Imposition of Sanctions Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure..................18

     A.   The Protracted Deception ......................................................................20

     B.   The Bayview Defendants' Failure to Fulfill Their Discovery Obligations Was Unjustified............................................................................................26

     C.   Plaintiff Was Prejudiced by the Bayview Defendants' Conduct. ..................27

     D.   Bad Faith Is Evident in the Bayview Defendants' Practices Throughout the Litigation.............................................................................................28

CONCLUSION..................................................................................................29

# TABLE OF AUTHORITIES

## Cases

*Alliance Media Group, Inc. v. Mogul Media, Inc.*, No. 02CV5252SLTSMG, 2005 WL 1804473 (E.D.N.Y. July 28, 2005) ........................................................................13

*Am. Nat'l Property and Cas. Co. v. Campbell Ins., Inc.*, No. 3:08-cv-00604, 2011 WL 98813 (M.D. Tenn. Jan. 11, 2011)........................................................................13

*Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.,* 2010 WL 670086 (E.D.N.Y. Feb. 22, 2010).  ...........................................................................................18–19

*Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87 (S.D.N.Y. 2002)....................................19

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) .............14

*Barkley v. Olympia Mortgage Corp.*, No. 04CV0875, 2010 WL 3709278 (E.D.N.Y. Sept. 13, 2010) .............................................................................................................6–7

*Bayview Loan Servicing, LLC v. Bozymowski*, No. 00296-2010, 2011 WL 677379 (Sup. Ct. Suffolk Co. Feb. 17, 2011)..........................................................................26

*Brown v. Henderson*, 257 F.3d 246 (2d Cir. 2001)........................................................................14

*Castro v. City of New York*, 2009 WL 2461144 (E.D.N.Y. Aug. 10, 2009)....................................28

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ....................13–14

*Design Strategy, Inc. v. Davis*, 469 F.3d 284 (2d Cir. 2006)........................................................20, 28

*Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010)....................................................14

*Henrietta D. v. Giuliani*, 2001 WL 1602114 (E.D.N.Y. Dec. 11, 2001)........................................19

*Isovolta Inc. v. ProTrans Int'l, Inc.,* No. 1:08-cv-1319-JMS-DML, 2011 WL 221886 (S.D. Ind. Jan. 19, 2011))............................................................................................13

*Looney v. Great Am. Ins. Co.*, 71 F.R.D. 211 (E.D.N.Y. 1976) .....................................................13

*Mfrs. Hanover Trust Co. v. Robinson*, 157 Misc.2d 651, 597 N.Y.S.2d 986 (Sup. Ct. N.Y. Co. 1993)..........................................................................................................17

*McLee v. Chrysler Corp.*, 109 F.3d 130 (2d Cir.1997)...................................................................14

*Provident Bank v. Cmty. Home Mortgage Corp.*, 498 F. Supp. 2d 558 (E.D.N.Y. 2007)...............14

*Spinelli v. City of New York*, 579 F.3d 160 (2d Cir. 2009) ............................................................14

*United States v. Vulcan Soc'y, Inc.*, 637 F. Supp. 2d 77 (E.D.N.Y. 2009)........................................19

*Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115, 2001 WL 1035139 (S.D.N.Y. Sept. 7, 2001) ......................................................................................................................................19–20

**Federal Rules**

Federal Rule of Civil Procedure 26 ............................................................................18–20, 25–28

Federal Rule of Civil Procedure 37(b)...............................................................................19–20

Federal Rule of Civil Procedure 37(c) .................................................................1, 12, 18–20, 28

Federal Rule of Civil Procedure 56(a) ...................................................................1, 12–14, 18

**State Code**

N.Y. U.C.C. § 1-201(20)............................................................................................................14

N.Y. U.C.C. § 3-201(1)..............................................................................................................17

N.Y. U.C.C. § 3-201(1), Official Comment ........................................................................17–18

N.Y. U.C.C. § 3-302 ..................................................................................................................14

N.Y. U.C.C. § 3-305 ..............................................................................................................14–15

Plaintiff Mary Lodge, by counsel, hereby moves this Court, pursuant to Rules 37(c)(1) and 56(a) of the Federal Rules of Civil Procedure, for an Order striking the holder-in-due-course defense of Bayview Loan Servicing, LLC, Bayview Asset Management, LLC, and US Bank and Trust.[1]

## INTRODUCTION

From the very beginning of this litigation, Bayview Loan Servicing LLC ("BLS"), Wachovia Bank, N.A. ("Wachovia"), and their affiliates and purported successors (collectively, the "Bayview defendants") have contended that plaintiff Mary Lodge should not be permitted to seek remedies against Wachovia because it is a holder in due course of Ms. Lodge's first mortgage. New court-ordered disclosures by these parties have unambiguously revealed, contrary to the parties' sworn statements and counsel's representations, (1) that Wachovia is not the holder of Ms. Lodge's loan at all, and has not been since 2007; and (2) that the current holder of the mortgage is not a holder in due course and cannot benefit from the holder-in-due-course defense under the "shelter rule." This Court should find that the recent revelations, and the Bayview defendants' improper failure to disclose discoverable facts adverse to their holder-in-due-course defense, preclude the Bayview defendants from invoking the defense at trial.

Plaintiff Mary Lodge has alleged that she was the victim of a property-flipping scheme, in the course of which she was issued two mortgage loans that were unaffordable, abusive, and based on a grossly inflated appraisal. Among other relief, Ms. Lodge is seeking an injunction

---

[1] Counsel for plaintiff moved the Court by letter motion on February 28, 2011, for leave to amend the Second Amended Complaint to substitute proper parties for the erroneously identified "US Bank and Trust." On March 2, 2011, the Court deferred ruling on the motion and ordered the parties to "meet and confer and attempt to stipulate to plaintiff's proposed third amended complaint." Should the amendment be agreed to and leave granted to amend, plaintiff respectfully requests that the relief requested herein be deemed to be requested as to the parties substituted for "US Bank and Trust."

barring enforcement of the two notes and mortgages, and a declaration that the notes and mortgages are unenforceable.  Because the originating lender sold Ms. Lodge's first mortgage loan into the secondary market soon after origination, Ms. Lodge sought to name relevant entities in the secondary market as necessary parties under Rule 19 of the Federal Rules of Civil Procedure.  Those Rule 19 parties—the servicer of Ms. Lodge's loan and the bank that served as trustee of a trust into which the loan was securitized—have throughout the litigation asserted that the trustee bank has a complete defense to the complaint as a holder in due course of the mortgage loan.

Several months before trial was set to begin, Ms. Lodge obtained information revealing that these parties and various affiliates and purported successors (the Bayview defendants) are not entitled to the holder-in-due-course defense because of more than a dozen transfers of the security interest after the commencement of the litigation.  Not only did the Bayview defendants improperly withhold this relevant information from plaintiff until the Court ordered its production; they have continued to make misleading assertions about the ownership of the mortgage loan that appear calculated to obscure the fact that the multiple transfers fatally undermine their holder-in-due-course defense.  Indeed, these multiple transfers—and the omissions and misrepresentations defendants have made about them—have even stymied plaintiff's efforts to ensure, on the eve of trial, that the complaint is amended to name the proper parties.

For the reasons set forth herein, the Court should strike the Bayview defendants' holder-in-due-course defense, on the grounds that no reasonable juror could conclude that this defense is available, and that the Bayview defendants are not entitled to assert it.

