UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
MARY LODGE,

                   *Plaintiff*,              **MEMORANDUM & ORDER**

   -against-                05-cv-187(KAM)(RLM)

UNITED HOMES, LLC, UNITED PROPERTY
GROUP, LLC, YARON HERSHCO, GALIT
NETWORK, LLC, OLYMPIA MORTGAGE
CORP., BAYVIEW LOAN SERVICING, LLC,
BAYVIEW ASSET MANAGEMENT, LLC, U.S.
BANK, N.A. AS TRUSTEE FOR BAYVIEW
ASSET-BACKED SECURITIES TRUST SERIES
2007-30, BAYVIEW FINANCIAL, L.P.,
and BAYVIEW FINANCIAL MANAGEMENT
CORP.,

                   *Defendants*.
-----------------------------------X

**MATSUMOTO, United States District Judge:**

        Plaintiff Mary Lodge ("plaintiff" or "Lodge") moves
pursuant to Federal Rules of Civil Procedure 56(a) and 37(c) to
strike the holder-in-due-course defense asserted by defendants
Bayview Loan Servicing, LLC, Bayview Asset Management, LLC, U.S.
Bank, N.A. as trustee for Bayview Asset-Backed Securities Trust
Series 2007-30, Bayview Financial, L.P., and Bayview Financial
Management Corp. (the "Bayview Defendants").[1]  (*See* ECF No. 535,
Notice of Motion to Strike Holder-In-Due-Course Defense
("Mot.").)  For the reasons set forth below, plaintiff's motion

---

[1]    The term "Bayview Defendants" also includes the parties previously
named as Rule 19 parties in this matter, i.e. Wachovia Bank, N.A. and
U.S. Bank and Trust.

to strike the holder-in-due-course defense is denied.  The court

instead orders that: (1) the Bayview Defendants compensate

plaintiff for the costs and fees incurred in pursuing the

discovery relating to the ownership of the Lodge mortgage,

responding to the Bayview Defendants' two motions (one motion to

dismiss and/or for summary judgment, and one motion for summary

judgment) on their holder-in-due-course defense, and in making

the instant motion to strike the holder-in-due-course defense,

and (2) the Bayview Defendants are precluded from introducing

evidence produced on or after January 13, 2011 and any testimony

relating to the documents produced on or after January 13, 2011.

## BACKGROUND

The undisputed facts, as set out in plaintiff's Local

Civil Rule 56.1 Statement, are as follows.[2]

---

[2]    Local Civil Rule ("L. Civ. R.") 56.1 requires a party moving for
summary judgment pursuant to Federal Rule of Civil Procedure 56 to file,
"annexed to the notice of motion a separate, short and concise statement, in
numbered paragraphs, of the material facts as to which the moving party
contends there is no genuine issue to be tried."  L. Civ. R. 56.1(a)
(emphasis omitted).  A party opposing a motion for summary judgment "shall
include a correspondingly numbered paragraph responding to each numbered
paragraph in the statement of the moving party . . . ."  L. Civ. R. 56.1(b)
(emphasis omitted).  The rule makes clear that "[e]ach numbered paragraph in
the statement of material facts set forth in the statement required to be
served by the moving party will be deemed to be admitted for purposes of the
motion unless specifically controverted by a correspondingly numbered
paragraph in the statement required to be served by the opposing party."
L. Civ. R. 56.1(c) (emphasis omitted).  The Bayview Defendants did not submit
a correspondingly numbered document responding to plaintiff's 56.1 statement.
Therefore, the court accepts plaintiff's factual assertions as true, as
permitted by Local Civil Rule 56.1(c), after reviewing plaintiff's 56.1
statement and the supporting evidence.

Plaintiff commenced this action in January of 2005, alleging that certain defendants conspired to conduct a property-flipping scheme whereby she was targeted based on her race and deceived into purchasing an overvalued, defective home, financed with predatory loans. (ECF No. 1, Complaint ("Compl."); *see also* ECF No. 537, Plaintiff Mary Lodge's Rule 56.1 Statement of Facts ("Pl. 56.1 Stmt.") ¶ 6.) This action has since been consolidated with five related actions, all brought by Brooklyn homeowners alleging that they were victims of the property-flipping scheme. (ECF No. 472, Memorandum & Order dated 9/13/10 ("9/13/10 Order") (consolidating actions).) In her original complaint, plaintiff named the seller of her property, the lawyer who purportedly represented her in the transaction, and the lender that originated her two "piggyback" mortgage loans. (Compl. ¶¶ 9-12.) Plaintiff also named, as necessary parties pursuant to Federal Rule of Civil Procedure 19, the servicer of her First Note and First Mortgage (the "Lodge mortgage") and Wachovia Bank, N.A. ("Wachovia"). (*Id.* ¶¶ 13-14.) Wachovia was named because public records showed that the originating lender had sold the Lodge mortgage and that it had been assigned to Wachovia. (*Id.* ¶ 13.) Bayview Loan Servicing, LLC ("BLS") was substituted as a party in the action after it assumed servicing rights to the Lodge mortgage. (ECF No. 32, Stipulation Substituting Party.) In their answer to the

original complaint, dated July 13, 2005, Wachovia and BLS admitted that in 2003 Wachovia had become the trustee of a trust containing the Lodge mortgage, and that it was a necessary party. (ECF No. 34, Answer to Complaint by Wachovia Bank, N.A. and Bayview Loan Servicing, LLC. ¶¶ 13-14.)

Plaintiff filed an amended complaint in December 2005, asserting claims against BLS as a Rule 19 party. (ECF No. 62, Amended Complaint.) On February 8, 2006, plaintiff propounded a set of discovery requests, requesting, *inter alia*, the following: "[a]ny agreement(s) that concerned, related to, encompassed, referred to or included the subject mortgages, including but not limited to warehouse lines of credit, bulk sales, repurchase agreements, investment agreements, securitization agreements, credit agreements, and/or loan sale agreements" and "[a]ll secondary market purchase agreements to which Wachovia is a signatory as Trustee on behalf of any trust into which the subject mortgages were transferred." (Pl. 56.1 Stmt. ¶ 11.)

