UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

MARY LODGE,                                          Civil Action No. CV-05-0187
                                                                        (KAM)
                    Plaintiff,

            against

UNITED HOMES, LLC, UNITED PROPERTY
GROUP, LLC, YARON HERSHCO, GALIT
NETWORK, LLC, OLYMPIA MORTGAGE
CORP., BAYVIEW LOAN SERVICING, LLC,
BAYVIEW ASSET MANAGEMENT, LLC,
U.S. BANK, N.A. AS TRUSTEE FOR BAYVIEW
ASSET-BACKED SECURITIES TRUST SERIES
2007-30, and BAYVIEW FINANCIAL
MANAGEMENT CORP.,

                    Defendants.

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE AND OTHER RELIEF

ROSENBERG & ESTIS, P.C.
Attorneys for Defendants BAYVIEW LOAN
SERVICING, LLC, BAYVIEW ASSET
MANAGEMENT, LLC, U.S. BANK, N.A. AS
TRUSTEE FOR BAYVIEW ASSET-BACKED
SECURITIES TRUST SERIES 2007-30 ("U.S.
Bank"), and BAYVIEW FINANCIAL
MANAGEMENT CORP
733 3rd Avenue
New York, New York  10017
Tel.:  (212) 867-6000

## TABLE OF CONTENTS

                                                                           Page

Argument                                                                     1

Based upon the Jury's finding of Fraud in the Inducement,
The Mortgage is Voidable, not Void.                                          2

Plaintiff is not entitled to an Order Voiding and "Cancelling"
The Mortgage.                                                                3

Plaintiff is not Entitled to Rescission                                      6

    A.  The Status Quo Cannot be Restored                 8

    B.  Plaintiff is Bound by Her Election to Pursue Monetary
       Damages and the Award of Monetary Damages is
       Not Incomplete or Inadequate                   9

    C.  Plaintiff is not Entitled to Rescission because She
       Unreasonably Delayed in Commencing the Action  9

    D.  Lodge is Estopped from Seeking to Void and
       Cancel the First Mortgage                     11

Plaintiff is Not Entitled to an Injunction Enjoining Enforcement
Of the Mortgage                                                             15

Conclusion                                                                  15

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MARY LODGE,                                           Civil Action No. CV-05-0187
                                                                    (KAM)
                              Plaintiff,

                against

UNITED HOMES, LLC, UNITED PROPERTY
GROUP, LLC, YARON HERSHCO, GALIT
NETWORK, LLC, OLYMPIA MORTGAGE
CORP., BAYVIEW LOAN SERVICING, LLC,
BAYVIEW ASSET MANAGEMENT, LLC,
U.S. BANK, N.A. AS TRUSTEE FOR BAYVIEW
ASSET-BACKED SECURITIES TRUST SERIES
2007-30, and BAYVIEW FINANCIAL
MANAGEMENT CORP.,

                              Defendants.

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR INJUNCTIVE AND OTHER RELIEF

The defendants, BAYVIEW LOAN SERVICING, LLC, BAYVIEW ASSET

MANAGEMENT, LLC, U.S. BANK, N.A. AS TRUSTEE FOR BAYVIEW ASSET-BACKED

SECURITIES TRUST SERIES 2007-30 ("U.S. Bank"), and BAYVIEW FINANCIAL

MANAGEMENT CORP. (collectively, the "Bayview Defendants"), submit this Memorandum

of Law in Opposition to the Motion of Plaintiff Mary Lodge ("Plaintiff" or "Lodge") which

seeks an order of this Court granting equitable relief in the form of a declaration that the

mortgage held by U.S. Bank is void.

## ARGUMENT

Plaintiff argues that the Court should invoke its equitable powers to grant her the relief

she requests since agreements procured by fraud in the inducement are voidable. According to

Plaintiff, since the jury made a finding of fraud, and awarded her monetary damages to

compensate her for that fraud, the Court should invoke its equitable powers to "cancel" the mortgage and allow her to retain ownership of the home she purchased utilizing the proceeds of the mortgage. As set forth below, the relief requested by Plaintiff is unavailable to her because, among other reasons, she was awarded monetary damages, she fails to demonstrate that she lacks a complete and adequate remedy at law, and the pre-contract status quo cannot be substantially restored. The relief requested by Plaintiff, if granted, would result in a great miscarriage of justice since it would be inequitable to allow Plaintiff to, in addition to collecting monetary damages, avoid the obligation created by the contract she seeks to cancel, while at the same time allowing her to retain the benefits derived from that contract.

