**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
**MARY LODGE,**

                        **Plaintiff,**                    **REPORT AND
                                                                    RECOMMENDATION**

                        **-against-**                      **05-CV-187 (KAM)**

**UNITED HOMES, LLC, et al.,**

                        **Defendants.**
-----------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before this Court is a motion by plaintiff Mary Lodge ("plaintiff") to recover attorney's fees and costs against defendants Bayview Loan Servicing, LLC; Bayview Asset Management, LLC; U.S. Bank, N.A., as Trustee for Bayview Asset-Backed Securities Trust Series 2007-30 ("U.S. Bank"); Bayview Financial, L.P.; and Bayview Financial Management Corp. (collectively, the "Bayview Defendants"). The fees and costs relate to discovery sanctions that the Honorable Kiyo A. Matsumoto imposed on the Bayview Defendants for failing to disclose information and documents vital to their defense in the instant action, as well as for making false and misleading statements to plaintiff and the Court. See Memorandum & Order (May 5, 2011) ("5/5/11 M&O") at 38-39, Electronic Case Filing Docket Entry ("D.E.") #585.

      On July 29, 2011, Judge Matsumoto referred plaintiff's motion for calculation of fees and costs to the undersigned magistrate. See Order (July 29, 2011). For the reasons set forth below, the Court recommends granting in part and denying in part plaintiff's requested relief.

**BACKGROUND**

The May 5, 2011 Memorandum and Order by Judge Matsumoto sets forth in detail the basis for awarding sanctions against the Bayview Defendants. See generally 5/5/11 M&O. Familiarity with the facts recounted in that opinion are assumed for purposes of this Report and Recommendation, and are summarized below.

In 2005, plaintiff commenced this litigation, alleging that she was the victim of a certain property-flipping scheme.[1] See Complaint (Jan. 13, 2005), D.E. #1. The Bayview Defendants were brought in as necessary parties pursuant to Rule 19 of the Federal Rules of Civil Procedure ("FRCP"). See 5/5/11 M&O at 4, 10, 13. In essence, over the course of five years, the Bayview Defendants repeatedly took the position that Wachovia Bank, N.A., and later U.S. Bank, was the current holder of plaintiff's mortgage, and, as such, was entitled to rely on a holder-in-due-course defense. See 5/5/11 M&O 4-9, 30 (summarizing numerous representations made by the Bayview Defendants concerning ownership of plaintiff's mortgage).

After several years of discovery, and as trial approached, plaintiff sought to compel the Bayview Defendants to provide documents concerning the valuation of plaintiff's home and ownership of plaintiff's mortgage. See Letter Motion for Discovery Dispute Resolution (Jan. 13, 2011), D.E. #492. This Court ordered the Bayview Defendants to produce (1) "proof of current ownership of [plaintiff's] first note and mortgage, as well as proof of chain of title back to 2006"; and (2) valuation and related documents created by an employee of defendant

---

[1] This case was subsequently consolidated with five other actions. See Minute Entry (Nov. 21, 2005), D.E. #58.

Bayview Financial, L.P.  See Minute Entry (Jan. 20, 2011), D.E. #497.

Despite this Court's order, the Bayview Defendants failed to produce the valuation documents.  See Letter Motion for Discovery and Sanctions Order (Feb. 7, 2011) ("2/7/11 Letter") at 2, D.E. #504.  With respect to the ownership of plaintiff's mortgage, the Bayview Defendants produced documents that showed that plaintiff's mortgage had been transferred several times since the commencement of litigation – information not previously disclosed to plaintiff or the Court.  See id. at 3.  Thus, contrary to the Bayview Defendants' previous contention throughout the litigation, there were periods of time during which U.S. Bank did not own plaintiff's mortgage.  See id.  The documents further revealed that U.S. Bank then owned the mortgage outright, and not as a successor to Wachovia Bank, N.A, as the Bayview Defendants had previously asserted.  See id.; Memorandum of Law in Support of Plaintiff Mary Lodge's Motion to Strike, at 9-11, 15-16, D.E. #536.  Following a telephone conference on these issues, this Court found that sanctions were warranted, and "order[ed] defense counsel to pay plaintiff's attorney's fees in connection with this discovery dispute."  Minute Entry (Feb. 11, 2011) ("2/11/11 Sanction Order") at 2, D.E. #509.[2]