## FACTUAL AND PROCEDURAL BACKGROUND

This action, originally filed by Brooklyn homeowner Mary Lodge in January 2005, has been consolidated for all purposes with five related actions filed by Brooklyn homeowners, all victims of a property-flipping scheme.[2]  In her original complaint, Ms. Lodge sued the seller of the property she purchased, the lawyer who purportedly represented her in the transaction, and the lender that originated her two "piggyback" mortgage loans.  Plaintiff's Local Rule 56.1 Statement of Facts ("56.1") ¶ 1.  (*See* Notes and Mortgages, attached to the Declaration of Sara Manaugh ("Manaugh Decl.") as Exhibit A.)  She also named as necessary parties, pursuant to Rule 19 of the Federal Rules of Civil Procedure, the servicer of her first mortgage, as well as Wachovia.  Wachovia was named because public records reflected that the originating lender had sold Ms. Lodge's first mortgage loan and that the mortgage had been assigned to Wachovia, as trustee of a mortgage-backed security trust, several months after the mortgage was originated. 56.1 ¶¶ 2–5.  (*See* Assignment of Lodge first mortgage from Olympia Mortgage Corp. to "Wachovia Bank N.A. As Trustee (Bayview)," Manaugh Decl. Ex. B.)  Because Ms. Lodge was seeking rescission of her mortgage loans and voiding of the security interest, Wachovia was a necessary party:  In its absence, the Court could not afford complete relief on Ms. Lodge's claims against the enforceability of the first Mortgage and Note; and disposing of those claims in the absence of the Wachovia might have "impair[ed] or impede[d]" Wachovia's ability to protect

---

[2] This action has been consolidated with five related cases: *Sandra Barkley v. Olympia Mortgage Corp., et al.*, CV-04-0875 (KAM)(RLM); *Rodney Gibbons & Sylvia Gibbons v. United Homes, LLC, et al.*, CV-05-5302 (KAM)(RLM); *Dewitt Mathis v. United Homes, LLC, et al.*, CV-05-4386 (KAM)(RLM); *Miles McDale & Lisa McDale v. United Homes, LLC, et al.*, CV-05-5362 (KAM)(RLM); and *Charlene Washington v. United Homes, LLC, et al.*, CV-05-5679 (KAM)(RLM).

3

its interest.  *See* Fed. R. Civ. P. 19(a) & (b)(1).  After Bayview Loan Servicing LLC ("BLS")

assumed servicing rights to Ms. Lodge's first mortgage, the Court so-ordered the parties'

stipulation to substitute BLS for the prior servicer of the first mortgage in June 2005.  56.1 ¶ 7.

In their answer to the original complaint, filed and served in July 2005, Wachovia and BLS

admitted that in 2003 Wachovia had become the trustee of a trust containing Ms. Lodge's

mortgage loan, and that it was a necessary party.  56.1 ¶ 8.  (Complt. ¶ 13; Answer ¶ 13.)

Ms. Lodge filed an amended complaint in December 2005, asserting claims against BLS

as a Rule 19 party.  56.1 ¶ 9.  In contrast to their answer to the original complaint, Wachovia and

Bayview *denied* in their amended answer (filed and served in September 2007, after the Bayview

defendants' unsuccessful motion to dismiss) that Wachovia was the trustee of the trust into

which Ms. Lodge's mortgage had been sold and that it was a necessary party (Am. Complt. ¶ 17;

Am. Answer ¶ 17)—but at the same time asserted, inexplicably, that Wachovia was a holder in

due course of the mortgage (Am. Answer ¶ 217).  56.1 ¶ 21.

In their motion to dismiss (filed in February 2006 and denied in August 2007), in their

amended answer (filed in September 2007), and in all subsequent proceedings in this action,

Wachovia and BLS have been represented by the same counsel, who has consistently represented

in all court filings that he  represents Wachovia and BLS in this action.  *See* 56.1 ¶ 12.  Counsel

has consistently asserted in these proceedings that Wachovia is a holder in due course of Ms.

Lodge's mortgage, and therefore Ms. Lodge's claims should not be permitted to impair

Wachovia's interest in the mortgage.

Throughout the litigation, the Bayview defendants' often contradictory representations

have sown doubt and confusion both about whether the proper parties had been named in the

action and whether any basis existed for the holder-in-due-course defense.  For example, the

repeated statements of counsel for BLS and Wachovia that Wachovia was the holder of Ms.
Lodge's mortgage contradict pleadings in a foreclosure filed in Kings County Supreme Court in
July 2007, by BLS, "a Delaware Limited Liability Company, as Servicer for Wachovia Bank
N.A., as Trustee, Successor by Merger to First Union National Bank, as Indenture Trustee," in
which plaintiff BLS alleged that "the plaintiff is now the sole, true and lawful holder of the said
bond(s)/note(s) and mortgage(s)."  56.1 ¶ 18.  (Foreclosure Summons and Complaint, Manaugh
Decl. Ex. C.)

Then, in late 2008, Wachovia and BLS proffered a Rule 30(b)(6) witness, Jack Silver, an
officer of BLS, who swore during his deposition that U.S. Bank, N.A. had succeeded to
Wachovia's interest in Ms. Lodge's mortgage loan (*see* Deposition of Jack Silver, Nov. 20,
2008) (excerpted), Manaugh Decl. Ex. D, 96:23–97:20).  Mr. Silver also swore that the loan had
been securitized twice, most recently in 2007 (*id*. at 106:16–24); and that since U.S. Bank had
taken over custody of the loan from Wachovia, the loan had not actually changed hands because
"the operation, the location is the same," and the custodian, whether Wachovia, "Wachovia/U.S.
Bank," or "U.S. Bank/Wachovia," is "the same entity, just a different name" (*id*. at 97:11–98:3).
56.1 ¶ 23.  At the conclusion of the deposition, plaintiff's counsel requested on the record that
documentation of the successive securitizations be provided; while Mr. Silver acceded to that
request, 56.1 ¶ 24 (*id*. at 106:25–107:6), it took more than two years and a court order for the
Bayview defendants to produce the documents.

After the close of fact discovery, Wachovia and BLS moved for summary judgment.
Their submissions in support of their motions further muddied the waters of the ownership of the
Lodge mortgage loan.  The sworn declaration of Mr. Silver averred that "Bayview Financial
purchased the First Note and First Mortgage from Olympia," and that the mortgage loan was

securitized shortly after the purchase by Bayview Financial and were securitized into a trust, of which Wachovia was the trustee.  56.1 ¶ 25.a. (Declaration of Jack Silver, ¶ 5.)  Mr. Silver further swore that "U.S. Bank and Trust" (an entity that had not theretofore been identified, and does not appear to exist) "is the successor to Wachovia having purchased [its] custodian rights as well as the First Mortgage and First Note."  56.1 ¶ 25.b.  (*Id.*)  Then, in a reply declaration in further support of the motion, another BLS officer, Robert Hodapp, swore that BLS—not Wachovia, U.S. Bank, or even "U.S. Bank and Trust"—"has continuously been in possession, custody and control of the original documents, including the First Note and First Mortgage."  56.1 ¶ 28.a.  (Reply Declaration of Robert E. Hodapp, ¶ 8.)

Meanwhile, in opposition to Wachovia's and BLS's motion for summary judgment, plaintiff submitted *inter alia* a document obtained from the investor website of Wells Fargo, the appointed custodian of the 2003 Trust.  That document, a list of Bayview Financial trusts, showed that the trust into which Ms. Lodge's mortgage loan had originally been securitized had been terminated in October 2006.  56.1 ¶ 27.  (Ex. M to the Declaration of Jean Constantine-Davis, submitted in opposition to the Bayview defendants' motion for summary judgment, Manaugh Decl. Ex. E.)