Throughout the litigation, Wachovia and BLS made the following inaccurate and conflicting representations relating to the identity of the holder of the Lodge mortgage:

- In their Memorandum of Law in Support of a Motion to Dismiss and/or Summary Judgment, dated February 28, 2006, Wachovia and BLS asserted that "Wachovia is

the holder of a mortgage as an assignee thereof,"
that "Wachovia is a holder of the [Lodge] mortgage
in due course," and that "by holding the note and
mortgage in issue, Wachovia qualifies as a holder in
due course of the [Lodge] mortgage." (ECF No. 136,
Memorandum in Support of Motion to Dismiss and/or
Summary Judgment at 1, 4-5.)

- In their Reply Memorandum of Law in Further Support
  of a Motion to Dismiss and/or Summary Judgment,
  dated May 19, 2006, Wachovia and BLS asserted the
  following: "There can be no controversy that
  Wachovia is the holder of the note, and Plaintiff's
  counsel's attempts to create such controversy must
  fail." (ECF No. 140, Response in Support of Motion
  to Dismiss and/or Summary Judgment at 6.)

- In a foreclosure action brought in Kings County
  Supreme Court, filed on July 30, 2007, BLS asserted
  that it "is now the sole, true and lawful holder of
  the said bond(s)/note(s) and mortgage(s)." (Pl.
  56.1 Stmt. ¶ 18.)

- On September 21, 2007, after the denial of their
  Motion to Dismiss and/or Summary Judgment, Wachovia
  and BLS filed an Amended Answer in which they denied
  that Wachovia was the trustee of the trust into

which the Lodge mortgage had been sold and that it was a necessary party, but simultaneously asserted that "Wachovia is a holder in due course as it took the [Lodge] mortgage . . . in good faith and without notice or actual knowledge of any defense thereto." (ECF No. 237, Answer to Amended Complaint by Wachovia Bank, N.A. and Bayview Loan Servicing, LLC at ¶¶ 17, 217.)

- In their Memorandum of Law in Opposition to Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction, dated January 4, 2008, Wachovia and BLS asserted that "Wachovia is a holder in due course of the [Lodge mortgage] . . . ." (ECF No. 296, Memorandum in Opposition to Motion for Preliminary Injunction and Temporary Restraining Order at 6.)

- On November 20, 2008, Jack Silver, an officer of BLS, appeared for a deposition pursuant to Federal Rule of Civil Procedure 30(b)(6), and testified that "US Bank" had succeeded to Wachovia's interest in the Lodge mortgage, that the Lodge mortgage was in the custody of Wachovia/US Bank, that "Wachovia/US Bank" are "the same entity, just a different name now," and that Wachovia/US Bank were located in "the

same place . . . [t]hey just changed names. . . . The operation, the location is the same." (Pl. 56.1 Stmt. ¶ 23; ECF No. 538, Declaration of Sara Manaugh in Support of Motion to Strike Holder-in-Due-Course Defense ("Manaugh Decl."), Ex. D, Deposition of Jack Silver ("Silver Dep.") at 97-98.) Silver further testified that "Bayview itself is not the owner of [the Lodge] loan," that "[t]he loan had been securitized more than once," that the Lodge mortgage "was in security and then moved to security so Wachovia as trustee is the owner of the loan so the loan is in a security," and the current security was in 2007. (Pl. 56.1 Stmt. ¶ 23; Silver Dep. at 106.)

Following the Silver deposition, plaintiff requested, on the record, documentation of the successive securitizations of the Lodge mortgage, and counsel for Wachovia and BLS acceded to the request. (Pl. 56.1 Stmt. ¶ 24; Silver Dep. at 107.) Plaintiff, however, did not receive such documentation until January of 2011. Following the deposition, Wachovia and BLS made the following additional conflicting and incorrect representations relating to the identity of the holder of the Lodge mortgage:

- In a Declaration in Support of the Motion for Summary Judgment by Wachovia and BLS, dated December

11, 2009, Silver swore that "Bayview Financial purchased the [Lodge mortgage] from Olympia," the originating lender, that the mortgage loan was securitized shortly after the purchase by Bayview Financial into a trust of which Wachovia was the trustee, and that "US Bank and Trust is the successor to Wachovia having purchased [its] custodian rights as well as the [Lodge mortgage]." (ECF No. 454-1, Declaration of Jack Silver in Support of Motion for Summary Judgment ¶ 5.)

- In their Rule 56.1 Statement in Support of a Motion for Summary Judgment, dated December 14, 2009, Wachovia and BLS asserted the following: "On June 25, 2003, for value received, Olympia assigned its interest in the [Lodge mortgage] to Wachovia." (ECF No. 454, Wachovia Bank, N.A. and Bayview Loan Servicing, LLC's Rule 56.1 Statement in Support of Motion for Summary Judgment ¶ 8.)

- In a Reply Declaration in Further Support of a Motion for Summary Judgment, dated February 17, 2010, Robert Hodapp, another BLS officer, swore that "[BLS] . . . has continuously been in possession, custody and control of the original documents, including the [Lodge mortgage]," that "U.S. Bank, as

trustee, the successor to Wachovia as Trustee, is
the holder of the [Lodge mortgage]," and that "US
Bank is now the successor trustee of the
securitization trust which owns the [Lodge
mortgage]".  (ECF No. 455-1, Declaration of Robert
E. Hodapp in Support of Motion for Summary Judgment
at ¶¶ 2, 8-9.)

By Memorandum and Order dated September 13, 2010, the
court denied Wachovia and BLS's motion for summary judgment,
noting that their submissions were "seemingly contradictory and
inconsistent" as to the identity of the holder of the Lodge
mortgage and that, even if Wachovia was the holder, there were
issues of material fact as to whether Wachovia took the Lodge
mortgage without any notice as to the claims to or defenses
against such mortgage.  (9/13/10 Order.)

On January 5, 2011, in an e-mail responding to a
request for information by counsel for plaintiff, counsel for
Wachovia and BLS wrote that "US Bank and Trust is the owner of
the loan."  (Pl. 56.1 Stmt. ¶ 30.)  In subsequent e-mails and in
a letter dated January 7, 2011, counsel for plaintiff again
requested that counsel for Wachovia and BLS provide
documentation of the current ownership of the Lodge mortgage and
confirm whether counsel represents "US Bank and Trust."  (*Id.* ¶
31.)