In support of her motion, Plaintiff argues that: (1) agreements procured by fraud are voidable; and that (2) a mortgage may be set aside, voided and cancelled by the Court when fraud or misrepresentation in the procurement of the mortgage are successfully proven by the borrower. Although Plaintiff cites several cases for the proposition that it is well settled in New York that a mortgage may be canceled where there has been fraud in the procurement in the mortgage, not one of those cases involves facts even remotely close to those presented in this case. It is submitted that Plaintiff fails to take into consideration all of the applicable factors and that her analysis of whether or not the Court may grant her motion is flawed.

## BASED UPON THE JURY'S FINDING OF FRAUD IN THE INDUCEMENT, THE MORTGAGE IS VOIDABLE, NOT VOID

Plaintiff's argument in support of the "cancellation" of the mortgage is defective from the outset since she fails to recognize the difference in the legal consequences of a contract that is "void" and one that is "voidable." A void contract or transaction is defined as one that is wholly ineffective, inoperative, and incapable of ratification and which thus has no force or effect so that nothing can cure it. *BLACK'S LAW DICTIONARY* (9th ed. 2009). On the other hand, a voidable

2

contract or transaction is one that can be avoided (cancelled) by one party because a right of

rescission exists as a result of some defect or illegality. *Id.* Indeed, Oliver Wendell Holmes, in

*The Common Law,* recognized that voidable contracts are those that could be "unmade at the

election of one party…because of the breach of some condition attached to [the contract's]

existence." O.W. HOLMES, THE COMMON LAW 315 (Little Brown, and Company 1881).

Holmes further described a condition as an event, the happening of which authorizes the person

in whose favor the condition is reserved to avoid the contract and insist that both parties be

restored to the positions in which they stood before the contract was made. *Id.* at 318.

     A contract that was fraudulently induced is voidable, and therefore gives rise to the

defrauded party's right to request rescission. *Adams v. Gillig*, 199 N.Y. 314 (1910). The logical

consequence of a voidable contract is that it vests the defrauded party with the right to make a

choice between keeping the fruits of the fraudulently induced contract and suing for damages, or

seeking a cancellation/rescission with the concurrent obligation to do its part to make restitution

to the other party to the contract. If the defrauded party to a voidable contract did not have to

make such restitution, the law would not make a distinction between void and voidable contracts

and voidable contracts would not be voidable at the party's option because the defrauded party

would always choose to cancel the contract if such choice meant not having to part with anything

it received as part of the transaction.

### PLAINTIFF IS NOT ENTITLED TO AN ORDER VOIDING AND "CANCELLING" THE MORTGAGE

     Although Plaintiff styles her motion as one seeking an order "cancelling" or "voiding"

the mortgage, there simply is no such relief in the form she requests. Essentially, Plaintiff asks

the Court to undue only one part of the purchase and financing transaction, such that she will

receive the money damages awarded her, retain ownership of the Premises, and be relieved of

3

her re-payment obligation under the mortgage. Tellingly, while Plaintiff cites several cases for
the proposition that where fraud in the procurement of a mortgage is successfully proven by a
borrower, a mortgage may be set aside, voided and cancelled by the Court, not one of the cited
cases involves facts even remotely similar to those presented here, or holds that a defrauded
party to a contract may obtain an order cancelling the contract without providing any sort of
restitution to the other party to the contract.

In *Kline v. Pane,* 1 N.Y.2d 15, 150 N.Y.S.2d 10 (1956), the defrauded party sought
rescission which, as discussed below, necessarily involves a restoration of the parties to the pre-
contract status quo. In *Berlin v. Dassell,* 55 A.D.2d 611, 389 N.Y.S.2d 131 (2d Dep't 1976), the
Dassells became the victims of a foreclosure rescue scheme wherein they sold their house to a
third party who stated that he would lease the house back to them and collect monthly rent until
such time that they were ready to buy the house back. The Dassels transferred title to a Mr.
Berlin who took out a mortgage against the property. Eventually Mr. Berlin transferred title to
the Dassels, but took back a second mortgage from them so that the property was no encumbered
by two mortgages, the latter of which the Dassels gained absolutely no benefit from since they
received no proceeds. The court deemed only the second mortgage null and void. In *Berlin,* the
parties were restored to their pre-second mortgage positions since the Dassels did not receive any
mortgage proceeds in connection with the second mortgage, nor did Berlin part with any such
proceeds.