Soon thereafter, based on the newly produced ownership documents, plaintiff moved to strike the Bayview Defendants' holder-in-due-course defense.  See Notice of Motion to Strike (March 30, 2011), D.E. #535.  Ultimately, Judge Matsumoto declined to strike the holder-in-

---

[2] Because it is undisputed that the fees incurred in connection with the aforesaid discovery dispute are "encompassed within [Judge Matsumoto's 5/5/11] Order," see Memorandum of Law In Opposition to Plaintiff's Motion ("Def. Opp.") at 10 n.1, D.E. # 639, the fact that the 2/11/11 Sanction Order sanctioned counsel for the Bayview Defendants, rather than his clients, is not material to the issues now before this Court.

due-course defense but nevertheless concluded that the Bayview Defendants' misconduct warranted an award of sanctions pursuant to Rule 37(c) of the FRCP. See 5/5/11 M&O at 24, 35. Specifically, Judge Matsumoto directed that the Bayview Defendants compensate plaintiff for the costs and fees incurred (1) "in pursuing discovery relating to the ownership of [plaintiff's] mortgage"; (2) "in defending against the Bayview Defendants' two motions (one motion to dismiss and/or for summary judgment and one motion for summary judgment) on their holder-in-due-course defense"; and (3) "in making the instant motion to strike the holder-in-due-course defense." 5/5/11 M&O at 40.

On July 13, 2011, plaintiff moved for an award of fees and costs in accordance with the 5/5/11 M&O. See Memorandum of Law in Support of Motion for Attorneys' Fees and Costs ("Pl. Mem."), D.E. #638-2. The Bayview Defendants objected to the amount of fees sought by plaintiff, arguing, *inter alia*, that the hourly rates were higher than those in fee awards typically granted in the Eastern District of New York; that plaintiff improperly sought to recover fees outside the scope of Judge Matsumoto's 5/5/11 M&O; and that various time entries were vague or otherwise deficient. See Def. Opp. at 5-14.

In total, plaintiff seeks to recover $182,246.75 in attorney's fees, including $17,386.75 in connection with the instant fee application, as well as $1,671.40 in costs. See Pl. Mem. at 8; Reply Memorandum of Law in Further Support of Motion for Attorneys' Fees and Costs ("Pl. Reply") at 8, D.E. #640.

**DISCUSSION**

Pursuant to Rule 37(c)(1)(A) of the FRCP, a court may order payment of reasonable attorney's fees as a sanction against a party who fails to disclose or supplement information required by Rules 26(a) and (e). See Fed. R. Civ P. 37(c)(1)(A). In considering an application for attorney's fees and costs, the Court must determine the presumptively reasonable fee. See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183–84 (2d Cir. 2008).[3] Essentially, "[t]he presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (citing Arbor Hill, 522 F.3d at 190) (internal quotations omitted).

To ascertain the presumptively reasonable fee, a court must determine a reasonable hourly rate for the legal services performed, using factors such as the labor and skill required, the difficulty of the questions, the attorney's customary hourly rate, and the experience, reputation and ability of the attorney. See Arbor Hill, 522 F.3d at 186 n.3, 190. In assessing the hourly rate, courts typically consider rates awarded in the district in which the reviewing court sits, or what is known as the "forum rule." See Simmons, 575 F.3d at 174-75

---

[3] The Second Circuit in Arbor Hill called for abandoning the term "lodestar" in favor of the "presumptively reasonable fee." See Arbor Hill, 522 F.3d at 190. In 2010, in Perdue v. Kenny A. *ex rel.* Winn, the Supreme Court issued an opinion endorsing the lodestar method. See __ U.S. __, 130 S.Ct. 1662, 1673 (2010). Whatever the terminology, both Arbor Hill and Kenny A. require the Court to consider case-specific factors in determining the reasonableness of the hourly rates and the number of hours expended. See generally Shim v. Millennium Grp., 08-CV-4022, 2010 WL 2772493, at *2 n.3 (E.D.N.Y. June 21, 2010) (analyzing Arbor Hill in light of Kenny A. decision).