On or about September 13, 2010, this Court denied Wachovia's and BLS's motion for summary judgment.  It observed that the Bayview defendants' submissions were "seemingly contradictory and inconsistent" as to the identity of the holder of the Lodge mortgage loan.  56.1 ¶ 29.  *Barkley v. Olympia Mortgage Corp.*, 2010 WL 3709278, at *24 n.12 (E.D.N.Y. Sept. 13, 2010).  The Court found that, even assuming Wachovia and BLS "both are holders of the First Note and First Mortgage or were holders at the time they were joined as Rule 19 parties, and that they took the instruments for value, there is a material factual dispute as to whether [Wachovia

and BLS] took the instruments in good faith and without notice of claims or defenses." *Id*. at *24. Accordingly, the Court denied the motion and ordered the parties to prepare for trial. *Id*. at *30.

As the trial of this action grew closer, the proliferation of unsubstantiated and contradictory assertions that Wachovia and BLS had made in court filings and sworn statements rendered it impossible to determine who held and holds the Lodge mortgage loan. Plaintiff realized that, if not resolved before trial, this uncertainty not only would improperly frustrate plaintiff's ability to contest the holder-in-due-course defense, but also would likely impede plaintiff's ability to obtain a remedy from the holder even if she prevailed at trial. Two deficiencies became salient: (1) the lack of documentation of any securitization of Ms. Lodge's mortgage loan after the original trust was terminated in October 2006; and (2) the fact that U.S. Bank, or "US Bank and Trust," had never appeared in the action, even though that entity ostensibly had an interest in the mortgage loan. In an e-mail dated January 5, 2011, responding to plaintiff's counsel's request for information regarding current ownership of the loan, counsel for the Bayview defendant wrote, "US Bank and Trust is the owner of the loan." 56.1 ¶ 30. (E-mail dated Jan. 5, 2011, Manaugh Decl. Ex. F.) In subsequent e-mails and in a letter dated January 7, 2011, plaintiff's counsel requested that counsel for Wachovia and BLS provide documentation of the current ownership of the mortgage and confirm whether counsel represents "US Bank and Trust." 56.1 ¶ 31. (Letter dated Jan. 7, 2011, Manaugh Decl. Ex. G.) By January 10, 2011, the deadline set by the Court for submission of amended pleadings prior to trial, plaintiff still had not received the requested documentation or information. On the basis of the Bayview defendants' counsel's representations, plaintiff filed and served a Second Amended Complaint that substituted "US Bank and Trust" for Wachovia as "trustee of the trust into which

plaintiff's mortgage was sold and, as such[,] a necessary party" (SAC ¶ 17) and added as a

defendant Bayview Asset Management, LLC, the current name of the entity (Bayview Financial

Trading Group, LP) that had originally acquired the mortgage from Olympia prior to

securitization.  56.1 ¶ 32.

By January 13, 2011, the Court-ordered deadline for the parties' submission of any

request for judicial intervention on a discovery dispute, plaintiff had received neither

documentation of the current ownership of the mortgage, nor confirmation whether counsel

represents "US Bank and Trust."  Accordingly, plaintiff filed a letter that day requesting the

Court's intervention.  56.1 ¶ 33.  The same day, counsel for Wachovia and BLS stated in an e-

mail to plaintiff's counsel that it represents "the interests of U.S. Bank, N.A. as trustee," 56.1 ¶

34 (e-mail dated Jan. 13, 2011, Manaugh Decl. Ex. H), and attached to that e-mail an

"Assignment and Assumption Agreement" between Wachovia Corporation and U.S Bank, N.A.

(Manaugh Decl. Ex. I).  This document does not establish current ownership of the Lodge

mortgage, because it makes no reference to the mortgage or to the trust into which it was

originally placed; nor does it identify a subsequent trust into which the mortgage may have been

sold.  56.1 ¶ 35.

On January 20, 2011, Magistrate Judge Roanne L. Mann held a telephone conference to

address the dispute raised in the January 13 letter, and ordered that counsel for Wachovia and

BLS produce proof of current ownership of the Lodge mortgage and proof of chain of title from

2006.  56.1 ¶ 36.  On January 28, 2011, counsel for Wachovia and BLS produced several

documents that explained and clarified the chain of title and appeared to show the current

ownership of the mortgage.  Based on these newly produced documents, publicly available

documents, documents available from the Wells Fargo investor website, and previously

produced documents, plaintiff was able to construct a substantially complete chain of title of the

Lodge mortgage, 56.1 ¶ 37 (Lodge Mortgage Loan Chronology, Manaugh Decl. Ex. J),[3] and was

able to determine the following:

- The Lodge mortgage loan was securitized into three separate trusts between 2003 and 2007.

- Wachovia Bank, N.A., was the trustee of the first trust into which the Lodge mortgage loan was securitized: the Bayview Series 2003-E Trust (the "2003 Trust"). 56.1 ¶ 5. (2003 Trust Pooling and Servicing Agreement, Manaugh Decl. Ex. L.)

- In December 2005, U.S. Bank, N.A. ("U.S. Bank") acquired Wachovia's corporate trust and custody business, and became successor trustee to the 2003 Trust (and owner of the Lodge mortgage loan). 56.1 ¶ 10. (Assignment and Assumption Agreement dated as of December 30, 2005, Manaugh Decl. Ex. I.)

- When the 2003 Trust terminated in October 2006, BLS purchased the assets of the trust (including the Lodge mortgage loan) from U.S. Bank, via a sale agreement in which U.S. Bank warranted that it had the right to sell each mortgage loan in the pool, and which required U.S. Bank to convey all the mortgages and notes in the 2003 trust to BLS. 56.1 ¶ 15. (Mortgage Loan & REO Property Sale Agreement dated October 26, 2006, Manaugh Decl. Ex. M.)

- In December 2006, Bayview Financial, L.P. (BFLP) transferred the Lodge mortgage loan once again; the loan was resecuritized into the Bayview Financial Revolving Asset Trust 2005-A, a trust operated by one or more Bayview entities (the "2005 Trust"). 56.1 ¶ 16. (Transfer Supplement dated December 15, 2006, to Mortgage Loan Purchase Agreement dated as of February 1, 2005, Manaugh Decl. Ex. N.)

---

[3] After the Court asked for an explanation of an apparent gap in the chain of title between BLS and Bayview Financial, L.P. (BFLP) in connection with the termination of the original trust in 2006, the Bayview defendants submitted an affidavit from Thomas F. Carr, Senior Vice President for Bayview Financial Management Corporation, the general partner for BFLP. Mr. Carr avers that BLFP owned a 100% equity stake in BLS at the time of the gap in title, and that BLS and BFLP had an "oral understanding that BLS would act on behalf of BFLP when BLS entered into the Mortgage Loan and REO Property Sale Agreement Series 2003-E, dated October 26, 2006, between the Trustee and BLS ("MLPA"), and that BFLP would own the Lodge Loan on October 26, 2006." (Carr Affidavit dated February 15, 2011, Manaugh Decl. Ex. K, ¶ 7.) Mr. Carr further averred that BLS stood ready to acknowledge in writing that any interest it acquired in the Lodge mortgage loan "was conveyed to BFLP on October 26, 2006." (*Id*. at ¶ 8.) 56.1 ¶ 38.