Plaintiff asserts that, on the basis of the representations by counsel for the Bayview Defendants, she filed and served a Second Amended Complaint on January 10, 2011, substituting "U.S. Bank and Trust Co., N.A." for "Wachovia Bank, N.A." as a Rule 19 party as "trustee of the trust into which [the Lodge] mortgage was sold." (*Id.* ¶ 32; ECF No. 488, Second Amended Complaint ("Second Am. Compl.") ¶ 17.) Plaintiff also added as defendants Bayview Asset Management, LLC, f/k/a Bayview Financial Trading Group, L.P., as the original purchaser of the Lodge mortgage from the originating lender prior to securitization. (Pl. 56.1 Stmt. ¶ 32; Second Am. Compl. ¶ 18.)

Plaintiff asserts that by January 13, 2011, the court-ordered deadline for the parties' submission of any request for judicial intervention on a discovery dispute, she had received neither documentation of the current ownership of the Lodge mortgage, nor confirmation whether counsel for Wachovia and BLS also represented "US Bank and Trust." (Pl. 56.1 Stmt. ¶ 33.) As a result, plaintiff filed a letter that day requesting *inter alia* court intervention on this discovery dispute. (*Id.*; ECF No. 492, Letter dated 1/13/11 for Discovery Dispute Resolution.) On January 13, 2011, counsel for the Bayview defendants stated in an e-mail to plaintiff's counsel that it represents "the interests of U.S. Bank, N.A. as trustee." (Pl. 56.1 Stmt. ¶ 34.) In the same correspondence, counsel for the Bayview

Defendants sent plaintiff's counsel an "Assignment and Assumption Agreement" between Wachovia Corporation and U.S. Bank, N.A. (*Id.*) That document, however, did not establish actual ownership of the Lodge mortgage, because it made no reference to the mortgage or the trust into which the mortgage was originally placed, nor did it identify the subsequent trust into which the Lodge mortgage may have been sold. (*Id.*)

On January 20, 2011, Magistrate Judge Mann held a telephone conference to address the discovery dispute raised by plaintiff in her January 13, 2010 letter, and ordered that counsel for the Bayview Defendants produce proof of current ownership of the Lodge mortgage and proof of chain of title from 2006. (ECF No. 497, Minute Order dated 1/20/11.) The Bayview Defendants produced the documents on January 28, 2011. (Pl. 56.1 Stmt. ¶ 37.) It is undisputed that the Bayview Defendants' newly disclosed documents show the following:

- The Lodge mortgage was securitized into three separate trusts between 2003 and 2007.

- Wachovia Bank, N.A., was the trustee of the Bayview Financial Mortgage Pass-Through Certificates, Series 2003-E (the "2003 Trust"), the first trust into which the Lodge mortgage was securitized. (*Id.* ¶ 5.)

- In December 2005, U.S. Bank, N.A. acquired Wachovia's corporate trust and custody business, and became successor trustee to the 2003 Trust, and owner of the Lodge mortgage. (*Id.* ¶ 10.)

- When the 2003 Trust terminated in October 2006, BLS purchased the assets of the trust, including the Lodge mortgage, from U.S. Bank, N.A. via a sale agreement in which U.S. Bank, N.A. warranted that it had the right to sell each mortgage loan in the pool, and which required U.S. Bank, N.A. to convey all the mortgages and notes in the 2003 trust to BLS. (*Id.* ¶ 15.)

- In December 2006, Bayview Financial, L.P. transferred the Lodge mortgage. The loan was re-securitized into the Bayview Financial Revolving Asset Trust 2005-A (the "2005 Trust"), a trust operated by one or more Bayview entities. (*Id.* ¶ 16.)

- U.S. Bank, N.A. as successor in interest to Wachovia, served as "indenture trustee" for the 2005 Trust. (*Id.* ¶ 17.)

- In September 2007, the Lodge mortgage was transferred out of the 2005 Trust, via a series of

agreements involving the sale of the assets in the
2005 Trust to Bayview Financial Property Trust II,
the sale of the same assets from Bayview Financial
Property Trust II to Bayview Financial Property
Trust, and the express relinquishment by U.S. Bank,
N.A., as successor in interest to Wachovia, of its
security interest in each mortgage in the 2005
Trust.  (*Id.* ¶ 19.)

- The Lodge mortgage was re-securitized into the
Bayview Asset-Backed Securities Trust Series 2007-
30, for which U.S. Bank serves as trustee and as
such possesses the Lodge mortgage.  (*Id.* ¶ 20.)  The
Trust Agreement for the 2007 Trust does not mention
Wachovia or indicate that Wachovia has any interest
or role in the 2007 Trust.  U.S. Bank is not
identified as a successor to Wachovia.  (*Id.*)

Plaintiff filed a Third Amended Complaint, dated
February 28, 2011, substituting "U.S. Bank, N.A. as trustee for
Bayview Asset-Backed Securities Trust Series 2007-30" ("U.S.
Bank") for "U.S. Bank and Trust Co., N.A." as a Rule 19
necessary party as the trustee of the trust into which the Lodge
mortgage had been sold.  (ECF No. 529, Third Amended Complaint
("Third Am. Compl.") ¶ 17.)

On February 7, 2011, plaintiff moved *inter alia* for a sanctions order striking the Bayview Defendants' holder-in-due-course defense. (ECF No. 504, Motion for Discovery and Sanctions Order.) Magistrate Judge Mann held a conference on February 11, 2011, in which she precluded the testimony of a belatedly disclosed Bayview Defendants' witness and ordered the Bayview Defendants to pay plaintiff for the attorney's fees incurred in connection with the discovery dispute. (ECF No. 509, Minute Entry dated 2/11/11; ECF No. 516, Transcript of 2/11/11 Conference ("2/11/11 Tr.") at 14-15.) Judge Mann, however, did not rule on the motion to strike the holder-in-due-course defense, and directed plaintiff to file such a motion before this court. (2/11/11 Tr. at 14-15.) On March 30, 2011, plaintiff moved to strike the Bayview Defendants' holder-in-due-course defense pursuant to Federal Rules of Civil Procedure 56(a) and 37(c). (Mot.) The Bayview Defendants filed an opposition. (ECF No. 543, Memorandum in Opposition to Motion to Strike Holder-In-Due-Course Defense ("Opp'n").) Plaintiff filed a reply in further support of her motion. (ECF No. 539, Reply in Support of Motion to Strike Holder-In-Due-Course Defense ("Reply").)