Plaintiff's reliance on *Lapis Enters., Inc. v. Int'l Blimpie Corp.,* 84 A.D.2d 286, 445
N.Y.S.2d 574 (2 Dep't 1981) also does little to support her argument that the mortgage should be
cancelled and/or voided and that she would retain ownership of the Premises without making any
sort of restitution. In *Lapis,* the Court states in dicta that "[i]t is well settled in New York that a

4

mortgage may be canceled where there has been fraud…in the procurement of the mortgage,"
but then went on to affirm the lower court's order dismissing the complaint as against the holder
of the mortgage the borrower's alleged had been procured by fraud. Thus, the court did not even
reach the question of whether the mortgage should be cancelled or on what terms.

In *Tshering v. Fairfield Fin. Mortg. Group, Inc.,* 2010 U.S. Dist. LEXIS 16099
(E.D.N.Y. Feb. 1, 2010), this Court granted the plaintiff's motion for a default judgment and
determined that a defaulting defendant is deemed to have admitted all of the well pleaded
allegations in a complaint and, as a result, found that the mortgage at issue had been procured by
fraud. Although the plaintiff in *Tshering* sought both equitable relief and monetary damages in
its complaint, shortly before the Court determined the motion for default judgment, the plaintiff's
counsel wrote to the Court and requested that the Court decide only the "rescission/voiding"
issue, while holding the plaintiff's claims for monetary damages in abeyance. *See Tshering,
supra; also at EDNY Case No. 08 CV 2777, Dkt. No. 13.* The only feasible explanation for this
request is that plaintiff's counsel sought to avoid electing the less lucrative of his client's two
remedies. In the present case, Plaintiff elected her monetary damages over any equitable relief.

Finally, *Watson v. Melnikoff*, 19 Misc.3d 1130(A), 866N.Y.S.2d 96 (Sup. Ct. Kings
County, May 6, 2008), the last case relied on by Plaintiff to support her request that the mortgage
be cancelled, involves facts that are so dissimilar to those presented here, that the case is
inapposite. In *Watson,* the plaintiff fell victim to a foreclosure rescue scheme and transferred
title to Melnikoff who encumbered the property with a mortgage, the proceeds of which were
used to payoff the plaintiff's mortgage which was in default. Thereafter, after the plaintiff had
commenced his action and filed a notice of pendency against the property, Melnikoff applied for
and was granted a second mortgage by Citibank. The court deemed the Citibank mortgage void

since Citibank provided no benefit to the plaintiff and actually made its loan to Melnikoff after the Notice of Pendency was filed against the property.

Despite claiming that the circumstances presented by this case are the "very circumstances in which courts applying New York law have declared mortgages to be void and enforceable," Plaintiff fails to cite even one case in which any court, presented with facts similar those presented here, cancelled and voided a mortgage without ordering any sort of restitution. Simply stated, since Plaintiff has had the benefit of the mortgage proceeds, and she had made no offer of restitution, it would be inequitable for the Court to order cancellation of the mortgage. *Hardy v. Berger,* 76 A.D. 393, 78 N.Y.S. 709 (2d Dep't 1902). Indeed, there is no legal basis upon which to do so.