5

(recounting history of forum rule). In order to overcome the forum rule's presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Id. at 175.

Once the Court determines the reasonable hourly rate, it must then multiply this rate by the reasonable number of hours expended in order to determine the presumptively reasonable fee. See Arbor Hill, 522 F.3d at 190. In any event, "[a] fee award should be based on a scrutiny of the unique circumstances of each case . . . ." McDaniel v. Cnty. of Schenectady, 595 F.3d 411, 426 (2d Cir. 2010) (citation and quotation omitted); see Whitney v. Jetblue Airways Corp., No. 07-CV-1397 (CBA), 2009 WL 4929274, at * 2-3 (E.D.N.Y. Dec. 21, 2009) (applying Arbor Hill analysis to determine presumptively reasonable fee awarded as sanction pursuant to Rule 37).

## I. Reasonable Hourly Rates

Plaintiff seeks to recover the fees incurred by five attorneys – one from the AARP Foundation Litigation ("AARP"), based in Washington, D.C., and four from South Brooklyn Legal Services ("SBLS"). See Pl. Mem. at 4; Pl. Reply at 8. With the exception of one hour of attorney time billed by the Director of Litigation at SBLS, plaintiff has not sought compensation for any hours expended by the SBLS attorneys prior to January 20, 2011. See Pl. Reply at 8 n.4.[4]

---

[4] According to plaintiff's reply memorandum, BLS attorneys did not regularly maintain contemporaneous time records prior to 2010, as they were then precluded by federal restrictions from seeking fee awards. See Pl. Reply at 8.

Jean Constantine-Davis is a senior attorney with the AARP, where she specializes in litigation involving violations of state and federal laws governing mortgage lending. See Declaration of Jean Constantine-Davis ("Constantine-Davis Decl.") ¶ 3, D.E. #638-3. Since February 2005, Constantine-Davis has been the attorney primarily responsible for the claims affecting the Bayview Defendants. See id. ¶ 5. Constantine-Davis, who has been practicing law for 29 years, requests an hourly rate of $500. See Pl. Mem. at 4. In support of Constantine-Davis' rate, plaintiff argues that Washington D.C.-based attorneys with similar experience "are regularly [awarded] fees ranging from $600-740 per hour[.]" Pl. Mem. at 6.

Edward Josephson is the Director of Litigation at SBLS and has been practicing 23 years as an attorney. See Declaration of Edward Josephson (June 15, 2011) ("Josephson Decl.") ¶¶ 1-3, D.E. #638-5. Like Constantine-Davis, Josephson requests an hourly rate of $500. See Pl. Mem. at 4. Meghan Faux, the Director of the Foreclosure Prevention Project at SBLS, who has been practicing law since 2000, seeks an hourly rate of $425. See Declaration of Meghan Faux ("Faux Decl.") ¶¶ 1, 3, D.E. #640-4. Sara Manaugh, who requests $375 per hour, is a staff attorney with SBLS and has been practicing law for eight years. See Declaration of Sara Manaugh ("Manaugh Decl.") ¶¶ 1, 3-4, D.E. #638-6; Pl. Mem. at 4. Finally, plaintiff requests an hourly rate of $300 for another SBLS staff attorney, Rachel Geballe, who has been practicing law since 2007. See Declaration of Rachel Geballe ("Geballe Decl.") ¶¶ 1, 3, D.E. #638-4.