- U.S. Bank, as successor in interest to Wachovia, served as "indenture trustee" for the 2005 Trust.  56.1 ¶ 17.  (Assignment and Relinquishment of Security Interest Agreement dated September 1, 2007, Manaugh Decl. Ex. O.)

- In September 2007, the Lodge mortgage loan was transferred out of the 2005 Trust, via a series of agreements involving, *inter alia*, the sale of the assets in the 2005 Trust to Bayview Financial Property Trust II, the sale of the same assets from Bayview Financial Property Trust II to Bayview Financial Property Trust, and the express relinquishment by U.S. Bank, N.A., as successor in interest to Wachovia, of its security interest in each mortgage loan in the 2005 Trust.  56.1 ¶ 19.  (*See* Manaugh Decl. Ex. O; Assignment Agreement dated September 1, 2007, Manaugh Decl. Ex. P.)

- The Lodge mortgage loan was resecuritized into the Bayview Asset-Backed Securities Trust Series 2007-30 (the "2007 Trust"), for which U.S. Bank serves as trustee and as such possesses the Lodge mortgage loan.  56.1 ¶ 20.  (Trust Agreement dated as of September 1, 2007; Manaugh Decl. Ex. Q.)

- The Trust Agreement for the 2007 Trust does not mention Wachovia or indicate that Wachovia has any interest or role in the 2007 Trust.  U.S. Bank is not identified as a successor to Wachovia. 56.1 ¶ 20.  (Manaugh Decl. Ex. Q.)

From this documentary evidence, several conclusions are inescapable:

- In the course of these multiple securitizations, the Lodge mortgage loan had been transferred among several different entities—primarily affiliates of Bayview Asset Management and BLS, including BLS itself.  The majority of these transfers took place after this action was commenced in January 2005, and every holder of Ms. Lodge's mortgage since the commencement of this action has been on notice of the claims of fraud and documentary irregularities[4] relating to Ms. Lodge's note.

- After the Bayview defendants raised the holder-in-due-course defense for the first time on behalf of Wachovia in their answer to Ms. Lodge's original complaint, the loan was sold from Wachovia to U.S. Bank, and from U.S. Bank to BLS, and from BLS to a series of other Bayview entities.

---

[4] These irregularities include: (i) the principal amount recited on Note and the Mortgage, $335,200, differs from the principal amount stated on the Assignment of Mortgage, $41,900—making the Assignment defective on its face; (ii) the Assignment of Mortgage has a purported execution date of "1/16/03" but the executing signature by Barry Goldstein was notarized on June 25, 2003, more than six months after execution, raising questions about the validity of execution and/or the notarization; (iii) even the June 2003 execution date is suspect as the Assignment of Mortgage includes the recordation number for the Mortgage three months in advance of the actual recordation date—September 11, 2003.  (*See* Manaugh Decl. Exs. A & B.)

- At the time the Bayview defendants raised the holder-in-due-course defense on behalf of Wachovia in their motion to dismiss Ms. Lodge's complaint, in February 2006, Wachovia had already sold its interest in Ms. Lodge's mortgage loan to U.S. Bank.

- Ms. Lodge's mortgage loan has had no connection to Wachovia, or to a contractual successor-in-interest to Wachovia, since September 2007 at the latest.

These indisputable facts do not merely weaken the Bayview defendants' holder-in-due course defense; they annihilate it. As an initial matter, the Bayview defendants have for more than five years been asserting the holder-in-due-course defense on behalf of Wachovia, an entity that is manifestly *not* the holder of the loan.[5] And while the evidence in the record in support of the holder-in-due-course defense for Wachovia is weak at best; for any other alleged holder, it is nonexistent. Indeed, the Bayview defendants would be unable to persuade a reasonable jury that when Bayview repurchased the litigated Lodge mortgage loan in 2006, and when U.S. Bank as trustee once again became the holder of the Lodge mortgage loan in 2007, they were entitled to the protections of the holder-in-due-course defense. As is explained in greater detail below, the holder-in-due-course defense and the shelter rule do not permit this finding.

That these fatal facts are emerging only now, rather than during discovery—which was open when the relevant events occurred—is due to the Bayview defendants' disregard for the rules of discovery. Any change in ownership of the interest in Ms. Lodge's mortgage loan is indisputably relevant information that the Bayview defendants had an affirmative obligation to provide. Furthermore, that information was uniquely within the knowledge of the Bayview

---

[5] When they finally saw fit to inform plaintiff that a new holder had succeeded to Wachovia's interests, instead of providing accurate information about U.S. Bank's interest in the loan, the Bayview defendants provided plaintiff with an invented name, "US Bank and Trust" (actively misleading plaintiff into amending the complaint to include this fictional entity), and falsely asserted that the current holder is the successor in interest to Wachovia.

defendants such that plaintiff could not have been expected to know specifically to request such information.[6]  But not only did the Bayview defendants fail to notify the parties of changes in the ownership of the Lodge mortgage loan; they repeatedly made express misstatements of fact to the Court and the parties regarding who held the Lodge mortgage loan—misstatements that were calculated to mislead and deter further inquiry into the matter.

This Court should not permit the Bayview defendants to advance a defense at trial that is wholly incompatible with newly produced documents, particularly in light of the deception that kept these documents from coming to light.

## ARGUMENT

Plaintiff seeks to strike the Bayview defendants' holder-in-due-course defense on two grounds.  First, because no reasonable juror could conclude from the evidence, as supplemented via the Bayview defendants' belated production, that the holder-in-due-course defense is available to the Bayview defendants, the defense should be stricken pursuant to Rule 56(a) of the Federal Rules of Civil Procedure.  Second, because the Bayview defendants unjustifiably and in bad faith failed to provide information relevant to their defense, severely prejudicing Ms. Lodge, the defense should be stricken pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.

_____

[6] The information and documentation that Ms. Lodge did request included:

> 14. Any agreement(s) that concerned, related to, encompassed, referred to or included the subject mortgages, including but not limited to warehouse lines of credit, bulk sales, repurchase agreements, investment agreements, securitization agreements, credit agreements, and/or loan sale agreements; and

> 18. All secondary market purchase agreements to which Wachovia is a signatory as Trustee on behalf of any trust into which the subject mortgages were transferred.

56.1 ¶ 11.  Plaintiffs' First Consolidated Request for Production of Documents to Bayview Loan Servicing, LLC and Wachovia Bank, N.A., Feb. 8, 2006, Requests Nos. 14 & 18.

I.      **A Motion Under Rule 56(a) of the Federal Rules of Civil Procedure Is a Procedurally Appropriate Means of Moving to Strike a Defense.**

"Ordinarily, motions to strike affirmative defenses are considered under Rule 12(f) of the Federal Rules of Civil Procedure.  However, a motion to strike may be treated as a motion for partial summary judgment . . . when facts outside the pleadings are offered."  *Alliance Media Group, Inc. v. Mogul Media, Inc.*, No. 02CV5252SLTSMG, 2005 WL 1804473, at *1 (E.D.N.Y. July 28, 2005) (granting in part plaintiff's motion for partial summary judgment under the pre-2010 version of Rule 56(d)[7]; *see Looney v. Great Am. Ins. Co.*, 71 F.R.D. 211 (E.D.N.Y. 1976) (adjudicating motion to strike affirmative defense under then-Rule 56(d)).  Plaintiff offers facts outside the pleadings in support of her motion to strike, and a motion under Rule 56(a) is therefore proper.