## DISCUSSION

### A. Summary Judgment Pursuant to Fed. R. Civ. P. 56

Plaintiff moves to strike the Bayview Defendants' holder-in-due-course defense pursuant to Federal Rule of Civil Procedure 56(a), arguing that the tardily disclosed documents establish that plaintiff is entitled to summary judgment on this issue. (ECF No. 536, Memorandum in Support of Motion to Strike Holder-In-Due-Course Defense ("Pl. Mem.") at 1-2, 14-18.) Specifically, plaintiff argues that the tardily disclosed documents establish that all entities that took the Lodge mortgage after Wachovia did so with actual notice that the validity of the mortgage was in dispute, and that each putative holder was a repeat holder and therefore could not benefit from the shelter rule. (*Id.* at 14-18.) For these reasons, plaintiff argues that the undisputed facts establish that the Bayview Defendants cannot invoke the holder-in-due-course defense as a matter of law, and thus summary judgment should be entered striking the defense. (*Id.*) The Bayview Defendants oppose summary judgment, arguing that because U.S. Bank, the current holder of the Lodge mortgage, did not attempt to improve its status by transferring and subsequently re-acquiring the Lodge mortgage, it is a holder in due course under the shelter rule. (Opp'n at 15-19.)

1. <u>Standard for Summary Judgment</u>

Federal Rule of Civil Procedure 56 provides that
"[t]he court shall grant summary judgment if the movant shows
that there is no genuine dispute as to any material fact and the
movant is entitled to judgment as a matter of law."  Fed. R.
Civ. P. 56(a).  The moving party carries the burden of
demonstrating the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In deciding
a motion for summary judgment, the court's function is not to
resolve disputed issues of fact, but only to determine whether
there is a genuine issue to be tried.  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The court must construe
the facts in the light most favorable to the nonmoving party and
all reasonable inferences and ambiguities must be resolved
against the moving party.  *Flanigan v. Gen. Elec. Co.*, 242 F.3d
78, 83 (2d Cir. 2001).

Nevertheless, the nonmoving party cannot rest merely
on allegations or denials but must instead set out specific
facts showing a genuine issue for trial.  *See* Fed. R. Civ. P.
56(c); *see also National Westminster Bank USA v. Ross*, 676 F.
Supp. 48, 51 (S.D.N.Y. 1987) ("Speculation, conclusory
allegations, and mere denials are not enough to raise genuine
issues of fact."); *Harlen Assocs. v. Inc. Vill. of Mineola*, 273
F.3d 494, 499 (2d Cir. 2001) (noting that "mere speculation and

conjecture is [sic] insufficient to preclude the granting of the motion"). Nor can the nonmoving party rest only on the pleadings. *Celotex*, 477 U.S. at 324 (noting that Rule 56 "requires the nonmoving party to go beyond the pleadings"). Instead, each statement of material fact by the movant or opponent must be followed by citation to evidence that would be admissible, as required by Rules 56(c) and Local Civil Rule 56.1(d). Moreover, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). No genuine issue of material fact exists "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted).

2. Holder-in-Due-Course Defense & Shelter Rule

Under the New York Uniform Commercial Code, a "holder" is "a person who is in possession of . . . an instrument . . . , issued or indorsed to him or to his order or to bearer or in blank." N.Y. U.C.C. § 1-201(20). A "holder in due course" is defined as "a (1) holder (2) of a negotiable instrument (3) who took it for value, (4) in good faith, and (5) without notice

that it is overdue or has been dishonored or of any defense against or claim to it on the part of another." *Provident Bank v. Cmty. Home Mortg. Corp.*, 498 F. Supp. 2d 558, 572 (E.D.N.Y. 2007) (internal quotation marks and citation omitted); *see* N.Y. U.C.C. § 3-302(1).

Moreover, the so-called "shelter rule," codified at § 3-201(1) of the New York Uniform Commercial Code, provides that:

> Transfer of an instrument vests in the transferee such rights as the transferor has therein, except that a transferee who has himself been a party to any fraud or illegality affecting the instrument or who as a prior holder had notice of a defense or claim against it cannot improve his position by taking from a later holder in due course.

N.Y. U.C.C. § 3-201(1). Under the shelter rule, "a transferee obtains the rights, not the status, of the prior holder in due course. . . . The statute therefore permits a holder with notice of defenses to acquire the rights of a holder in due course." *Mfrs. Hanover Trust Co. v. Robinson*, 157 Misc. 2d 651, 655–56 (Sup. Ct. N.Y. Co. 1993). However, the Official Comment to § 3-201 states that the shelter rule "is not intended and should not be used to permit any holder who has himself been a party to any fraud or illegality affecting the instrument, or who has received notice of any defense or claim against it, to wash the paper clean by passing it into the hands of a holder in due

course and then repurchasing it." N.Y. U.C.C. § 3-201(1),
Official Comment ¶ 3.

### 3. Application

Plaintiff argues that the newly disclosed documents
establish that the Bayview Defendants are not entitled to invoke
the holder-in-due-course defense because, at the time U.S. Bank
and BLS took the Lodge mortgage, they were already on notice of
the claims and defenses against the Lodge mortgage raised in the
instant litigation. (Pl. Mem. at 1-2, 16-17.) Further,
plaintiff argues that the Bayview Defendants cannot claim the
benefit of the shelter rule because BLS and U.S. Bank are repeat
holders. (*Id.* at 17-18.)

The court agrees, and the Bayview Defendants do not
dispute, that at the time U.S. Bank and BLS took the Lodge
mortgage, they were on notice of the claims to and defenses
against the mortgage. BLS was substituted as a Rule 19 party in
this action in June 16, 2005 pursuant to a stipulation by the
parties so-ordered by this court. (ECF No. 32, Stipulation
Substituting Party.) Because one of the requirements of the
holder-in-due-course defense is that the holder take the
mortgage "without notice that it is overdue or has been
dishonored or of any defense against or claim to it on the part
of another," *Provident Bank*, 498 F. Supp. 2d at 572, BLS cannot
invoke the defense as an original holder in due course.

Similarly, at the time U.S. Bank took the Lodge mortgage from Wachovia in December of 2005, it was on notice that the validity of the mortgage was in dispute in the instant case. U.S. Bank cannot, therefore, invoke the holder-in-due-course defense as an original holder. If, however, the Bayview Defendants can show that Wachovia, the previous holder of the Lodge mortgage, took without notice of the claims and defenses asserted and can establish that it was a holder in due course, then subsequent holders, including BLS and U.S. Bank, may be able to invoke the holder-in-due-course defense under the shelter rule.