## PLAINTIFF IS NOT ENTITLED TO RESCISSION

Although labeled a motion to "cancel" or "void" the mortgage, Plaintiff's request for relief is really nothing more than a request for rescission since a voidable contract is valid until disaffirmed by the defrauded party. A defrauded party may elect to either disaffirm the contract by prompt rescission, or to stand on the contract and thereafter maintain an action at law for damages attributable to the fraud. *Big Apple Car, Inc. v. City of New York,* 204 A.D.2d 109, 611 N.Y.S.2d 533 (1st Dep't 1994). Since the mortgage is voidable, and not void, the only way that the Plaintiff may obtain a "cancellation" or "voiding" of the mortgage is vis-à-vis rescission, "an extraordinary remedy" rooted in equity. *C3 Media & Marketing Group, LLC v. Firstgate Internet, Inc.*, 419 F.Supp.2d 419, 435 (S.D.N.Y. 2005) (*citing Krumme v. Westpoint Stevens, Inc.*, 238 F.3d 133, 1433 (2d Cir. 2000). Rescission is an equitable remedy "to be invoked only when there is lacking [a] complete and adequate remedy at law and where the status quo may be substantially restored[.]" *Rudman v. Cowles Commc'ns,* 30 N.Y.2d 1, 330 N.Y.S.2d 33 (1972).

6

"At common law and equity, rescission entails the undoing of the original transaction and restitution involves the restoration of each party to his precontract position." *Randall v. Loftsgaarden,* 478 U.S. 647, 671, 106 S.Ct. 3143 (1986) (Brennan, J., dissenting). When a plaintiff seeks the equitable remedy of rescission, complete relief is awarded to the defendant as well as to the plaintiff. *Vitale v. Coyne Realty, Inc.,* 66 A.D.2d 562, 564, 414 N.Y.S.2d 388 (4th Dep't 1979). "He who seeks equity must do equity…" Holdeen v. Rinaldo, 28 A.D.2d 947, 949, 281 N.Y.S.2d 657 (3d Dep't 1967). "Rescission is not appropriate where, as here, the status quo cannot be "substantially restored." *Singh v. Carrington*, 18 A.D.3d 855, 796 N.Y.S.2d 668 (2d Dept 2005) (*citing Rudman v. Coweles Communications*, 30 N.Y.2d 1, 14 (1972). Whenever the court rescinds a contract, it has a duty to place the parties where they were before the contract was made. *Vitale*, 66 A.D.2d at 563.

Moreover, while Plaintiff may seek both monetary damages and rescission in a single action, she must eventually elect her remedy. *Ajettix Inc. v. Raub*, 9 Misc.3d 908, 919, 804 N.Y.S.2d 580 (Sup. Ct. Monroe County 2005) (deeming plaintiff's motion for summary judgment on rescission an implied election of remedies by plaintiff despite the fact that plaintiff had requested both damages for fraud and rescission in its complaint); *see also Navigant Consulting, Inc. v. Kostakis,* No. CV-07-2302 (CPS)(JMA), 2007 WL 2907330, at *4 n. 9 (E.D.N.Y. Oct. 4, 2007).

Plaintiff fails to address any of the foregoing issues in her motion. As the facts show, rescission is not an available remedy in this case because the status quo cannot be restored, and Plaintiff chose her remedy and has not claimed that such remedy is incomplete and inadequate.

A.     **The Status Quo Cannot be Restored**.

As stated above, Plaintiff fails to even mention rescission in her moving papers, and therefore certainly fails to show how the status quo can be restored. Plaintiff's omission is telling, but not at all surprising since the status quo cannot be restored. Plaintiff seeks to rescind only part of the "fraudulent" transaction. While she claims both her purchase and her mortgage transactions were tainted by fraud, she only wishes to "cancel" the mortgage transaction, while affirming the purchase of the Premises. Since Plaintiff already received from Olympia the proceeds of the mortgage she wishes to cancel and paid them to United Homes in exchange for a deed to the Premises, and the Bayview Defendants paid to Olympia the funds to purchase the mortgage (*Plaintiff's Trial Ex. 518)*, there is simply no way that the mortgage transaction may be undone and the parties restored to their original positions.

Instead, if the mortgage is rescinded, Plaintiff gains a tremendous windfall at the expense of the Bayview Defendants (the only defendants not involved in the original transaction) since she retains the house, receives her monetary damages, the settlement funds from the settling defendants, and cancellation of all mortgage liens against the Premises.[1]  On the other hand, the Bayview Defendants lose their mortgage lien, but do not receive re-payment of any of the funds they expended to purchase the mortgage. This result would be severely inequitable and contrary to law since it would put the Plaintiff in a better position than one she was in before the transaction.