In opposition to this motion, the Bayview Defendants argue that the rates plaintiff seeks to recover are much higher than those typically awarded in the Eastern District of New York, the forum in which the case was litigated. See Def. Opp. at 5; see also Pl. Mem. at 6 (plaintiff

7

concedes "that the rates claimed are not typical for the Eastern District"). In particular, the Bayview Defendants posit that plaintiff has failed to meet her burden in overcoming the presumption of the forum rule. See Def. Opp. at 3, 5. In reply, plaintiff filed a supplemental declaration of Constantine-Davis, in which she stated that SBLS contacted her to assist with plaintiff's case because "SBLS lacked the resources and experience to manage the litigation by itself." Supplemental Declaration of Jean Constantine-Davis ("Constantine-Davis Supp. Decl.") ¶ 1, D.E. #640-2.

By requesting that the Court consider the rates awarded to Washington D.C.-based colleagues of Constantine-Davis, plaintiff, in effect, seeks to overcome the presumption of the forum rule. To determine whether plaintiff has succeeded in this regard, the Court must look to "experience-based, objective factors[,]" including "counsel's special expertise in litigating the particular type of case." Simmons, 575 F.3d at 175-76. Plaintiff must establish not only that she would have selected out-of-district counsel based on their experience; she must also make a "particularized showing" that the "use of in-district counsel would produce a substantially inferior result." Id. at 176. "Among the ways an applicant may make such a showing is by establishing that local counsel possessing requisite experience were unwilling or unable to take the case, . . . or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." Id. (citation omitted).

Here, plaintiff has not satisfied the heavy burden required to overcome the presumption of the forum rule. Although plaintiff has submitted evidence suggesting that Constantine-Davis has specialized experience in the mortgage law field and that SBLS did not have the requisite resources and experience to handle such a complex litigation, plaintiff has not made a

8

particularized showing that she was unable to locate counsel within the forum district who was able and willing to take the case, thus necessitating the use of out-of-district counsel. See Blue Moon Media Grp., Inc. v. Field, No. CV 08-1000(DRH)(AKT), 2011 WL 4056068, at *11 (E.D.N.Y. Apr. 11, 2011) (applying forum rule where defendant provided "no specific information which would establish that local counsel with the requisite experience were unwilling or unable to take the case, or, alternatively, that no in-district counsel possessed such expertise"); Whitney, 2009 WL 4929274, at *6 (plaintiff did not meet "stringent standard" set by Simmons to overcome presumption of forum rule).

In contrast to the showing by plaintiff here, in Harvey v. Home Savers Consulting Corporation, Eastern District plaintiffs who sought to overcome the forum rule presumption presented the Court with evidence that they had contacted more than one hundred law firms and, only after a lengthy search, were able to locate a Manhattan-based law firm with the expertise, resources and willingness to take the case. See Harvey, No. 07-CV-2645 (JG), 2011 WL 4377839, at *3-4 (E.D.N.Y. Aug. 12, 2011). In the present action, plaintiff has made no showing as to the availability and quality of Eastern District counsel or her efforts in attempting to obtain in-district representation.[5] Therefore, plaintiff has not overcome the presumption of the forum rule, and the Court will now consider whether the rates sought by

---

[5] Although plaintiff argues in her memorandum of law that "[n]o law firms in the Eastern District had AARP's expertise in litigating complex predatory consumer lending cases," plaintiff presents no evidence to support this assertion and, thus, fails to satisfy her heightened burden under Simmons. See Pl. Reply at 4.

plaintiff are in line with the rates typically awarded in the Eastern District of New York.[6]