Summary judgment pursuant to Rule 56(a), whether full or partial, is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

---

[7] On December 1, 2010, amendments to Rule 56 became effective.  Rule 56(a) now provides that a party "may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  *See Isovolta Inc. v. ProTrans Int'l, Inc.,* No. 1:08-cv-1319-JMS-DML, 2011 WL 221886, at *2 (S.D. Ind. Jan. 19, 2011).  The Advisory Committee notes to that section state:

> The first sentence [of Rule 56(a)] is added to make clear at the beginning that summary judgment may be requested not only as to an entire case but also as to a claim, defense, or part of a claim or defense. The subdivision caption adopts the common phrase "partial summary judgment" to describe disposition of less than the whole action, whether or not the order grants all the relief requested by the motion.

Fed. R. Civ. P. 56(a) advisory committee's note; s*ee Am. Nat'l Property and Cas. Co. v. Campbell Ins., Inc.*, No. 3:08-cv-00604, 2011 WL 98813, at *4 n.4 (M.D. Tenn. Jan. 11, 2011). Prior to the amendment, authority for a *grant* of partial summary judgment resided in section (d) of the Rule; but section (d) did not expressly permit a party to *move* for partial summary judgment.

party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S. Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 250–51, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986); *McLee v. Chrysler Corp.*,

109 F.3d 130, 134 (2d Cir. 1997); Fed. R. Civ. P. 56(a).  In assessing the record to determine

whether there is a genuine issue to be tried, the court is required to resolve all ambiguities and

draw all permissible factual inferences in favor of the party against whom summary judgment is

sought.  *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010).  "Once the moving

party demonstrates that there are no genuine issues of material fact, the nonmoving party must

come forth with evidence sufficient to allow a reasonable jury to find in [its] favor."  *Spinelli v.

City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quoting *Brown v. Henderson*, 257 F.3d 246,

252 (2d Cir. 2001)) (internal quotation marks omitted).

## II.    The Record Demonstrates That No Genuine Issue of Material Fact Exists as to the Unavailability of the Holder-in-Due-Course Defense.

Under the New York Uniform Commercial Code, a "holder" is "a person who is in

possession of . . . an instrument . . . , issued or indorsed to him or to his order or to bearer or in

blank." N.Y. U.C.C. § 1-201(20).  A "holder in due course" is defined as "a (1) holder (2) of a

negotiable instrument (3) who took it for value, (4) in good faith, and (5) without notice that it is

overdue or has been dishonored or of any defense against or claim to it on the part of another."

*Provident Bank v. Cmty. Home Mortgage Corp.*, 498 F. Supp. 2d 558, 572 (E.D.N.Y. 2007)

(citation omitted); *see* N.Y. U.C.C. § 3-302.  A holder in due course takes the instrument free

from:

> (1) all claims to it on the part of any person; and

> (2) all defenses of any party to the instrument with whom the holder has not dealt except

>> (a)  infancy, to the extent that it is a defense to a simple contract; and

> (b) such other incapacity, or duress, or illegality of the transaction, as renders the obligation of the party a nullity; and
>
> (c) such misrepresentation as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms; and
>
> (d) discharge in insolvency proceedings; and
>
> (e) any other discharge of which the holder has notice when he takes the instrument.

N.Y. U.C.C. § 3-305. Each element of the holder-in-due-course defense must be proven by a preponderance of the evidence.

The Bayview defendants face an insurmountable obstacle in proving their affirmative defense: their own documents. Those documents reflect that the Lodge mortgage loan was repeatedly negotiated from one entity to another during the pendency of this litigation. Even assuming that each entity became a holder by virtue of a transaction through which it took the loan for value, there can be no doubt that each of those holders took with *actual notice* of claims and defenses. What is more, because each of these putative holders was a repeat holder, they may not invoke the shelter rule and benefit from the holder-in-due-course defense.

## A.    The Record Reflects That U.S. Bank Is the Holder.

The documents belatedly produced by the Bayview defendants constitute incontrovertible evidence that neither Wachovia, nor U.S. Bank as successor in interest to Wachovia, is the holder of the Lodge mortgage loan. Unless the Bayview defendants would renounce the validity of their own documents relating to the serial securitization of the Lodge mortgage loan, they cannot deny what their own documents reflect: that the Lodge Note was delivered into the possession of, and issued or indorsed in blank to BLS (on behalf of Bayview Financial, L.P.) in October 2006 (Manaugh Decl. Ex. M, at Exhibit A; Manaugh Decl. Ex. K); and that the Lodge Note was delivered into the possession of, and indorsed in blank or to the order of U.S. Bank as

trustee of the 2007 Trust in September 2007 (Manaugh Decl. Ex. Q, Section 2.01(a)(i)(A)).

Assuming for the sake of argument that Wachovia was a holder at the start of this litigation, the

Bayview documents reflect that the holder is now U.S. Bank as trustee of the 2007 Trust.

### B.     U.S. Bank Is Not a Holder in Due Course.

Assuming, as the documents reflect, that BLS became the holder of the Lodge mortgage

loan in October 2006, there is no question that BLS was on notice of defenses against the Note

when it became a holder.  BLS became a party to this litigation in 2005, and as such was

undeniably fully aware from that point on that the validity of the mortgage loan was disputed.

Because of the actual notice it had at the time it became a holder, BLS cannot be a holder in due

course.

By the same token, there is no room for doubt about U.S. Bank's actual notice of claims

and defenses.  U.S. Bank became the holder of the Lodge mortgage loan in December 2005, after

the commencement of the litigation, when it purchased Wachovia's corporate trust assets and

succeeded to Wachovia's interest in the 2003 Trust.  U.S. Bank sold the loan to BLS in 2006,

and then reacquired it in 2007.  U.S. Bank was certainly on notice in 2005, and continued to be

so in 2006 and 2007.

In acquiring the Lodge mortgage loan as trustee of the 2007 Trust, U.S. Bank was not

acting as successor in interest to Wachovia: the 2007 Trust did not exist at the time U.S. Bank

purchased Wachovia's corporate trust business in 2005, and Wachovia has never been a party to

the 2007 Trust.  Even if Wachovia had been a holder in due course when it became trustee of the

2003 Trust, therefore, that status would not have benefited U.S. Bank in its 2007 purchase of the

Lodge mortgage loan.

No reasonable trier of fact, therefore, could find that either of these parties is a holder in due course, because there is no genuine issue of material fact as to their actual notice of claims to or defenses against the Lodge mortgage loan.

**C.     The Shelter Rule Is Unavailable to the Bayview Defendants.**

Although the Bayview defendants have not raised the so-called "shelter rule" in any pleading or motion, the Joint Pretrial Order in the consolidated actions indicates that they may seek to invoke the shelter rule as part of their holder-in-due-course defense.  The shelter rule, codified at section 3-201(1) of the New York Uniform Commercial Code, provides that:

> Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

The Official Comment to this section of the N.Y. U.C.C. explains that the shelter provision "is merely one illustration of the rule that anyone may transfer what he has.  Its policy is to assure the holder in due course a free market for the paper, and that policy is continued in this section."  N.Y. U.C.C. § 3-201 & Official Comment ¶ 3.  Under the shelter rule, "a transferee obtains the rights, not the status, of the prior holder in due course. . . .  The statute therefore permits a holder with notice of defenses to acquire the rights of a holder in due course." *Mfrs. Hanover Trust Co. v. Robinson*, 157 Misc.2d 651, 655–56, 597 N.Y.S.2d 986, 988 (Sup. Ct. N.Y. Co. 1993).