To support her argument that the Bayview Defendants cannot benefit from the shelter rule, plaintiff relies on the language of the shelter rule provision, which states that "a prior holder [who] had notice of a defense or claim against [the instrument] cannot improve his position by taking from a later holder in due course." N.Y. U.C.C. § 3-201(1). Plaintiff also relies on the holding in *Mfrs. Hanover Trust Co. v. Robinson*, 157 Misc. 2d 651. In that case, the notes at issue were initially held by 600 Street Associates Limited Partnership ("Partnership"), which was on notice of the existence of claims to and defenses against the notes. The notes were then transferred to Manufacturers Hanover Trust Company ("Manufacturers"), which took the notes without notice of any defects, and thus took as a holder in due course. Subsequently,

the notes were transferred back to Partnership, and then again to Manufacturers. The question in the case was whether Manufacturers could invoke its prior holder-in-due-course rights under the shelter rule.

The court in that case held that Manufacturers could not invoke the defense subsequent to the second transfer from Partnership, finding that "if the Partnership is found to have fallen within the exceptions of the Shelter Rule, it is consistent with the statutory policy to prohibit it from improving its position and the market for its instrument by also denying any transferee acquiring the notes from it (in this case Manufacturers) shelter under the statute" and that "[t]he fact that Manufacturers was a prior holder in due course [did] not aid it under the language of the section." *Robinson*, 157 Misc. 2d at 657. Plaintiff interprets *Robinson* to hold that "even a prior holder in due course who reacquired instruments from a holder with notice did not have any holder-in-due-course rights to transfer." (Reply Mem. at 6.) According to plaintiff, by analogy, because both BLS and U.S. Bank were aware of the current litigation at the time they took the Lodge mortgage, subsequent holders cannot invoke the holder-in-due-course defense under the shelter rule.

Plaintiff, however, ignores key language in the shelter rule provision and in the *Robinson* holding. The

21

exception to the shelter rule provides that a prior holder with notice cannot benefit from the holder-in-due-course rights of a transferor if that holder is attempting to "improve his position." *See* N.Y. U.C.C. § 3-201(1); *Robinson*, 157 Misc. 2d at 655.  In *Robinson*, Partnership, the original holder of the notes, was an alleged party to the fraud and on notice of the defects alleged by the limited partners, and therefore could not invoke a holder-in-due-course defense or benefit from the shelter rule.  The exception to the shelter rule prohibited Partnership from attempting to improve its position by transferring the notes to Manufacturers, a holder in due course, and re-acquiring the notes, thus attempting to obtain holder-in-due-course rights.  Once Partnership took the notes from Manufacturers, attempting to improve its position, Manufacturers could not then claim the benefit of its previous holder-in-due-course status.  The chain was broken at the time Partnership attempted to improve its position by taking from Manufacturers, thereby falling within the shelter rule exception.  *Robinson*, 157 Misc. 2d at 657.

In the instant case, in contrast, the Bayview Defendants did not transfer and re-acquire the Lodge mortgage in an attempt to improve their position.  If Wachovia, without notice, took the Lodge mortgage and established its status as a holder in due course, then U.S. Bank, and BLS after that, would

acquire the defense under the shelter rule by virtue of
Wachovia's status.  The fact that, at the time that U.S. Bank
and BLS first took the Lodge mortgage, they were on notice that
the validity of the mortgage was disputed would not have
deprived them of the right of invoking the holder-in-due-course
defense because the shelter rule "permits a holder with notice
of defenses to acquire the rights of a holder in due course."
*Robinson*, 157 Misc. 2d at 656.  Therefore, if Wachovia can
establish that it was a holder in due course, U.S. Bank and BLS
could invoke the defense under the shelter rule.  Under such
circumstances, both entities would have been entitled, at the
time they first took the Lodge mortgage, to invoke the holder-
in-due-course defense, and the subsequent transfer and re-
acquisition of the mortgage was not intended to improve their
position.  If both entities were entitled to invoke the defense
before the transfers, they were entitled to invoke the defense
upon re-acquisition because there would be no change in position
for either U.S. Bank or BLS.  Thus, the prior holder with notice
exception under the shelter rule would not apply because U.S.
Bank and BLS were not attempting to improve their positions.  If
the Bayview Defendants can show that Wachovia was a holder in
due course, U.S. Bank, as trustee, would be entitled to invoke
the defense under the shelter rule.

Consequently, plaintiff's motion for summary judgment to strike the Bayview Defendants' holder-in-due-course defense is denied.

## B. Sanctions, Including Striking Defense Pursuant to Fed. R. Civ. P. 37

Plaintiff next argues that the court should impose sanctions, including striking the Bayview Defendants' holder-in-due-course defense, pursuant to Federal Rule of Civil Procedure 37(c) as a sanction for the Bayview Defendants' failure to provide information and discovery required by Rule 26(a) or (e). (Pl. Mem. at 18-28.) Specifically, plaintiff argues that the Bayview Defendants not only "failed to produce documents that should have been produced in discovery" but that "they have distorted, misrepresented and concealed material facts relating" to the ownership of the Lodge mortgage, and "violated discovery rules, misled the Court, and prejudiced plaintiff." (*Id.* at 20.) The Bayview Defendants oppose striking the defense as a sanction, arguing that they complied with their discovery obligations, that failure to produce the re-securitization documents is excusable because they were not aware the documents existed, that they were not aware of the importance of the re-securitization documents, that plaintiff was on notice of the re-securitization of the Lodge mortgage after the Silver deposition, and that plaintiff did not suffer any prejudice as a

24

result of the failure to disclose the re-securitization documents. (Opp'n at 7-15.)

### 1. Standard for Rule 37(c) Sanctions

"A district court has wide discretion to impose sanctions, including severe sanctions, under Federal Rule of Civil Procedure 37, and its ruling will be reversed only if it constitutes an abuse of discretion." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006). Nonetheless, extreme sanctions, such as striking a pleading or entering judgment against the offending party, are "pungent, rarely used, and conclusive. A district judge should employ [them] only when [s]he is sure of the impotence of lesser sanctions." *Ocello v. City of New York*, 347 F. App'x 639, 641 (2d Cir. 2009) (internal quotation marks and citation omitted). "[T]he court should endeavor to impose a sanction that will restore the parties to the position they would have occupied but for the breach of discovery obligations and deter future misconduct." *In re September 11th Liab. Ins. Coverage Cases*, 243 F.R.D. 114, 131-32 (S.D.N.Y. 2007) ("*September 11th Cases*").