---

[1] The second mortgage which Plaintiff executed in connection with her purchase of the Premises was released by a settling defendant and a Satisfaction of Mortgage issued on April 29, 2009 and recorded in the New York City Register's Office in and for Kings County on May 27, 2009 as Document ID 2009051800882001.

8

**B.     Plaintiff Is Bound by Her Election to Pursue Monetary Damages and The Award of Monetary Damages Is Not Incomplete or Inadequate.**

At trial, Plaintiff sought and recovered monetary damages for fraud and conspiracy to commit fraud. Plaintiff presented to the jury a demonstrative exhibit showing that her monetary damage demand of $474,974 was comprised of: (1) damages due to the overappraisal of the property in the amount of $184,000; (2) damages related to financing in the amount of $209,149; and (3) damages due to the poor condition of the home in the amount of $81,855.00. *Pl. Ex.* 2145. After hearing all of the evidence, the jury awarded to Plaintiff a monetary damage award that was less than the total amount she sought, despite having been provided with a detailed breakdown of the amounts Plaintiff believed would fully compensate her. This Court should not substitute its judgment for the judgment of the jury and award an equitable remedy that would have the result of placing Plaintiff in a better position than she would have been in had the transaction not happened, especially at the expense of an innocent party. Indeed, CPLR 3004 specifically states that unjust enrichment should be avoided when the equities are adjusted between the parties. *N.Y.C.P.L.R. 3004* (McKinney 2010).

Moreover, while CPLR 3002(e) states that a plaintiff's claim for damages sustained as a result of fraud in the inducement shall not be deemed inconsistent with a claim for rescission, but that the relief award shall not include duplication of items of recovery. *N.Y.C.P.L.R. 3002(e)* (McKinney 2010).

**C.     Plaintiff Is Not Entitled to Rescission Because She Unreasonably Delayed in Commencing This Action.**

"An action for rescission must be initiated without unreasonable delay unless the delay is caused by the party against whom rescission is sought." *Allen v. Westpoint-Pepperell, Inc.*, 945 F.2d 40 (2d. Cir. 1991) (*citations omitted*). "A party who wishes to repudiate a contract is

9

required to act promptly." *Palumbo v. Norstar Bank Upstate N.Y.*, 212 A.d.2d 377, 622

N.Y.S.2d 263 (*citing Bank Leumi Trust Co. v. D'Evori Intl.*, 163 A.D.2d 26, 30-31). In

*Palumbo*, the plaintiff, like the Plaintiff here, waited years before attempting to repudiate an

agreement. The court in Palumbo found that since the contract had been fully performed, and

plaintiff had accepted its benefits, the plaintiff must be deemed to have ratified the contract. *Id.*

at 378. Here, Plaintiff's delay in seeking to void her mortgage is inexcusable and, in fact, played

a part in the Bayview Defendants' decision to purchase the note and mortgage from Olympia.

Instead of commencing her lawsuit upon discovering the fraud, Plaintiff made mortgage

payments for 22 months. Thus, at the time the Bayview Defendants purchased the note and

mortgage, the loan was a performing loan. Plaintiff herself testified at trial that she stopped

making payments when she ran out of money, that she never contacted the Bayview Defendants

to inquire about modifying her loan when her rental stream was decreased, and that she

discovered that her second mortgage involved an unaffordable balloon note when she arrived

home after the closing. *Trial Trans. Vol. IV, p. 71-73.* In addition, Plaintiff also testified that she

discovered problems with the property shortly after she purchased it, and that she had a United

Homes' contractor come to her property to fix some of the problems shortly after the closing.

*Trial Trans. Vol. IV, p. 54-55.* Having testified that she had concrete knowledge of the facts

constituting her fraud claim shortly after the closing, Plaintiff cannot now claim that her delay in

commencing this action was reasonable.

A party's delay in attempting to rescind an allegedly fraudulent contract may bar

rescission since such delay may be interpreted as acquiescence. 16 N.Y. Jur. 2d Cancellation of

Instruments §37 (2011). Laches may prevent a party seeking to cancel or rescind an instrument

from securing relief where there is a long delay in the plaintiff's assertion of his rights, even

10

though the delay is short of the applicable limitations period if the delay disadvantages the defendant. 16 N.Y. Jur. 2d Cancellation of Instruments §41 (2011).