In this district, courts have recently awarded fees in the range of $300-450 per hour for partners, $200-300 for senior associates, and $100-200 for junior associates – lower than those sought by plaintiff.[7]  See, e.g., Carco Grp., Inc. v. Maconachy, No. CV 05-6038(ARL), 2011 WL 6012426, at *3  (E.D.N.Y. Dec. 1, 2011) (collecting cases); Santillan v. Henao, __ F.Supp.2d __, 2011 WL 4628752, at *12 (E.D.N.Y. Sept. 30, 2011) (collecting cases); Gutman v. Klein, No. 03 Civ. 1570(BMC), 2009 WL 3296072, at *2 (E.D.N.Y. Oct. 13, 2009) (noting, in connection with computation of spoliation sanction in 2009, that hourly rates of $300-400 for partners, $200-300 for senior associates, and $100-200 for junior associates, were "within the Eastern District range").  Given the experience and effectiveness of plaintiff's attorneys in this action, the complex and protracted nature of the litigation, as well as the

---

[6] A few months after the Second Circuit established the high standard for overcoming the presumption of the forum rule, that Court issued a summary order, in which it held that a district court had not abused its discretion in using out-of-district counsel rates in assessing an attorney's fee sanction pursuant to Rule 11, where (1) the district court specifically referenced the deterrent purpose of a Rule 11 sanction, and (2) the district court had used rates "significantly lower than those actually charged." On Time Aviation, Inc. v. Bombardier Capital, Inc., 354 F. App'x 448, 452 (2d Cir. Oct. 2, 2009); see also Robbins & Myers, Inc. v. J.M. Huber Corp., No. 01-CV-201S(F), 2011 WL 1598973, at *3 (W.D.N.Y. Apr. 27, 2011) (citing On Time Aviation, in holding that court need not apply the forum rule in the context of Rule 37 sanctions).  A 2010 Eastern District opinion declined to read On Time Aviation so broadly as to eliminate the forum rule in any sanction context.  See Field Day, LLC v. Cnty. of Suffolk, Civil Action No. 04-2202, 2010 WL 5490990, at *3 (E.D.N.Y. Dec. 30, 2010) (noting, *inter alia*, that Second Circuit summary orders have no precedential value).

[7] In attempting to survey the current rates awarded to attorneys in the Eastern District, the Court's task is complicated by the fact that, for many years prior to Simmons, courts within this district routinely awarded attorney's fees based on rates in the Southern District of New York.  See Whitney, 2009 WL 4929274, at *6 (recognizing difficulty in determining current Brooklyn rates where previous opinions took into account Manhattan rates).

deterrent purpose of a Rule 37 sanction, the Court finds that plaintiff is entitled to hourly rates at the high end of these ranges, particularly for the work performed by Constantine-Davis. See Field Day, 2010 WL 5490990, at *3 (affirming high end of hourly range where attorneys possessed substantial experience and higher fee "comports with the purposes of [Rule 37] award"); see also Carco Grp., 2011 WL 6012426 at *3, 5 (awarding hourly rates of $425 for partner with 21 years' experience, $300 for mid-level associate and $275 for junior associate in "straight forward" contract action); BBY Solutions, Inc. v. Schwartz, No. CV 11-0947(ADS)(ETB), 2011 WL 6986937, at *7 (E.D.N.Y. Nov. 17, 2011) (awarding $400 per hour to partner with twenty years' experience and $295-310 for senior associates); Santillan, 2011 WL 4628752, at *12 (awarding partner $375 per hour for otherwise "relatively straightforward" default case with "no novel or complex issues"); Rates Tech., Inc. v. Mediatrix Telecom, Inc., No. 05-CV-2755(JS)(AKT), 2011 WL 1322520, at *3-4 (E.D.N.Y. Mar. 31, 2011) (awarding $475 hourly rate for partner as part of Rule 37 sanction in a patent case, a complex area of law that generally justifies higher rates).[8]

Therefore, in calculating the presumptively reasonable fee, the Court will apply the following hourly rates: $425 for Constantine-Davis; $400 for Josephson[9]; $325 for Faux; $300

---

[8] Plaintiff's citation to in-district bankruptcy cases awarding hourly rates as high as $545 and $570 per hour, see Pl. Mem. at 7-8, is unpersuasive. For one thing, as plaintiff has not submitted copies of these unpublished opinions, the Court is without knowledge of the reasons why the courts approved such rates. Nor has plaintiff provided any authority for why it would be appropriate in this case to apply the rates awarded in bankruptcy proceedings, which involve a highly specialized area of law.