In the instant case, the Bayview defendants would presumably seek to invoke the shelter rule to argue that even if Wachovia is no longer the holder, Wachovia was a holder in due course, and the current holder, U.S. Bank, has acquired the right to assert this defense.  But the indisputable facts of this case foreclose this application of the shelter rule.  Paragraph 3 of the

Official Comment to section 3-201 states: "The provision is not intended and should not be used to permit any holder who has himself been a party to any fraud or illegality affecting the instrument, or who has received notice of any defense or claim against it, to wash the paper clean by passing it into the hands of a holder in due course and then repurchasing it."

Even assuming that Wachovia was a holder in due course, and that U.S. Bank succeeded to that status when it purchased the Lodge mortgage loan as part of its acquisition of Wachovia's corporate trust holdings, U.S. Bank may not benefit from the shelter rule now. U.S. Bank had unquestionably received notice of claims or defenses against the Lodge mortgage loan before or during the time it possessed the instrument in 2005 and 2006. It was quite impossible for U.S. Bank to "wash the paper clean" by passing it into the hands of BLS, who as a party to this action was obviously not a holder in due course in any event, and then repurchasing it. Indeed, when U.S. Bank, having had actual notice, reacquired the loan from a party who, by definition, also had actual notice, U.S. Bank was at least two steps removed from holder-in-due-course status. Applying the shelter rule to this situation would not further the rule's purpose of "assur[ing] the holder in due course a free market for the paper," or advance any other legitimate goal.

There is thus no genuine issue of material fact as to the ability of any of the Bayview defendants to invoke the holder-in-due-course defense. Pursuant to Rule 56(a), the Court should strike this defense.

## III.   The Bayview Defendants' Discovery Misconduct Warrants Imposition of Sanctions Pursuant to Rule 37(c)(1) of the Federal Rules of Civil Procedure.

Rule 37(c)(1) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially

justified or is harmless." Fed. R .Civ. P. 37(c)(1); *Am. Mfrs. Mut. Ins. Co. v. Payton Lane Nursing Home, Inc.,* 2010 WL 670086, at *2 (E.D.N.Y.  Feb. 22, 2010).

In addition to or instead of this preclusion sanction, a court, on motion, may impose other sanctions such as requiring "payment of the reasonable expenses, including attorney's fees, caused by the failure" and "other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." Fed. R. Civ. P. 37(c)(1).  Rule 37(b)(2)(A) authorizes a court to issue an order "striking pleadings in whole or in part" or "rendering a default judgment against the disobedient party."

A party who fails to disclose information under Rule 26(a) or (e) may be exempt from sanctions if the failure was "substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1). "Substantial justification means justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request." *Henrietta D. v. Giuliani*, 2001 WL 1602114, at *5 (E.D.N.Y. Dec. 11, 2001) (citations and internal punctuation omitted).  Where the discovery violation has prejudiced the party that did not receive required discovery, courts find that the discovery failure was not harmless. *United States v. Vulcan Soc'y, Inc.*, 637 F. Supp. 2d 77, 107 (E.D.N.Y. 2009); *Henrietta D.*, 2001 WL 1602114, at *6.   "Prejudice" has been found to result when, because of a discovery failure, a party has not been afforded an opportunity to review the document at issue, to question witnesses about the document, or to refute its contents on the record; "severe prejudice" is the outcome when a party is unable to effectively cross-examine a witness or to rebut testimony.  *Id.*

The burden of proving substantial justification or harmlessness is borne by the dilatory party.  *Am. Stock Exchange, LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002); *Wright v. Aargo Sec. Servs., Inc.*, No. 99 Civ. 9115 (CSH), 2001 WL 1035139, at *2 (S.D.N.Y. Sept. 7,

19

2001).  A court has discretion to impose Rule 37 sanctions when such proof is lacking; and "although a 'bad-faith' violation of the Rule 26 is not *required*" for Rule 37 sanctions, "it can be taken into account as part of the party's explanation for its failure to comply."  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (emphasis in original).

The Bayview defendants have not merely failed to produce documents that should have been produced in discovery; they have distorted, misrepresented and concealed material facts relating to Ms. Lodge's mortgage loan—facts to which they had unique or superior access because of the withholding of discovery documents.  Their deception and omissions have violated discovery rules, misled the Court, and prejudiced plaintiff.  Because of the unjustified and harmful nature of the Bayview defendants' deceptive conduct and their manifest bad faith in regard to their discovery obligations, the Court should impose sanctions under Rule 37(c)(1) of the Federal Rules of Civil Procedure, and strike the holder-in-due-course defense.

### A.        The Protracted Deception

A chronology of the misrepresentations made by the Bayview defendants in court filings and/or sworn statements is set forth here:

| DATE | Bayview Defendants' Representation | Documentary Refutation |
|------|-----------------------------------|------------------------|
| 2/28/06 | "It is settled that by holding the note and mortgage at issue, Wachovia qualifies as a holder in due course of the Wachovia Mortgage."[8] | Assignment and Assumption Agreement between Wachovia Corp. and U.S. Bank, N.A. dated as of Dec. 30, 2005 (Manaugh Decl. Ex. I) |

---

[8] Defendant Wachovia Bank N.A. and Bayview Loan Services' [sic] Memorandum of Law in Support of Motion to Dismiss and/or Summary Judgment, Feb. 28, 2006, at 5.  56.1 ¶ 13.

| | | |
|---|---|---|
| 5/19/06 | "N.Y.U.C.C. §1-201(20) defines a holder as 'a person in possession of a document of title or an instrument…drawn, issued, or indorsed to him or to his order or to bearer in blank.' There can be no controversy that Wachovia is the holder of the note, and Plaintiff's counsel's attempts to create such controversy must fail."[9] | Assignment and Assumption Agreement between Wachovia Corp. and U.S. Bank, N.A. dated as of Dec. 30, 2005 (Manaugh Decl. Ex. I) |
| 9/17/07 | "Plaintiff's claims should be dismissed . . . because Wachovia is a holder in due course . . . ." | Trust Agreement dated as of Sept. 1, 2007, for the 2007 Trust (making U.S. Bank, N.A. trustee of the 2007 Trust) (Manaugh Decl. Ex. Q) |
| 1/4/08 | "There is no dispute that Wachovia is the holder of the [Lodge] note."[10] | Trust Agreement dated as of Sept. 1, 2007, for the 2007 Trust (making U.S. Bank, N.A. trustee of the 2007 Trust) (Manaugh Decl. Ex. Q) |
| 11/20/08 | "[The Lodge Note has physically been] with [Bayview's] custodian, Wachovia/US Bank, the notes that are sitting right here, I believe. . . . It went to US Bank/Wachovia.  It's the same entity, just a different name now. . . . It's the same place.  They just changed names."[11] | While Wachovia, and later U.S. Bank as successor, served as custodian for the 2005 Trust (Pool Supplement for the 2005 Trust, Manaugh Decl. Ex. R), U.S. Bank serves only as trustee and not as custodian for the 2007 Trust, and is not identified as a successor to Wachovia (Manaugh Decl. Ex. Q) |

[9] Defendant Wachovia Bank N.A. and Bayview Loan Services' [sic] Reply Memorandum of Law in Further Support of Motion to Dismiss and/or Summary Judgment, May 19, 2006, at 6.  56.1 ¶ 14.

[10] Defendant Wachovia Bank N.A. and Bayview Loan Services' [sic] Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, Jan. 4, 2008, at 11.  56.1 ¶ 22.