The party requesting sanctions under Rule 37 bears the burden of showing that the opposing party failed to timely disclose information required by Rule 26. *Id.* To meet this burden, the moving party must show:

> '(1) that the party having control over the evidence
> had an obligation to timely produce it; (2) that the
> party that failed to timely produce the evidence had
> 'a culpable state of mind'; and (3) that the missing
> evidence is 'relevant' to the party's claim or defense
> such that a reasonable trier of fact could find that
> it would support that claim or defense.'

*September 11th Cases*, 243 F.R.D. at 125 (quoting *Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002)). "A failure to disclose under Rule 37 encompasses . . . untimely production of documents and information required to be produced." *Id.* at 125 (citing *Residential Funding*, 306 F.3d 99).

Plaintiff seeks sanctions pursuant to Federal Rule of Civil Procedure 37(c), including a sanction striking the Bayview Defendants' holder-in-due-course defense. Federal Rule of Civil Procedure 37(c)(1) mandates that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The rule further provides that, "[i]n addition to or instead of this [preclusion] sanction, the court, on motion and after giving an opportunity to be heard," may impose other sanctions such as "payment of the reasonable expenses, including attorney's fees, caused by the failure" to disclose or supplement an earlier response, "inform the jury of

the party's failure," or "impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi)." *Id.* Rule 37(b)(2)(A), in turn, authorizes a court to issue an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence," "striking pleadings in whole or in part," or "rendering a default judgment against the disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(ii)-(iii), (vi).

Further, "[d]espite the mandatory language of Rule 37(c)(1), . . . the Second Circuit has held that preclusion is a discretionary remedy, even if 'the trial court finds that there is no substantial justification and the failure to disclose is not harmless.'" *Rienzi & Sons, Inc. v. N. Puglisi & F. Industria Paste Alientari S.P.A.*, No. 08-CV-2540, 2011 WL 1239867, at *4 (E.D.N.Y. Mar. 30, 2011) (quoting *Design Strategy*, 469 F.3d at 297). The court should consider the following factors in deciding whether to exercise its discretion to exclude belatedly produced evidence: (1) the offending party's explanation for its failure to comply with its disclosure and discovery obligations, (2) the importance of the precluded evidence, (3) the prejudice suffered by the opposing party as a result of the misconduct, and (4) the possibility of a continuance of trial. *See Design Strategy*, 469 F.3d at 294-

95; *see also Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). Moreover, "[b]efore the extreme sanction of preclusion may be used . . ., a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988); *see also Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) ("Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution.").

### 2. Application

Plaintiff has satisfied her burden to obtain Rule 37 sanctions by establishing that the Bayview Defendants breached their discovery obligations, with a culpable state of mind, and that the belatedly disclosed evidence is relevant. *See September 11th Cases*, 243 F.R.D. at 125; *see also Residential Funding*, 306 F.3d at 107. "To satisfy the first element of this test, the moving party must show that the respondent breached its obligations, either as set forth in Rule 26, . . . or as provided in court orders regulating discovery." *September 11th Cases*, 243 F.R.D. at 125. "The 'culpable state of mind' element is satisfied by a showing that 'a party has breached a discovery obligation . . . through bad faith or gross negligence [or] ordinary negligence.'" *Id.* (quoting *Residential Funding*, 306

F.3d at 113). Finally, with respect to the third element of the test, "relevant" in the context of Rule 37 "means something more than sufficiently probative to satisfy Rule 401 of the Federal Rules of Evidence," and the definition of relevance is set out in the *September 11th Cases*, "evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.* (quoting *Residential Funding*, 306 F.3d at 107).

With respect to the first factor of the *September 11th Cases* test, the Bayview Defendants were obligated to disclose the disputed material pursuant to Rule 26(a) initial disclosures and Rule 26(e) supplemental disclosures. Federal Rule of Civil Procedure 26(a) requires a party to a lawsuit to make initial disclosures, "without awaiting a discovery request," of, *inter alia*, "a copy – or a description by category and location – of all documents . . . that the disclosing party has in its possession, custody, or control and may use to support its . . . defenses." Fed. R. Civ. P. 26(a)(1)(A)(ii). Further, "[a] party must make the initial disclosures at or within 14 days after the parties' Rule 26(f) conference unless a different time is set by stipulation or court order, or unless a party objects during the conference that initial disclosures are not appropriate in this action." Fed. R. Civ. P. 26(a)(1)(C). If a party is joined after the Rule 26(f) conference, that party

"must make the initial disclosures within 30 days after being served or joined, unless a different time is set by stipulation or court order." Fed. R. Civ. P. 26(a)(1)(D). The rule requires a party to make initial disclosures "based on the information then reasonably available to it" but "[a] party is not excused from making its disclosures because it has not fully investigated the case . . . ." Fed. R. Civ. P. 26(a)(1)(D). Moreover, Federal Rule of Civil Procedure 26(e) provides that "[a] party who has made a disclosure under Rule 26(a) — or who has responded to [a] . . . request for production . . . — must supplement or correct its disclosure or response: (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or (B) as ordered by the court." Fed. R. Civ. P. 26(e).

In the instant case, the Bayview Defendants had an obligation, pursuant to Rule 26(a), to provide plaintiff with all securitization documents as part of their initial disclosures. The Bayview Defendants have asserted the defense throughout this litigation that Wachovia, and later U.S. Bank, are holders in due course of the Lodge mortgage. There can be no dispute, therefore, that the securitization documents, which

establish the chain of title and ownership of the Lodge mortgage, are documents relevant to this defense and subject to the Rule 26(a) disclosure requirements. The initial conference in this case was scheduled for May 20, 2005, and the court ordered the parties to "exchange the mandatory initial disclosures required by Rule 26(a)(1)" at least two business days prior to the Rule 26(f) conference. (ECF No. 3, Order Governing Initial Conference and Notice of Mandatory Participation in Electronic Case Filing dated 1/20/05 ("1/20/05 Order").) The Rule 26(f) conference, as ordered by the court, was to be held at least two business days prior to the initial conference. (*Id.*) Thus, the Bayview Defendants had an obligation to make initial disclosures, including disclosure of all securitization documents, starting on May 16, 2005.