**D.      Lodge is Estopped from Seeking to Void and Cancel the First Mortgage.**

There were no allegations of wrongdoing pleaded against the Bayview Defendants. In fact, there were no findings made by the jury against any of the Bayview Defendants affecting the mortgage currently held by U.S. Bank. However, in light of the jury's verdict rendered against the other defendants, Lodge seeks to have enforcement of the mortgage by U.S. Bank enjoined and the mortgage itself voided and cancelled of record.

As already shown, the relief requested by Lodge is unavailing as a matter of law. Additionally, the equitable relief which Lodge seeks is equally unavailing by virtue of the equitable defenses of estoppel and ratification, which were pleaded by the Bayview Defendants in their Answer. *Dkt. No. 570.*

It has long been held that when a mortgagor executes and delivers a declaration that no claims or defenses lie against the mortgage, the mortgagor is stopped from interposing any defense against the mortgage. *Hammelburger v. The Foursome Inn Corp.,* 76 A.D.2d 646, 649, 437 N.Y.S.2d 356, 358 (2d Dep't 1980). Although an assignee of a mortgage takes subject to any defense that would have prevailed against the assignor, the rule is different when the mortgagor executes an estoppel certificate, or with notice of his rights and of the facts does what amounts to a recognition or adoption of the transaction although it was originally voidable. *Hammelburger v. Fousome Inn Corp.,* 54 N.Y.2d 580, 586-587, 446 N.Y.S.2d 917, 921 (1981). The assignee's right of recovery does not depend upon the title or interest of his assignor, but upon the mortgagor's representation by his certificate or by his conduct that the mortgage is valid and existing. *Id.*

The basis for this rule is that the mortgagor would, if allowed to urge the defense, obtain an unconscientious advantage at the expense of an innocent person, *i.e.,* U.S. Bank, which was not involved in the origination or closing of the mortgage. Estoppel does not render the mortgage valid but prevents one who has represented it to be valid from asserting that it is void, to the injury of those who have acted in reliance upon the representation. *Id.*

Clearly, the documents executed by Lodge in connection with the mortgage and her conduct relating to the mortgage operate as an estoppel against enjoining enforcement of the mortgage and voiding and cancelling the mortgage.

Lodge is not an inexperienced homebuyer. In fact, she was experienced in obtaining mortgage financing for not only the Property in issue but the property she owned previously, *i.e.,* Decatur Street. *Trial Trans. Vol. III, p. 79.*

Lodge was present during the inspection of the Property, and she herself noted conditions at the Property which needed to be repaired. *Trial Trans. Vol. IV, p. 54.* Further, Lodge herself questioned that the price of the Property was $419,000 and at the closing, questioned why the financing for the purchase of the Property was covered by two (2) mortgages. In fact, she stopped the closing to consider her options. *Trial Trans. Vol. III, p. 52-53; Vol. IV, p. 67-68.* After "sitting there for a while," Lodge decided to continue with the closing and she started reading and signing the documents. *Trial Trans. Vol. III, p. 52-53.* Lodge thus voluntarily completed the closing for the purchase of the Property and no one from the United Homes Defendants or Olympia forced her to do so. *Trial Trans. Vol. IV, p. 68-69.* Lodge made the decision herself to close. *Trial Trans. Vol. IV, p. 69.*

At the closing, during which she was represented by an attorney, Lodge executed an Estoppel Certificate in connection with the first Mortgage. *Plaintiff's Trial Ex. 473 page 114.*

Lodge acknowledged that she signed the Estoppel Certificate and identified her signature on the document. *Trial Trans. Vol. IV, p. 69.* The Estoppel Certificate clearly states that there are no defenses, offsets or counterclaims to the note or the mortgage.