[9] Although Constantine-Davis and Josephson have both been practicing law for several decades, the former was brought into the case because she possessed expertise that the SBLS
(continued…)

for Manaugh; and $200 for Gabelle.[10]

## II.  Reasonable Number of Hours

In support of her fee application, plaintiff has submitted contemporaneous billing records, in accordance with New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983).  The Bayview Defendants complain that (1) plaintiff seeks to recover for work outside the scope of the 5/5/11 M&O; and (2) plaintiff's time records are vague, ambiguous, and internally inconsistent, and thus should be excluded or reduced.  See Def. Opp. at 6-14.

### A.  Scope of Plaintiff's Time Records

Recognizing that the misconduct of the Bayview Defendants broadly impacted and impeded the proceedings in this case, Judge Matsumoto, in her 5/5/11 M&O, awarded plaintiff fees and costs incurred (1) "in pursuing discovery relating to the ownership of [plaintiff's] mortgage"; (2) "in defending against the Bayview Defendants' two motions (one motion to dismiss and/or for summary judgment and one motion for summary judgment) on their holder-

---

[9](…continued)
attorneys (including Josephson) reportedly lacked.  See Constantine-Davis Supp. Decl. ¶ 1.  Therefore, her work merits a higher hourly rate than his.

[10]  Contrary to the argument of the Bayview Defendants, the issue is not whether "Lodge had any expectation that she would pay the fees which South Brooklyn Legal Services or AARPS [sic] claim."  Def. Opp. at 5.  If that were the standard, then the work of attorneys from non-profit organizations or from private law firms engaged in *pro bono* work would be precluded from consideration in connection with a fee award -- a result flatly rejected by the Second Circuit and Supreme Court.  See Arbor Hill, 522 F.3d 184 n.2 (collecting cases); see also Tucker v. City of New York, 704 F.Supp.2d 347, 359 (S.D.N.Y. 2010).  The model adopted by the Court of Appeals asks what a hypothetical rational potential litigant would be willing to pay, not what the particular plaintiff could or would pay.

in-due-course defense"; and (3) "in making the instant motion to strike the holder-in-due-course defense." 5/5/11 M&O at 40. The Bayview Defendants' first dispositive motion was filed in April 2006, and was largely based on the holder-in-due-course defense, which likewise formed the centerpiece for plaintiff's discovery requests and protracted efforts to induce the Bayview Defendants to cure their deficiencies in discovery; this work extended through much of 2006. See Constantine-Davis Decl. at 2-4; Pl. Reply at 6. In November 2008, Constantine-Davis traveled to Florida to conduct the Rule 30(b)(6) deposition of the Bayview Defendants, which also focused on the ownership issue. See Constantine-Davis Decl. at 4; Pl. Reply at 6. The Bayview Defendants' Motion for Summary Judgment was served in December 2009, and again revisited the holder-in-due course defense, see Defendant Bayview Loan Services and Wachovia Bank N.A.'s Memorandum of Law in Support of Their Motion for Summary Judgment, D.E. #454-5, prompting a detailed, well-researched opposition by plaintiff. See Plaintiff's Memorandum of Law in Opposition to the Motion for Summary Judgment, D.E. # 456. Thereafter, during the first three months in 2011, plaintiff and the Bayview Defendants intensively litigated the discovery issues that spawned Judge Matsumoto's 5/5/11 M&O, as well as this Court's 2/11/11 Sanction Order.