[11] Deposition of Jack Silver, Nov. 20, 2008, 97:11–20.  56.1 ¶ 23.b.

| 11/20/08 | "Bayview itself is not the owner of this particular loan.  I checked.  The loan had been securitized more than once.  It was in security and then moved to security so Wachovia as trustee is the owner of the loan so the loan is in a security."[12] | Trust Agreement dated as of Sept. 1, 2007, for the 2007 Trust (making U.S. Bank, N.A. trustee of the 2007 Trust) (Manaugh Decl. Ex. Q) |
|---|---|---|
| 12/11/09 | "US Bank and Trust is the successor to Wachovia having purchased Wachovia's custodian rights as well as the first note and first mortgage."[13] | Trust Agreement for the 2007 Trust (making U.S. Bank, N.A. trustee of the 2007 Trust, not as successor to Wachovia) (Manaugh Decl. Ex. Q) |
| 12/14/09 | "On June 25, 2003, for value received, Olympia assigned its interest in the First Loan, including the First Note and First Mortgage[,] to Wachovia."[14] | Supplement to Loan Sale Agreement, effective as of June 23, 2003, between Olympia (seller) and Bayview Financial Trading Group, L.P. (purchaser) (Manaugh Decl. Ex. S); Mortgage Loan Purchase Agreement, dated as of September 1, 2003, between Bayview Financial Trading Group, L.P. (seller) and Bayview Financial Securities Co., LLC (purchaser) (Manaugh Decl. Ex. T) |
| 2/17/10 | "Bayview [Loan Servicing LLC] . . . has continuously been in possession, custody and control of the original documents, including the First Note and First Mortgage."[15] | The mortgage and note were held by Wachovia (Manaugh Decl. Ex. L); **then** by U.S. Bank (Manaugh Decl. Ex. I); **then** by BLS (Manaugh Decl. Ex. M); **then** by U.S. Bank (Manaugh Decl. Ex. Q) |

---

[12] *Id*. at 106:3–8.  56.1 ¶ 23(c).

[13] Declaration of Jack Silver in Support of Wachovia Bank, N.A. and Bayview Loan Servicing, LLC's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (b), Dec. 11, 2009, ¶ 5. 56.1 ¶ 25.b.

[14] Rule 56.1 Statement of Bayview defendants, Dec. 14, 2009, ¶ 8.  56.1 ¶ 26.

[15] Reply Declaration of Robert E. Hodapp in Further Support of Wachovia Bank, N.A. and Bayview Loan Servicing, LLC's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (b), Feb. 17, 2010, ¶ 8.  56.1 ¶ 28.a.

| 2/17/10 | "US Bank, as trustee, [is] the successor to Wachovia."[16] | Trust Agreement for the 2007 Trust (making U.S. Bank, N.A. trustee of the 2007 Trust, not as successor to Wachovia) (Manaugh Decl. Ex. Q) |
|---|---|---|
| 2/17/10 | "U.S. Bank is now the successor trustee of the securitization trust which owns the Lodge mortgage."[17] | Trust Agreement for the 2007 Trust (making U.S. Bank, N.A. trustee of the 2007 Trust, not as successor to Wachovia) (Manaugh Decl. Ex. Q) |
| 2/15/11 | "Since [Bayview Financial L.P.'s] original acquisition from Olympia Mortgage Corp., the document custodian has been Wachovia Bank, National Association, or its successor in interest, U.S. Bank, National Association."[18] | While Wachovia, and later U.S. Bank as successor, served as custodian for the 2005 Trust (Manaugh Decl. Ex. R), U.S. Bank serves only as trustee and not as custodian for the 2007 Trust, and is not identified as a successor to Wachovia (Manaugh Decl. Ex. Q) |

Individually, many of these statements are objectively false. Some of the statements directly conflict with each other. Together they paint a misleading picture of an undifferentiated field that the Lodge mortgage loan has ostensibly occupied, undisturbed, these many years. According to this picture, Wachovia has only been the trustee to which the loan has been entrusted, and U.S. Bank ("and Trust") has been merely its successor in interest. BLS has allegedly had simultaneous possession, custody and control of the loan, with Wachovia and/or U.S. Bank (which, the Bayview defendants have urged, ought to be treated as interchangeable entities) as simply the document custodians for the loan.[19]  And while the loan has been placed

---

[16] *Id*. at ¶ 9.  56.1 ¶ 28.b.

[17] *Id*. at ¶ 2.  56.1 ¶ 28.c.

[18] Affidavit of Thomas Carr, Feb. 15, 2011, Manaugh Decl. Ex. K, ¶ 10.  56.1 ¶ 38.a.

[19] To further blur the picture, paragraph 9 of the Carr Affidavit states that "BFLP acquired possession of the mortgage loan file for the Lodge Loan, including the promissory note endorsed in blank through its document custodian."  56.1 ¶ 38.b.  (Manaugh Decl. Ex. K, ¶ 9.)  BFLP's (continued on next page)

into a second security and then a third, nothing about those multiple securitizations has ostensibly altered the ownership status of the Lodge mortgage loan.

This picture is, of course, preposterous.  Ms. Lodge's mortgage has not only changed hands several times during this period of supposed quiescence, but it has indisputably done so— as the recently produced documents show—as part of arm's-length transactions between entities that are not mere agents, principals, nominees or successors in interest of one another.  For example, U.S. Bank bought Wachovia's corporate trust business in an arm's-length cash transaction between two unaffiliated business entities (*see* Manaugh Decl. Ex. I); U.S. Bank thereby undisputedly succeeded to Wachovia's interests with respect to trusts that then existed. That transaction did not purport to create an identity between Wachovia and U.S. Bank, or to make U.S. Bank a successor in interest to Wachovia as to any trust for which U.S. Bank should later serve as trustee.

Similarly, when the 2003 Trust was terminated, BLS contracted with U.S. Bank to purchase the mortgage loans in the pool, and took possession of the loan files (including the notes endorsed in blank and mortgages with accompanying assignment documents prepared for recordation; *see* Exhibit A to Manaugh Decl. Ex. M).  In agreeing to purchase the contents of the 2003 Trust, BLS warranted that it was a "sophisticated investor" and had had the opportunity to conduct its own due-diligence inquiry into the mortgage loans in the pool.  (*Id.* at Sec. 6(e)-(f).)

---

(continued)
document custodian is not identified in this paragraph, and the meaning of the paragraph is ambiguous.  What exactly passed between BFLP and the unidentified custodian?  Did BFLP acquire possession from the custodian, and if so, did it then become the holder?  What does it mean that the promissory note was "endorsed in blank through its document custodian"?  The equivocality of this averment is in keeping with the Bayview defendants' misleading disclosure practices throughout this litigation.

For its part, U.S. Bank represented that it owned the mortgage loans in the pool and had the power and authority to transfer them.  (*Id*. at  Sec. 5(a)(ii).)

Finally, as part of the transaction that created the 2007 Trust, it was agreed that U.S. Bank would take delivery of all of the loans in the pool—each of the notes endorsed to U.S. Bank as trustee for the 2007 Trust (or endorsed in blank), and each mortgage assigned to U.S. Bank as trustee of the 2007 Trust.  (*See* Manaugh Decl. Ex. Q, at 23.)