Although Rule 26(a) specifies that the obligation to make initial disclosures exists "without awaiting a discovery request," Fed. R. Civ. P. 26(a), plaintiff in this case also requested the documents at issue. Specifically, in her February 2006 discovery requests, plaintiff requested production of "[a]ny agreement(s) that concerned, related to, encompassed, referred to or included the subject mortgages, including but not limited to . . . securitization agreements . . ." as well as "[a]ll secondary market purchase agreements to which Wachovia is a signatory as Trustee on behalf of any trust into which the

31

subject mortgages were transferred." (Pl. 56.1 Stmt. ¶ 11.)
These requests clearly encompass the re-securitization documents
belatedly produced on or after January 13, 2011. Moreover, it
is undisputed that plaintiff renewed her request for
securitization documents at the Silver deposition in November
2008, after Silver testified that the Lodge mortgage had been
securitized several times and that a new entity, U.S. Bank, was
the holder of the mortgage. (Silver Dep. at 106-07.)

Rule 26(e), thereafter, required that the Bayview
Defendants supplement their initial disclosures under Rule 26(a)
and their responses to the discovery requests made by plaintiff
by producing the re-securitization documents after each of the
transactions affecting the ownership of the Lodge mortgage.
This is not a case in which Rule 26(e) supplemental disclosures
were not necessary because plaintiff was on notice of the new
information. Although plaintiff became aware during the Silver
deposition that the Lodge mortgage had been securitized several
times, most recently in 2007 (*see* Silver Dep. at 106), the
Bayview Defendants continued to insist that Wachovia was still
the holder of the Lodge mortgage because the new entity, U.S.
Bank, was the "same entity" as Wachovia. (*Id.*) Plaintiff was
not aware of the many transactions affecting the ownership of
the Lodge mortgage. Moreover, even after the Silver deposition,
the Bayview Defendants continued to maintain that Wachovia, or

U.S. Bank as successor to Wachovia, was the holder of the Lodge mortgage. (*See supra*.)  Although plaintiff knew that the Lodge mortgage had been securitized, and again requested documentation at the Silver deposition regarding the successive securitizations, the Bayview Defendants did not comply. Plaintiff consequently remained unaware of the transactions affecting the ownership of the Lodge mortgage and that the identity of the current holder of the mortgage had changed. Thus, plaintiff was not made aware that amendment of the Rule 19 parties in her complaint was required.

        As for the second factor of the *September 11th Cases* test, regarding the culpable state of mind, the court finds wholly unconvincing the Bayview Defendants' argument that they were unaware of the existence of the re-securitization documents.  Jack Silver, a BLS officer, testified at his deposition that the Lodge mortgage had been securitized several times.  (Silver Dep. at 106.)  Robert Hodapp, another BLS officer and an attorney, similarly stated during the Silver deposition that the Lodge mortgage had been securitized several times, most recently in 2007.  (*Id.*)  It is clear that the Bayview Defendants were aware of the subsequent securitizations affecting the ownership of the Lodge mortgage.  The court cannot and does not accept the Bayview Defendants' assertion that they were aware of the transactions, but yet unaware of the existence

of the documents reflecting such transactions, particularly because the Bayview Defendants were parties to the re-securitizations. Wachovia, U.S. Bank, Bayview Asset Management, Corp. f/k/a Bayview Financial Trading Group, L.P., and BLS were all involved, at different times, in the re-securitizations of the Lodge mortgage and signatories to the documents effecting such transactions. Even if the court were to believe that the Bayview Defendants were aware of the re-securitizations but not of the documents relating to such transactions, "[a] party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(D). The court finds, based on the available record, that the Bayview Defendants were, at best, grossly negligent in their failure to provide plaintiff with the documents relating to the re-securitization of the Lodge mortgage.

With respect to the third prong of the *September 11th Cases* test, the relevance of the documents, the court does not find acceptable or convincing the Bayview Defendants' argument that they were "unaware" of the importance of the re-securitization documents to the plaintiff's claims or their defenses. Plaintiff specified in her complaint that Wachovia was named as a party because, as the trustee of the trust that held the Lodge mortgage, it was a necessary party under Rule 19. (*See* Compl. ¶ 13.) The court cannot accept that the Bayview

Defendants competently and credibly believed that the subsequent securitizations, which altered the identity of the Rule 19 necessary parties, were not relevant to the case.  In addition, the securitization documents are essential to the Bayview Defendants' holder-in-due-course defense.  Evidence establishing the chain of title and the current ownership of the Lodge mortgage is central to asserting such defense.  The re-securitization documents, therefore, are more than merely probative; the documents are vital to the Bayview Defendants' holder in due course status, if any, and are thus relevant within the meaning of both Rules 26 and 37.

Accordingly, plaintiff has satisfied her burden of showing that the Bayview Defendants failed, for over five years, without justification, to comply with their obligations to produce documents required by Rule 26(a) and (e), that the breach of these discovery obligations was at best grossly negligent, and that the documents are relevant.  Imposition of Rule 37 sanctions, therefore, is warranted.

The court must next determine the appropriate sanction to impose.  As outlined above, the court must first consider (1) the Bayview Defendants' explanation of their failure to comply with their discovery obligations under Rule 26(a) and (e), (2) the importance of the re-securitization documents, (3) the prejudice suffered by plaintiff, and (4) the possibility

of continuing the trial. *See Design Strategy*, 469 F.3d at 294-95; *Patterson*, 440 F.3d at 117.