After the closing, Lodge made payments on the mortgage for twenty two (22) months through December 2004. Lodge stopped making payments pursuant to the mortgage beginning in January 2005, the same month this action was commenced. *Trial Trans. Vol. IV, p. 71.* Lodge stated that the reason she stopped making payments on the first mortgage was because her rental income from tenants was reduced and she, without explanation, spent almost $290,000 in the span of two (2) years. Payments were not stopped due to any of the allegations raised in the Lodge complaint. *Trial Trans. Vol. IV, p. 71-73.*

Clearly, based upon the Estoppel Certificate executed by Lodge in addition to Lodge's conduct ratifying the mortgage, Lodge is estopped from seeking to enjoin enforcement of the mortgage and obtain an order cancelling and voiding the mortgage. It is clear from the face of the Estoppel Certificate that Lodge cannot interpose any claim or defense against enforcement of the mortgage pursuant to the unambiguous rule enunciated by the New York State Court of Appeals in *Hammelburger v. Foursome Inn Corp.,* 54 N.Y.2d 580, 446 N.Y.S.2d 917 (1981).

Moreover, Lodge's own conduct dictates against granting the relief she demands. As the court stated in *Hammelburger,* if a mortgagor represents by his conduct that a mortgage is valid and existing, the assignee has a right to enforce a mortgage. *Hammelburger,* 54, N.Y.2d at 587, 446 N.Y.S.2d at 921. Clearly, Lodge's conduct by making monthly payments pursuant to the mortgage for twenty two (22) months is representative of her belief that the mortgage was valid.

Additionally, Lodge derived benefits from home-ownership by collecting rent payments. Lodge should not be permitted to attack the mortgage which she complied with and derived the

13

benefits from for two (2) years when Lodge knew of the Property condition and made a conscious decision herself to close the transaction. *Savran v. Chiang,* 234 A.D.2d 54, 650 N.Y.S.2d 203 (1st Dept. 1996). Lodge has lived "rent free" at the Property for more than six (6) years.

Further, Lodge has not made her interim real estate tax payment nor her water/sewer charge payments to the New York City Department of Finance. By Order dated April 6, 2011, Lodge was to make interim real estate tax payments to the Bayview Defendants. *Dkt. 574.* Additionally, pursuant to the aforementioned order, Lodge was to pay water and sewer charges due on the property and forward proof of payment directly to the Bayview Defendants. To date, the June interim real estate tax payment has not been paid in violation of the order. Too, pursuant to information gathered from the City of New York, water and sewer charges remain open on the property and late charges have accrued. Failure to pay these charges could result in the sale of a lien on the property pursuant to the New York City Administrative Code. Thus, although Lodge wants the benefits of home ownership, she does not comply with her obligations to pay taxes or water/sewer charges. This fact should not be ignored.

Lodge has admitted that she has never asked for the Property without paying for it. *Trial Trans. Vol. IV, p. 50; 70.*

It is submitted that there is no clearer example of a mortgagor deeming a mortgage obligation a be valid and enforceable obligation than here, where Plaintiff made payments for two (2) years, especially when she made an independent determination to proceed with the transaction having witnessed the Property inspection, knowing the condition of the Property and weighing her options at the closing and deciding to proceed. Having acted in this manner, Lodge should not be permitted to assert the mortgage is void.

14

RE\08857\0001\449936v3

## PLAINTIFF IS NOT ENTITLED TO AN INJUNCTION ENJOINING ENFORCEMENT OF THE MORTGAGE

Although the notice of this motion served by Plaintiff references that Plaintiff seeks an order granting her an injunction permanently enjoining enforcement of the mortgage, the memorandum of law submitted in support makes absolutely no mention of an injunction, does not cite any case law, and does not make any argument in support of the required criteria for an injunction. Thus, Plaintiff has waived such request having not addressed it at all within her motion.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the Plaintiff's motion for an order cancelling and voiding the mortgage and for an order enjoining enforcement of the mortgage (which was not addressed in the motion) be denied in its entirety.

Dated:   New York, New York
         June 24, 2011

Respectfully submitted,

ROSENBERG & ESTIS, P.C.
Attorneys for Defendants BAYVIEW LOAN
SERVICING, LLC, BAYVIEW ASSET
MANAGEMENT, LLC, U.S. BANK, N.A. AS
TRUSTEE FOR BAYVIEW ASSET-BACKED
SECURITIES TRUST SERIES 2007-30 ("U.S.
Bank"), and BAYVIEW FINANCIAL
MANAGEMENT CORP

By:   _/s/ Timothy J. Fierst_
      Timothy J. Fierst
733 3rd Avenue
New York, New York  10017
Tel.:  (212) 867-6000
_tfierst@rosenbergestis.com_

15