Having reviewed plaintiff's time sheets in detail, the Court finds that, for the most part, plaintiff has confined her fee request within the parameters of Judge Matsumoto's 5/5/11 Order. As an initial matter, the Court rejects the Bayview Defendants' crabbed view of the scope of the sanction imposed by Judge Matsumoto. See Def. Opp. at 9 (arguing that the fees on the "resecuritization issue . . . should be measured from January 29, 2011, the date [on] which the dispute accrued"); see also id. at 1 ("Issues with respect to the securitization

13

documents arose on or about January 29, 2011. Lodge's request for an award of attorneys' fees prior to this date is overbroad and does not comply with the [5/5/11 M&O."]). While this Court's 2/11/11 Sanction Order awarded plaintiff only those fees incurred in connection with the specific discovery motion resolved by the undersigned magistrate judge, see 2/11/11 Sanction Order at 2, Judge Matsumoto's award of sanctions was not so limited. After reviewing the entire history of the case, and expressly finding that, "[t]hroughout the litigation," the Bayview Defendants made "inaccurate and conflicting representations relating to the identity of the holder of the Lodge mortgage," 5/5/11 M&O at 4, Judge Matsumoto broadly authorized an award of fees and costs, including those fees and costs that plaintiff incurred "in pursuing the discovery relating to the ownership of the Lodge mortgage . . . ." Id. at 41. Plaintiff's pursuit of such discovery extends back to 2006, and those efforts are compensable under Judge Matsumoto's ruling.

The Bayview Defendants further complain that plaintiff "appears to have included all time and fee calculations relating to every aspect of this action as it related to the Bayview Defendants rather than limiting the scope to the issues identified by the Court." Def. Opp. at 14. This defense challenge, contained in the Bayview Defendants' memorandum of law, is flatly refuted by declarations from plaintiff's counsel, made under penalty of perjury, explaining that their fee application lists only those activities, and corresponding time charges, authorized by Judge Matsumoto's fee award. See Constantine-Davis Decl. ¶ 7; Gabelle Decl. ¶ 5; Josephson Decl. ¶ 6; Manaugh Decl. ¶ 5; Constantine-Davis Supp. Decl. ¶ 4; Supplemental Declaration of Sara Manaugh ("Manaugh Supp. Decl.") ¶¶ 1, 5-6, D.E #640-3; see also SBLS Time Records, D.E. #638-7 (compare "Time" column with "Dispute Time"

column). Indeed, plaintiff's counsel excluded any time entry that "omit[ted] details sufficient to indicate whether the work done pertained directly to the instant application." Manaugh Supp. Decl. ¶ 6. The Court has identified only a single exception to counsel's otherwise appropriate extraction of relevant time charges: i.e., an entry by Constantine-Davis for four hours in January 2005. See Constantine-Davis Decl. at 2 (7/28/05 Entry). Because this entry pre-dates the relevant time period identified by plaintiff, see Pl. Reply at 6, and concerns what presumably involves initial disclosures, the Court will exclude it from the fee award.

### B. Bayview Defendants' Remaining Objections to Hours Expended

The Bayview Defendants additionally argue that plaintiff's claimed hours are unreasonable. In particular, they posit that several time entries are vague and ambiguous, see Def. Opp. at 13-14, and that the time entries are internally inconsistent because not every attorney has corresponding time entries. See id. at 10.

A significant percentage of plaintiff's time entries are vague and/or improperly block billed, making it difficult for the Court to ascertain the reasonableness of the time charged. See Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 172 (2d Cir. 1998) (district court did not abuse its discretion when reducing fees based on, *inter alia*, vague time entries like "work on motion"); Pilitz v. Incorporated Village of Freeport, No. CV 07-4078(ETB), 2011 WL 5825138, at *6 (E.D.N.Y. Nov. 17, 2011) (reducing hours for block-billed time). For example, in Constantine-Davis' entries for January 19-22, 2010, she claims 10.5, 8.5, 10 and 12 hours respectively for "Work on opposition to Wachovia MSJ," without any indication of how she spent those large blocks of time. See Constantine-Davis Decl. at 5. Portions of the SBLS attorney records suffer from similar deficiencies. See, e.g., D.E. #638-7, Manaugh