In short, Ms. Lodge's mortgage loan has been bought and sold multiple times by sophisticated financial institutions as part of complex transactions.  As a result of these transactions, Ms. Lodge's mortgage loan has had a new "holder" at least three times since the litigation began: U.S. Bank, BLS (and various other Bayview entities), and U.S. Bank again. Each time a different entity took over the loan, the Bayview defendants should have advised the parties and the Court of the need to amend the pleadings.  This ongoing obligation is embodied in Rule 26(e)(1) of the Federal Rules of Civil Procedure, which provides that "A party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission—must supplement or correct its disclosure or response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing . . . ." Fed. R. Civ. P. 26(e)(1).

Far from meeting this requirement, the Bayview defendants have affirmatively misled the Court and the parties as to who holds the Lodge mortgage loan.  Indeed, in March 2010, counsel for the Bayview defendants appeared in this litigation before Magistrate Judge Mann purportedly on behalf of "Bayview and Wachovia" (*see* Doc. No. 475, Case No. 04-875, at 2).  What is more,

as recently as February 18, 2011, counsel represented in a letter filed with the Court that he represents "Bayview Financial Services LLC and Wachovia Bank N.A. (the 'Bayview defendants')"[20] (Doc. No. 514, Case No. 05-187).  Such misrepresentations warrant sanctions.[21]

### B.    The Bayview Defendants' Failure to Fulfill Their Discovery Obligations Was Unjustified.

The documents relating to the multiple transfers and securitizations of the Lodge mortgage loans were clearly called for as part of their ongoing obligation under Rule 26(e) to correct or complete their Rule 26(a) disclosures.  The Bayview defendants, as parties to all three securitizations, had access to the securitization documents, and cannot be heard to deny that they lacked knowledge of their existence.  Those documents were clearly encompassed by plaintiff's request, in February 2006, for "[a]ny agreement(s) that concerned, related to, encompassed, referred to or included the subject mortgages, including but not limited to warehouse lines of credit, bulk sales, repurchase agreements, investment agreements, securitization agreements, credit agreements, and/or loan sale agreements."  Plaintiffs' First Consolidated Request for Production of Documents to Bayview Loan Servicing, LLC and Wachovia Bank, N.A., Feb. 8,

---

[20] "Bayview Financial Services LLC" is not a party to this litigation.

[21] In a recent New York State decision in a foreclosure action involving misleading statements and contradictory representations strikingly similar to those at issue here, the court denied the relief sought by the plaintiff and ordered an evidentiary hearing to determine whether to sanction the plaintiff and its counsel.  *Bayview Loan Servicing, LLC v. Bozymowski*, No. 00296-2010, 2011 WL 677379, at *1 (Sup. Ct. Suffolk Co. Feb. 17, 2011).  Among other improprieties, the court noted that the plaintiff's affidavit contained "nebulous" and "inconsistent" statements regarding when plaintiff acquired the subject loan; that the date on the mortgage assignment submitted in support of standing contradicted all of the affiant's conflicting statements about the assignment; and that plaintiff's alleged standing was undermined by another submission: a copy of the note showing an endorsement from the originating lender not to plaintiff, but to a non-party financial institution that had never been mentioned in the parties' or counsel's sworn statements.  *Id*. at *4.

2006, Request No. 14.  Moreover, plaintiff's request for documents *specifically* relating to securitization of the Lodge mortgage loan was made and acknowledged on the record of the deposition of the Bayview defendants' Rule 30(b)(6) witness.  There is simply no conceivable justification for the Bayview defendants' withholding of these documents for so many years until ordered to so do on the eve of trial.

### C.       Plaintiff Was Prejudiced by the Bayview Defendants' Conduct.

The belated disclosure of documents and the Bayview defendants' misrepresentations caused irreparable harm to Ms. Lodge, for she was severely prejudiced in her ability to make her case.  As set forth above, the documents that were so long withheld vitiate the Bayview defendants' holder-in-due-course defense.  Plaintiff should have been informed of these transactions during fact discovery, so that she could conduct adequate document and deposition discovery and expert opinion regarding the transactions could have been sought.  Had plaintiff received the relevant information and the subsequent discovery she therefore would have sought, plaintiff could have contended at the summary judgment stage (rather than now, on the eve of trial, after untold hours of the Court's and the parties' time have been consumed needlessly by these very issues) that the holder-in-due-course defense was unavailable to the Bayview defendants.

The Bayview defendants' omissions and affirmative misstatements could well have had an even more deleterious outcome for Ms. Lodge had the documents and information not been disclosed prior to trial.  The heretofore unreported transactions are directly relevant to the action, and specifically to plaintiff's ability to obtain complete relief should she prevail at trial: Wachovia was a proper Rule 19 party when the litigation began, but neither Wachovia nor the fabricated "US Bank and Trust" is the proper Rule 19 party now, because neither owns her

mortgage.  Had plaintiff not sought and obtained a court order to produce these documents, it is eminently probable that this action would have proceeded to trial with the wrong party named on the caption, and any judgment entered in Ms. Lodge's favor would bind a party without the authority to afford complete relief from the unlawful mortgage.

"The burden to prove . . . harmlessness rests with the party who has failed to disclose information pursuant to Rule 26."  *Castro v. City of New York*, 2009 WL 2461144, at *6 (E.D.N.Y. Aug. 10, 2009).   The Bayview defendants cannot bear that burden, for the harm to Ms. Lodge is manifest.

### D.    Bad Faith Is Evident in the Bayview Defendants' Practices Throughout the Litigation.

Although a showing of bad faith in connection with a failure to disclose discoverable information is not required for Rule 37(c) relief to be afforded, the Bayview defendants' bad faith can and should be "taken into account" in this case.  *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006).  The Bayview defendants have persisted for more than five years in making deceptive and erroneous assertions to the parties and the Court as to the ownership of the Lodge mortgage loan.  The Bayview defendants' different Answers to the allegations in Ms. Lodge's Complaint and Amended Complaint on ownership of her loan (first admitting in 2005 that Wachovia owned the mortgage, then denying it was the owner in 2007) are stark evidence that their other deceptive conduct was deliberate.  Their misrepresentations actively misled plaintiff and prevented her from prosecuting her case with information to which she was entitled. The Bayview defendants had to have been aware that they were misleading the Court and the parties.  There is no escape from the conclusion that bad faith drove the Bayview defendants' omissions and misstatements in this action.  The Court should take this motive into account in imposing sanctions pursuant to Rule 37(c)(1).

## CONCLUSION

For the foregoing reasons, the Bayview defendants' holder-in-due-course defense should

be stricken.  The Bayview defendants should be ordered to pay all attorneys' fees accrued in

connection with this motion.


Dated:          March 3, 2011
                Brooklyn, New York



                                        By:  _____
                                             MEGHAN FAUX
                                             SARA MANAUGH
                                             JENNIFER LIGHT
                                             RACHEL GEBALLE
                                             South Brooklyn Legal Services
                                             Foreclosure Prevention Project
                                             105 Court Street, 3rd Floor
                                             Brooklyn, New York 11201
                                             (718) 237-5500
                                             mfaux@sbls.org

                                             JEAN CONSTANTINE-DAVIS
                                             AARP Foundation Litigation
                                             601 E Street NW
                                             Washington, D.C. 20049
                                              (202) 434-2058
                                             JCDavis@aarp.org

                                             J. CHRISTOPHER JENSEN
                                             Cowan, Liebowitz & Latman, P.C.
                                             1133 Avenue of the Americas
                                             New York, New York 10036-6799
                                             (212) 790-9204
                                             jcj@cll.com

                                             *Attorneys for Plaintiff*