The first two factors for the court to consider have been discussed above. Other than claiming that they were "unaware" of the evidence, the Bayview Defendants' have provided no reasonable explanation or justification for their failure to provide plaintiff with the re-securitization documents. This first factor weighs in favor of imposing a significant sanction. The second factor, the importance of the evidence to plaintiff's claims and the Bayview Defendants' holder-in-due-course defense, however, weighs against a dispositive sanction, such as striking the defense or entering default judgment, and against the sanction of preclusion. Because the Bayview Defendants assert that U.S. Bank is a holder in due course of the Lodge mortgage, either in its own right or under the shelter rule, striking the defense or entering a default would preclude a trial on the merits on this defense. Moreover, a partial preclusion will affect the scope of the evidence relating to the chain of title and current ownership of the Lodge mortgage. As discussed herein, however, the other three factors, all weighing in favor of significant sanctions, far outweigh this second factor. The third factor, the prejudice suffered by plaintiff as a result of the Bayview Defendants' misconduct, further weighs in favor of imposing a significant sanction. Plaintiff was severely

prejudiced by the Bayview Defendants' protracted and inexcusable disclosure and discovery violations by incurring unnecessary costs and fees in defending against the Bayview Defendants' two motions (one motion to dismiss and/or for summary judgment and one motion for summary judgment), both of which were predicated on inaccurate and misleading declarations and statements and on incomplete documentation in support of their holder-in-due-course defense, pursuing discovery on this issue, and litigating the instant motion. In addition, plaintiff has been prejudiced by having to prepare for trial, in only a few months, to meet the belatedly produced chain of title evidence at trial. Finally, "weighing heavily on both the prejudice and possibility of continuance factors [is] the fact that discovery ha[s] been closed for" several years, and that "there was only a short time left before trial" at the time the belated disclosures were made by the Bayview Defendants. *Design Strategy*, 469 F.3d at 294 (internal quotation marks omitted).

Upon consideration of these factors, however, the court cannot find that a sanctions order striking part of the Bayview Defendants' pleadings, i.e. the holder-in-due-course defense, is warranted here. Striking a defense, while not at the level of an order entering default judgment against a party or dismissing a case, is still an extreme sanction. As was noted above, such extreme sanctions should only be imposed when

lesser sanctions would be ineffective. *See, e.g.*, *Ocello*, 347 F. App'x at 641. In *Ocello*, for example, the Second Circuit reversed a district court decision striking an answer in a case in which the offending parties failed to disclose a witness, even after repeated requests by the parties and court orders, finding that lesser sanctions than dismissal were adequate to address the prejudice suffered as a consequence of the misconduct and to deter future violations. *Id.* at 641-43

Instead of granting the plaintiff's motion to strike the holder-in-due-course defense, the court will exercise its discretion to impose lesser sanctions: (1) as authorized by Rule 37(c)(1)(A), costs and fees; and (2) as authorized by Rule 37(c)(1), preclusion of evidence. The monetary sanction is necessary to address, in part, the prejudice suffered by plaintiff, i.e., the costs and fees incurred in the discovery relating to the securitization documents, defending against the two motions by the Bayview Defendants on the holder-in-due-course defense, and litigating the instant motion to strike the defense. Further, the preclusion sanctions is authorized by Rule 37(c)(1) and necessary to deter future violations on the part of the Bayview Defendants. *See September 11th Cases*, 243 F.R.D. at 131-32 (noting that Rule 37 sanctions should "deter future misconduct"). The offending conduct on the part of the Bayview Defendants has spanned over five years. This is not,

moreover, the first and only disclosure and discovery breach on the part of the Bayview Defendants in this case. The Bayview Defendants failed to disclose relevant documents relating to the appraisal of the properties at issue, and court intervention was also required in that instance to enforce compliance with their discovery obligations. (*See generally* 2/11/11 Tr. (discovery conference discussing history of discovery violation by Bayview Defendants with respect to appraisal documents and ordering production of such documents).)

Further, not only did the Bayview Defendants fail to supplement their initial disclosures and discovery responses, as was clearly required by Rule 26, but they repeatedly made false and misleading statements to plaintiff and to the court. The Bayview Defendants represented on numerous occasions that Wachovia was the holder of the Lodge mortgage, even though such information was untrue. Moreover, even after repeated explicit requests by plaintiff for documents relating to the re-securitization of the mortgage, the Bayview Defendants continued to withhold documents and falsely represent to plaintiff and to the court that either Wachovia, or U.S. Bank and Trust, a fictitious entity, as successor to Wachovia, were holders of the Lodge mortgage. The Bayview Defendants' repeated and egregious disregard for their continuing disclosure and discovery obligations, the multiple instances of misrepresentation and

misconduct, and the duration of the offending conduct warrant the sanction of preclusion in this case.[3]

Consequently, the Bayview Defendants shall compensate plaintiff for the costs and fees incurred in pursuing discovery relating to the ownership of the Lodge mortgage, in defending against the Bayview Defendants' two motions (one motion to dismiss and/or for summary judgment and one motion for summary judgment) on their holder-in-due-course defense, and in making the instant motion to strike the holder-in-due-course defense. Further, the Bayview Defendants are precluded from introducing at trial any document produced on or after January 13, 2011 and any testimony relating to the documents produced on or after January 13, 2011.

---

[3] The court notes that misrepresentations to the court, had they been known at the time, could have been addressed through Rule 11 sanctions to an attorney and a party. Rule 11 provides that "[b]y presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney . . . certifies that to the best of the [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support . . . ." Fed. R. Civ. P. 11(b)(3). Rule 11(c) further provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation." Fed. R. Civ. P. 11(c). In this case, however, Rule 11 sanctions are neither appropriate nor adequate. First, the evidence available to the court indicates that the Bayview Defendants, and not their counsel, are responsible for the discovery violations and, as a result, the misrepresentations made to the court. Sanctioning their attorney would not be sufficient to deter future violations by the Bayview Defendants. Further, Rule 11 allows a party to remedy the misrepresentations before imposing sanctions. In this case, correcting the misrepresentations would not cure the prejudice already suffered by plaintiff. Therefore, the court finds that Rule 37 sanctions are more appropriate to address the misconduct in this case.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to strike the Bayview Defendants' holder-in-due-course defense is denied. The court orders that: (1) upon presentation by plaintiff's counsel of contemporaneous time records and documentation of costs, the Bayview Defendants shall compensate plaintiff for the costs and fees incurred in pursuing the discovery relating to the ownership of the Lodge mortgage, responding to the Bayview Defendants' two motions (one motion to dismiss and/or for summary judgment and one motion for summary judgment) on their holder-in-due-course defense, and in making the instant motion to strike the holder-in-due-course defense, and (2) the Bayview Defendants are precluded from presenting at trial any documents produced on or after January 13, 2011, or any testimony relating to documents produced on or after January 13, 2011.

**SO ORDERED.**

Dated:     May 5, 2011
           Brooklyn, New York

                                    /s/
                          _____
                          **KIYO A. MATSUMOTO**
                          United States District Judge
                          Eastern District of New York