15

entries for 2/24/11 - 2/25/11 ("worked on brief"). Constantine-Davis also billed 8 hours for "Travel to Coral Gables; prep for Wachovia depo." Constantine-Davis Decl. at 4 (11/19/08 Entry). Due to the block-billing in this entry, the Court is unable to determine what portion of the 8 hours was for travel, for which Constantine-Davis should have billed at 50 percent of her hourly rate, as is the policy of this Circuit. See Bank of America v. Viders, No. CV 10-0025 (DRH)(ARL), 2011 WL 4527419, at *4 n.2 (E.D.N.Y. July 26, 2011). Constantine-Davis and Meghan Faux also appear to improperly bill in quarter-hour increments, rather than the one-tenth hour increments preferred by courts. See, e.g., Lucky Brand Dungarees, Inc. v. Ally Apparel Resources, LLC, No. 05 Civ. 6757(LTS)(MHD), 2009 WL 466136, at *4 (S.D.N.Y. Feb. 25, 2009) (collecting cases).

As for the claim that the time entries are internally inconsistent, plaintiff, in her reply memorandum, explained that, prior to 2010, SBLS attorneys were not able to seek attorney's fees due to federal restrictions. See Pl. Reply at 8. Accordingly, SBLS attorneys did not maintain time records prior to 2010, see id., and plaintiff is not seeking to recover fees for their unrecorded time. Defendants also cite several entries in February 2011, wherein Constantine-Davis records time spent in conferences with SBLS attorneys, who do not similarly claim such time. See Def. Opp. at 12. The Court concludes, however, that any minor discrepancies during this time period are likely a result of SBLS's inability to determine with precision whether the time charge related to a sanctionable issue, see *supra* p. 15, and, in any event, the failure of SBLS attorneys to charge for those services inures to the benefit of the Bayview Defendants.

Although any inconsistencies between the records of Constantine-Davis and SBLS

counsel are thus inconsequential, the Court concludes that the vague time entries and block-billing practices warrant an across-the-board reduction of 20 percent. See, e.g., Whitney, 2009 WL 4929274, at *9 (reducing number of hours by 25 percent due to vague time entries and excessive billing). This is particularly appropriate in light of the many attorneys working on this matter, which likely led to duplicative efforts. See Carco Grp., 2011 WL 6012426, at *8 (reducing hours by 25 percent due to excessive and duplicative staffing). Therefore, based on this 20-percent reduction in hours and the reduced rates, the Court recommends awarding the presumptively reasonable fee of $121,505.00.

### III. Costs

Plaintiff seeks to recover $1,671.40 in costs, comprising $871.40 for travel expenses relating to the Rule 30(b)(6) deposition of the Bayview Defendants in November 2008 and $800.00 for consultant services regarding the securitization issue. See Pl. Mem. at 8. Plaintiff has provided copies of receipts and invoices substantiating these expenses. See Cost Documentation, D.E. #638-8. The Bayview Defendants have raised no objection to these expenses. See generally Def. Opp. In the absence of any objection, the Court recommends awarding plaintiff the full amount of $1,671.40.

### CONCLUSION

For the reasons stated above, the Court recommends awarding plaintiff $121,505.00 in attorney's fees and $1,671.40 in costs, pursuant to Judge Matsumoto's 5/5/11 M&O.

Any objections to the recommendations contained in this Report and Recommendation must be filed with the Honorable Kiyo A. Matsumoto on or before **March 12, 2012**. No

extensions will be granted. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a)(1), 72(b)(2); Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to enter this Report and Recommendation into the ECF system.

**SO ORDERED.**

**Dated:    Brooklyn, New York
         February 24, 2012**

                                       **ROANNE L. MANN
                                        UNITED STATES MAGISTRATE JUDGE**